IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| DAN-BUNKERING (AMERICA), INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 3:20-cv-03341-S |
| v. | § | |
| | § | IN ADMIRALTY, RULE 9(h) |
| ICHOR OIL, LLC, | § | |
| | § | |
| Defendant | § | |

## B&G FUTURES, INC.'S RESPONSE
## TO DAN-BUNKERING'S BRIEF ON ADMIRALTY JURISDICTION

TO THE HONORABLE REBECCA RUTHERFORD, UNITED STATES MAGISTRATE JUDGE:

Now comes B&G Futures, Inc. to file this Response to Dan-Bunkering's Brief on Admiralty

Jurisdiction (Docket No. 116) and would respectfully show the following:

## TABLE OF CONTENTS

I.    **Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   **Standard of Decision** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  **The Court Does Not Have Admiralty Jurisdiction** . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    Admiralty jurisdiction depends on the existence of a maritime contract . . . . . . . 10

    B.    The relevant contract is between Ichor Oil and B&G Futures . . . . . . . . . . . . . . . 10

        1.    Dan-Bunkering cannot use garnishment to collect an asset it already
             owns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    The capacity in which Dan-Bunkering asserts its claim affects the
             question of admiralty jurisdiction, but does not affect the merits of the
             case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.      The *Doiron* test for determining whether a contract is maritime . . . . . . . . . . . . 14

D.      The Ichor Oil - B&G Futures contract is not maritime . . . . . . . . . . . . . . . . . . . . 15

E.      Objections to Dan-Bunkering's Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.     **The Court Does Have Diversity Jurisdiction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

A.      The Court has diversity jurisdiction in fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.      Diversity jurisdiction is sufficiently pleaded . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.      The exercise of diversity jurisdiction will not disrupt the case . . . . . . . . . . . . . . 20

        1.      The pending summary judgment motions . . . . . . . . . . . . . . . . . . . . . . . . 22

        2.      The pending motion for judgment on the pleadings . . . . . . . . . . . . . . . . 22

**Prayer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

# TABLE OF AUTHORITIES

## CASES

*Aldridge v. Mississippi Dept. of Corrections,*
    990 F.3d 868 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ambraco., Inc. v. Bossclip B.V.,*
    570 F.3d 233 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Barrios v. Centaur, LLC.*
    942 F.3d 670 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bosarge v. Mississippi Bureau of Narcotics,*
    796 F.3d 435 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Centurion Bulk Pte Ltd. v. Nustar Energy Serv., Inc.,*
    2020 WL 8368319 (S.D.Tex. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*Chauvin v. Symetra Life Ins., Co.,*
    422 F.Supp.3d 1145 (E.D.La. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18. 20

*Doiron,* see *In re Larry Doiron*

*DS-Rendite Fonds Nr. 108 v. Essar Capital Americas Inc.,*
    882 F.3d 44 (2nd Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

*East Mountain Energy, LLC v. United Mine Workers of America,*
    2016 WL 3747585 (D.Utah 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*E.N. Bisso & Son, Inc., v. Bouchard Transp. Co., Inc.,*
    2019 WL 7185555 (D.Md. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*ESI Employee Solutions, L.P. v. City of Dallas,*
    528 F.Supp.3d 564 (E.D.Tex. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Exxon Corp. v. Cent. Gulf Lines, Inc.,*
    500 U.S. 603 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Giannakos v. M/V Bravo Trader,*
    762 F.2d 1295 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gibson v. United States,*
    2021 WL 535457 (N.D.Tex. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Harrison Co., L.L.C. v. A-Z Wholesalers, Inc.,*
    44 F.4th 342 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Larry Doiron,*
    879 F.3d 568 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 21

*Iqbal,* see *Ashcroft v. Iqbal*

*Kirby,* see *Norfolk S. Ry. Co. v. Kirby*

*Martin v. DHL Express (USA), Inc.,*
    580 F.Supp.3d 66 (D.N.J. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McCall v. New American Funding,*
    2022 WL 585343 (N.D.Tex. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McLaughlin v, Mississippi Power Co.,*
    376 F.3d 344 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mendez v. Doctors Hospital at Renaissance,*
    2022 WL 584268 (S.D.Tex. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Norfolk S. Ry. Co. v. Kirby,*
    543 U.S. 14 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Paragon Asset Co., Ltd. v. Gulf Copper Co.,*
    2022 WL 970551 (S.D.Tex. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pavlovich v. Nat'l City Bank,*
    435 F.3d 560 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Preble-Rish Haiti, S.A. v. Republic of Haiti,*
    558 F.Supp.3d 430 (S.D.Tex. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Robledo v. Myorkas,*
    2022 WL 2824647 (M.D.La. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20

*Sanders v. Boeing Co.,*
    2021 WL 3412509 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*St. Paul Reinsurance Co., Ltd. v. Greenberg*,
    134 F.3d 1250 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Superior MRI Serv., Inc. v. Alliance Healthcare Serv., Inc.*,
    778 F.3d 502 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Twombly,* see *Bell Atl. Corp. v. Twombly*

*Vantage Trailers, Inc .v Beall Corp.*,
    567 F.3d 745 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*WAG SPV I, LLC v. Fortune Global Shipping & Logistics, Ltd.*,
    ___ F.Supp.3d ___, 2020 WL 1489814, p. 5 (S.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . 20

*Wright v. Musanti*,
    887 F.3d 577 (2nd Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. Summary

1.        The Court does not have admiralty jurisdiction over Dan-Bunkering's claim because the contract at issue is not a maritime contract.

2.        The relevant contract for determining the existence of admiralty jurisdiction is the contract between B&G Futures and Ichor Oil. Dan-Bunkering's claim is based on B&G Futures's alleged breach of that contract. Dan-Bunkering cannot seek to recover on the claim as a maritime creditor of Ichor Oil for the simple reason that Ichor Oil has assigned the claim to Dan-Bunkering, and Ichor Oil no longer has any interest in the claim. Dan-Bunkering must therefore sue directly on the contract, and can assert its claim in admiralty only if that contract is itself a maritime contract.

3.        The contract between B&G Futures and Ichor Oil was not a maritime contract. The contract was merely for the sale of a product from B&G Futures to Ichor Oil, who would then sell it to Dan-Bunkering, who would then sell it to Philips 66, who would finally enter into a maritime contract to supply a vessel. Since the contract was a non-maritime brokerage contract, the Court does not have admiralty jurisdiction over Dan-Bunkering's claim against B&G Futures.

4.        The Court does, however, have subject matter jurisdiction in diversity. This case is between citizens of different states, and the amount in controversy exceeds $75,000.

5.        The exercise of diversity jurisdiction over this claim should not present any practical difficulty. The arguments in the pending motions for summary judgment are unaffected whether the Court exercises subject matter jurisdiction in admiralty or diversity. The only difference regarding the Motion for Judgment on the Pleadings is that Dan-Bunkering's pleading burden is somewhat reduced under diversity jurisdiction.

6.        It is proper for the Court to inquire and clarify the grounds for its exercise of subject matter jurisdiction. But as a practical matter, the inquiry changes nothing.

## II. Standard of Decision

7.      The Court, when inquiring into its jurisdiction, may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplements by undisputed facts plus the court's resolution of disputed facts. *Ambraco., Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Robledo v. Myorkas*, 2022 WL 2824647, p. 2 (M.D.La. 2022).

8.      Here both parties have broadened the scope of inquiry beyond the pleadings by introducing outside evidence. The question should therefore be resolved in the same manner as a factual challenge to subject matter jurisdiction. *Superior MRI Serv., Inc. v. Alliance Healthcare Serv., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015); *ESI Employee Solutions, L.P. v. City of Dallas*, 528 F.Supp.3d 564, 569-70 (E.D.Tex. 2021); *Chauvin v. Symetra Life Ins., Co.*, 422 F.Supp.3d 1145, 1151 (E.D.La. 2019).

9.      In a factual challenge, there is no presumption that pleaded facts are true. *Vantage Trailers, Inc .v Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009); *Mendez v. Doctors Hospital at Renaissance*, 2022 WL 584268, p. 3, (S.D.Tex. 2022).

10.      In the absence of an evidentiary hearing, affidavits and other evidence are to be viewed in the light most favorable to the Plaintiff who asserts the existence of jurisdiction. *Ambraco*, 570 F.3d at 238; *McCall v. New American Funding*, 2022 WL 585343, p. 2 (N.D.Tex. 2022).

11.      Dan-Bunkering, the party asserting subject matter jurisdiction, nevertheless bears the burden to establish the facts necessary to support admiralty jurisdiction by a preponderance of the evidence. *Superior MRI Serv.*, 778 F.3d at 504; *Gibson v. United States*, 2021 WL 535457, p. 2 (N.D.Tex. 2021).

### III. The Court Does Not Have Admiralty Jurisdiction

12.     The oil at issue in this case was the subject of a lengthy chain of transactions:

> ??? ➜ Maersk ➜ **B&G Futures** ➜ **Ichor Oil** ➜ **Dan-Bunkering** ➜ Philips 66 ➜ ???

Ichor Oil's contract to purchase the oil from B&G Futures, and the contract for Ichor Oil to then sell that oil to Dan-Bunkering, were merely two links in this chain. (Appx. 4-7, ¶ 4, 10-15; Appx. 16-17, ¶ 5-6, 12; Appx. 18, ¶ 5; Appx. 23-26, ¶ 4-5, 15; Appx. 34-38).

13.     The claim that Dan-Bunkring asserts against B&G Futures is for B&G Futures's alleged breach of the Ichor Oil - B&G Futures Contract. (Appx. 120).

14.     Dan-Bunkering argues that the Court may exercise admiralty jurisdiction over this claim because the claim is asserted as a garnishment action under Admiralty Rule B. (Dan-Bunkering Brief on Jurisdiction, p. 2, 6).

15.     This argument fails for the simple reason that Ichor Oil does not own the claim against B&G Futures. Ichor Oil assigned that claim to Dan-Bunkering almost two years ago. (Appx. 10, Assignment; Appx. 4-5, Answers to Requests for Admission No. 1-7).

16.     Since Ichor Oil does not own the claim, Dan-Bunkering cannot assert the claim in its capacity as a garnishment creditor of Ichor Oil under Rule B. Dan-Bunkering must instead assert the claim in its capacity as Ichor Oil's assignee. This means that the question of admiralty jurisdiction does not depend on the Dan-Bunkering - Ichor Oil Contract (as alleged by Plaintiff), but instead depends on the Ichor Oil - B&G Futures Contract.

17.     And since the Ichor Oil - B&G Futures Contract is not maritime, the Court does not have admiralty jurisdiction over the claim against B&G Futures.

**A.     Admiralty Jurisdiction Depends on the Existence of a Maritime Contract**

18.     Admiralty jurisdiction depends on the existence of a maritime claim. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004).

19.     Where the plaintiff's claim is for breach of contract, the existence of admiralty jurisdiction depends upon whether the contract at issue is maritime in nature. *Barrios v. Centaur, LLC*, 942 F.3d 670, 675 (5th Cir. 2019); *Centurion Bulk Pte Ltd. v. Nustar Energy Serv., Inc.*, 2020 WL 8368319, p. 1 (S.D.Tex. 2020).

**B.     The Relevant Contract Is between Ichor Oil and B&G Futures**

20.     The first step of analysis is to identify the contract at issue.

21.     The claim that Dan-Bunkering asserts is for B&G Futures's alleged breach of the Ichor Oil - B&G Futures Contract. (£ECF 108, p. 5).

22.     So the natural starting point for analysis is to determine whether the Ichor Oil - B&G Futures contract is maritime. *See, e.g., Centurion Bulk*, 2020 WL 8368319 at  1.

**1.     Dan-Bunkering Cannot Use Garnishment to Collect an Asset It Already Owns**

23.     Dan-Bunkering argues that admiralty jurisdiction can instead be based upon the downstream Dan-Bunkering - Ichor Oil Contract as a garnishment action pursuant to Admiralty Rule B. (Dan-Bunkering's Brief on Jurisdiction, p. 1). But this argument fails because Dan-Bunkering is not seeking to collect on a claim owned by its debtor Ichor Oil. Dan-Bunkering is instead suing on a claim owned by Dan-Bunkering itself.

24.     Dan-Bunkering began this lawsuit on November 8, 2020 by suing Ichor Oil for breach of the Dan-Bunkering - Ichor Oil Contract. (Appx. 65).

25.     Ichor Oil was served a few days later on November 14. Ichor Oil's answer was due

21 days later on December 5, 2020. (Appx. 71-72, Affidavit of Service).

26.    Ichor Oil never answered, and Dan-Bunkering subsequently obtained a default judgment on its claim against Ichor Oil for $500,000 on May 5, 2021. (Appx. 78).

27.    Ichor Oil's failure to answer appears to have been a conscious decision. On December 4, the day before Ichor Oil's answer was due, Ichor Oil assigned to Dan-Bunkering any claim that Ichor Oil might have against B&G Futures. (Appx. 10, Assignment; Appx. 4-5, Answers to Requests for Admission No. 1, 7). Thus Ichor Oil has not owned the claim against B&G Futures at any time since December 4, 2020. The claim has instead been owned at all times since then by Dan-Bunkering.

28.    On that same day, December 4, Dan-Bunkering requested a writ of maritime garnishment against B&G Futures pursuant to Admiralty Rule B. (Appx., __, ECF 19, Request for Writ).

29.    The procedural deficiency is that Dan-Bunkering, in its capacity as a Rule B garnishment creditor, can only recover property that is owned by the debtor Ichor Oil. Rule B does not confer the right to pursue assets that are not owned by the maritime debtor. To the contrary, Rule B only authorizes seizure of "the defendant's [Ichor Oil's] tangible or intangible personal property … in the hands of the garnishees …" Admiralty Rule B(1)(a); *DS-Rendite Fonds Nr. 108 v. Essar Capital Americas Inc.*, 882 F.2d 44, 49-50 (2nd Cir. 2018) (Rule B garnishment only available when property belonging to the defendant is in the district); *Preble-Rish Haiti, S.A. v. Republic of Haiti*, 558 F.Supp.3d 430, 434 (S.D.Tex. 2021) (garnishment under Rules B is available only if the defendant's [Ichor Oil's] property may be found within the district").

30.    Since the claim for B&G Futures's alleged breach of the Ichor Oil - B&G Futures Contract does not belong to Ichor Oil, Dan-Bunkering cannot assert that claim in its capacity as a

garnishment creditor of Ichor Oil through the jurisdiction-extending procedure of a Rule B garnishment.

31.     Thus, even if Dan-Bunkering's claim against Ichor Oil for breach of the Dan-Bunkering - Ichor Oil contract were a maritime dispute such that Rule B could be invoked, Rule B garnishment could not reach assets that are not owned by the debtor Ichor Oil and are instead owned by Dan-Bunkering.

32.     When Ichor Oil assigned to Dan-Bunkering the claim for B&G Futures's alleged breach of the Ichor Oil - B&G Futures Contract:

(1)     Dan-Bunkering acquired the procedural right to assert the claim directly in its capacity as Ichor Oil's assignee; but

(2)     Dan-Bunkering also lost the procedural right to assert the claim through garnishment in its capacity as Ichor's Oil's creditor.

33.     Thus Dan-Bunkering's argument that Rule B can be employed to assert admiralty jurisdiction over the claim against B&G Futures fails.

34.     This leaves the analysis back at the natural starting point of inquiring whether the Ichor Oil - B&G Futures contract is maritime.

## 2.     The Capacity in which Dan-Bunkering Asserts Its Claim Affects the Question of Admiralty Jurisdiction, but Does Not Affect the Merits of the Case

35.     The Court may ask why B&G Futures has not previously raised the issue of the capacity in which Dan-Bunkering asserts its claim. The answer is that, for most purposes, the capacity in which Dan-Bunkering asserts the claim against B&G Futures has no effect upon the ultimate outcome of the case.

36.     Dan-Bunkering argues passionately in the final paragraph of its brief that form should not be elevated over substance – especially not when costs will be increased but the result will

remain the same. (Dan-Bunkering Brief in Jurisdiction, p. 6-7).

37.     Consistent with this philosophy, B&G Futures has tried to limit litigation costs by overlooking procedural deficiencies that do not impair its ability to defend the case and that do not affect the outcome of the case. And Although B&G Futures has consistently disputed the validity of Dan-Bunkering's claim, B&G Futures cannot in good faith deny that Dan-Bunkering does at least have the right to assert the claim. So if B&G Futures had argued that Dan-Bunkering must instead assert the claim in its capacity as assignee, the argument would have had merit, but it also would have increased the cost of litigation without changing the ultimate outcome of the case. That is why B&G Futures has not insisted that Dan-Bunkering pursue its claim as an assignee rather than as a garnishing creditor.

38.     In contrast, B&G Futures did consistently complain about Dan-Bunkering's failure to identify the substantive basis of B&G Futures's alleged liability – because that deficiency did impair B&G Futures's ability to defend this case. For example, B&G Futures was unable in its Motion for Summary Judgment to identify the elements of the claim on which it sought summary judgment for the simple reason that Dan-Bunkering had not identified the claim. (Appx. 99).

39.     But now that the Court has requested B&G Futures to brief the issue of admiralty jurisdiction, B&G Futures must respond with what it honestly believes to be the correct analysis of the issue. Although B&G Futures can overlook a procedural deficiency in the interest of judicial economy, subject matter jurisdiction cannot be created through waiver or consent, nor for the purpose of judicial economy. *Sanders v. Boeing Co.*, 2021 WL 3412509, p. 1 (5th Cir. 2021); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985).

40.     For this reason, B&G Futures responds to the Court's request for briefing on the issue of subject matter jurisdiction with this argument that the existence of admiralty jurisdiction depends

on whether the Ichor Oil - B&G Futures Contract is a maritime contract. The downstream contract between Ichor Oil and Dan-Bunkering is irrelevant to this inquiry.

### C.   The *Doiron* Test for Determining Whether a Contract Is Maritime

41.   The next step in the Court's analysis is to determine whether the Ichor Oil - B&G Futures Contract is maritime. This determination follows the conceptual approach set forth in *Kirby*, *Doiron*, and *Barrios*.

42.   The Supreme Court has stated that, "to ascertain whether a contract is a maritime one, … the answer depends upon the nature and character of the contract, and the criterion is whether it has reference or maritime service or maritime transactions." This inquiry focuses on whether the principal objective of the contract is maritime commerce. *Kirby*, 543 U.S. at 23-25, quoted in, *Barrios*, 942 F.3d at 676, 679-80; *In re Larry Doiron, Inc.*, 879 F.3d 568, 574 (5th Cir. 2018).

43.   This is so because the scope of admiralty jurisdiction is defined by the purpose of the jurisdictional grant, which is to protect maritime commerce. *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 608 (1991); *Barrios*, 942 F.3d at 676.

44.   The Fifth Circuit has implemented *Kirby* by adopting the two-part *Doiron* test to determine whether a contract is maritime in nature:

(1)   is the contract one to provide services to facilitate activity on navigable waters? and

(2)   if so, does the contract provide, or do the parties expect, that a vessel will play a substantial role in the completion of the contract?

*Barrios*, 942 F.3d at 678; *In re Larry Doiron*, 879 F.3d at 576.

45.   This test places the focus on the contract and the expectations of the parties. *Barrios*, 943 F.2d at 681; *In re Larry Doiron*, 879 F.3d at 576.

**D.      The Ichor Oil - B&G Futures Contract Is Not Maritime**

46.      The Ichor Oil - B&G Futures Contract is not a contract to provide services to facilitate activity on navigable waters. It therefore fails the first prong of the *Doiron* test and is not a maritime contract.

47.      Ichor Oil's purpose in purchasing the oil from B&G Futures was simply to turn around and immediately sell it to Dan-Bunkering. (Appx. 15, ¶ 2-3).

48.      Ichor Oil had no expectations regarding how the oil would be used after it was sold to Dan-Bunkering. (Appx. 61/16-23).

49.      B&G Futures was aware that Ichor Oil would immediately sell the oil to Dan-Bunkering, because Ichor Oil told it so. B&G Futures was also aware that Dan-Bunkering would likewise immediately sell the oil to Philips 66. B&G Futures and Ichor Oil both discussed these facts in text messages. (Appx. 11-14, ¶ 4, 10-14).

50.      The contract itself likewise fails to indicate any maritime purpose. The contract provides that the oil would be delivered "ex works" "as the product passes the last permanent outlet flange of the seller's shore tank." The oil might arrive be delivered by vessel, or it might be delivered by book, stock, or in-tank transfer. (Appx. 15-20, "Quantity," "Delivery Terms," "Payment," "Title and Risk of Loss").

51.      Oil of the grade specified in the contract has three common uses: (a) as fuel oil for marine vessels; (b) as fuel oil for electric power generating plants; and (c) as winter home heating oil. (Appx. 12, ¶ 5-7). The oil could have been intended by the ultimate end user – whoever that might have turned out to be – for any of those three purposes. Dan-Bunkering's assertion that the oil was suitable as marine fuel oil is, but it is also incomplete. (Appx. 18, ¶ 4).

52.      The reference to a vessel in the texts between Ichor Oil and B&G Futures was merely

speculation about whether other oil would be removed from onshore Tank 1711 via vessel or onshore piping so that it could be filled with the oil that B&G Futures was selling to Ichor Oil. That vessel has nothing at all to do with the Ichor Oil - B&G Futures contract. (Appx. 13, ¶ 16).

53.     The contract between Ichor Oil and B&G Futures was therefore not a contract to provide services to facilitate activity on navigable rivers. It was simply a contract to buy and sell a product. Such contracts have been repeatedly held to not be maritime contracts.

54.     This case is exactly like *Centurion Bulk Pte Ltd. v. Nustar Energy Serv., Inc.*, 2020 WL 8368319, p. 1-2 (S.D.Tex. 2020). In that case plaintiff Centurion purchased fuel oil for a vessel from defendant NuStar. Plaintiff Centurion then sued defendant NuStar alleging that the oil was substandard. Defendant NuStar then asserted a third party claim in admiralty against its supplier Glencore. The question was whether the NuStar - Glencore contract (analogous here to the Ichor Oil - B&G Futures contract) was a maritime contract.

55.     The Southern District of Texas held that the NuStar - Glencore contract was not maritime. The contract did not provide that delivery was to be by sea, but rather was to be FOB at the last permanent flange connection at the loading port. Neither did the contract specify what would be done with the oil after it was purchased by NuStar. This even though the contract contained such maritime clauses as laytime and demurrage. Thus the court found that "the principal objective of the contract was the sale of goods" and "the contract is not maritime in nature." *Id.*

56.     In reaching this decision, the Court never even considered the fact that the next downstream contract between NuStar and the Plaintiff Centurion (analogous here to the Dan-Bunkering - Ichor Oil contract) was a maritime contract. Because that was a different contract and was therefore irrelevant.

57.     This case also has significantly less maritime connection than the non-maritime

contract in *Preble-Rish*. In that case a contract for the sale of oil also had several clauses specifying how the oil was to be transported by sea. Even so, the Southern District of Texas again held that the principal purpose of the contract between the seller and the buyer of the oil was a sale of goods. The Court acknowledged that the numerous and specific maritime clauses in the contract made the case a close call. 558 F.Supp.3d at 434-36.

58.     The Ichor Oil - B&G Contract, in contrast, does not contain numerous maritime clauses. So the case here is not even a close call.

59.     Again, the first prong of the *Doiron* test to determine whether a contract is maritime is whether the contract is one to provide services to facilitate activity on navigable waters. *In re Larry Doiron, Inc.*, 879 F.3d at 576. Since this prong is not satisfied as to the Ichor Oil - B&G Futures Contract, the Court does not have admiralty jurisdiction over the claim for alleged breach of that contract.

## E.     Dan-Bunkering Offers No Controverting Evidence

60.     Dan-Bunkering offers a second affidavit from Matthew Sharkey and two loading slips in support of its argument for admiralty jurisdiction.

61.     Much of the Sharkey Affidavit is objectionable as hearsay, conclusory, or sham testimony that directly contradicts his prior affidavit testimony about who was Dan-Bunkering's customer.

62.     But none of that matters for the purpose of determining subject matter jurisdiction because they are both irrelevant. The question to be decided is whether the Ichor Oil - B&G Futures Contract is maritime. Neither the second Sharkey Affidavit dated November 8, 2022 nor the loading slips provide any help in resolving this question because they only purport to address a different contract, the downstream contract between Ichor Oil and Dan-Bunkering.

## IV. The Court Does Have Diversity Jurisdiction

### A.      The Court Has Diversity Jurisdiction in Fact

63.     The Court does have diversity jurisdiction over Dan-Bunkering's claim against B&G Futures.

64.     The requirements for diversity jurisdiction are that: (a) the suit is between citizens of different states; and (b) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

65.     A corporate entity is considered to be a citizen of the state in which its nerve center is located, meaning the company's headquarters where its officers direct, control, and coordinate its activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-95 (2010).

66.     Dan-Bunkering (America), Inc. is a citizen of either Texas or Connecticut. It is a Texas corporation with two offices in the United States, one in Texas and one Connecticut. (Appx. 39-42).

67.     Ichor Oil, LLC is a citizen of Florida. It is a Florida limited liability company with its only U.S. office located in Florida. (Appx. 43-46; Appx. 58/11-59/5, 60/15-23.).

68.     B&G Futures, Inc. is a citizen of Ohio. It is an Ohio corporation with its only office located in Ohio. (Appx. 55-58; Appx. 13, ¶ 17).

69.     Since the parties are all citizens of different states, the requirement of diversity of citizenship is satisfied. *McLaughlin v, Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004); *Chauvin v. Symetra Life Ins.*, Co,. 422 F.Supp.3d 1145, 1151 (E.D.La. 2019).

70.     The other requirement for diversity jurisdiction is also satisfied because Dan-Bunkering's claim against B&G Futures is for $350,000, more than the jurisdictional threshold of $75,000. (Appx. 80,, ¶ 7-8; Appx. 84, Dan-Bunkering's Motion for Summary Judgment, p. 1).

71.     The Court therefore has diversity jurisdiction over Dan-Bunkering's claim against

B&G Futures.

## B.     Diversity Jurisdiction Is Sufficiently Pleaded

72.     Although Plaintiff Dan-Bunkering has not pleaded diversity jurisdiction, B&G Futures has clearly done so. (Appx. 80,, ¶ 5).

73.     Should the Court determine that the facts supporting diversity jurisdiction are not sufficiently well pleaded in its First Amended Answer, B&G Futures requests leave to amend its Answer for the sole purpose of more clearly pleading the facts that support diversity jurisdiction.

74.     There is no problem in the fact that diversity jurisdiction is invoked in B&G Futures's Answer rather than in a pleading by Plaintiff. In a case decided by the Second Circuit, the plaintiff's complaint negated diversity jurisdiction by alleging that the amount in controversy exceeded $75,000, but also that both parties were citizens of the same state, New York. The Second Circuit nevertheless held that diversity jurisdiction was sufficiently pleaded because the defendant's answer denied that she was a citizen of New York and provided a Tennessee address. *Wright v. Musanti*, 887 F.3d 577, 584-85 (2nd Cir. 2018). Thus B&G Futures's pleading of diversity jurisdiction satisfies the requirement that the Court's jurisdiction appear in the record.

75.     Although B&G Futures has not located Fifth Circuit authority on this particular pleading issue, the Second Circuit's willingness to look at the pleadings of both parties to determine jurisdiction is similar to the Fifth Circuit's willingness to look at the pleadings of both parties in the context of motions for judgment on the pleadings under Fed. R. Civ. P. 12(c). *See, Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

76.     Moreover, when subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the parties may introduce evidence from outside the pleadings, and the Court may fid support for the exercise of jurisdiction based on the entire record including both the pleadings and

other facts that appear in the record. *Ambraco v. Bossclip, B.V.*, 570 F.3d 233, 238 (5th Cir. 2009);

*Robledo v. Myorkas*, 2022 WL 2824647, p. 2 (M.D.La. 2022). Here B&G Futures's Appendix in

support of this Brief contains sufficient evidence to support the Court's exercise of diversity

jurisdiction by a preponderance of the evidence through summary judgment-type evidence. *St. Paul

Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Chauvin*, 422 F.Supp.3d

at 1151.

## C.      The Exercise of Diversity Jurisdiction Will Not Disrupt the Case

77.      B&G Futures joins in Dan-Bunkering's request that the Court proceed to judgment

on the merits of this case. (Dan-Bunkering's Brief on Jurisdiction, p. 6-7). B&G Futures has already

incurred a substantial sum to defend this case, and it has no desire to start over and incur those costs

again. Fortunately, the Court can exercise diversity jurisdiction without any disruption to this case.

### 1.      The Pending Summary Judgment Motions

78.      Admiralty jurisdiction does not create substantive rights. Admiralty merely provides

procedural remedies to assert rights that exist under other, substantive law. *WAG SPV I, LLC v.

Fortune Global Shipping & Logistics, Ltd.*, ___ F.Supp.3d ___, 2020 WL 1489814, p. 5 (S.D.N.Y.

2020).

79.      Dan-Bunkering clearly stated in is Summary Judgment Response Brief that the

substantive law under which it seeks to recover is breach of contract. (Appx. 115).

80.      When exercising admiralty jurisdiction, the Court applies the federal common law

of breach of contract. *Paragon Asset Co., Ltd. v. Gulf Copper Co.*, 2022 WL 970551, p. 30

(S.D.Tex. 2022). B&G Futures has identified the elements of breach of contract under the federal

common law as:

(1)     the existence of a valid contract between B&G Futures and Ichor Oil;

(2)     Ichor Oil's performance of its obligations under the contract;

(3)     B&G Futures's breach of its obligations under the contract; and

(4)     damages.

*East Mountain Energy, LLC v. United Mine Workers of America*, 2016 WL 3747585, p. 2 (D.Utah 2016). (£ECF 114, p. 6).

81.     When exercising diversity jurisdiction, the Court instead applies state law relating to breach of contract. *In re Larry Doiron*, 879 F.3d at 577. But here the elements of breach of contract under state law would remain the same as those set out above, regardless of whether the Court applied the state law of:

- Texas, the forum state. *Harrison Co., L.L.C. v. A-Z Wholesalers, Inc.*, 44 F.4th 342, 346 (5th Cir. 2022);

- New Jersey, the state of delivery. *Martin v. DHL Express (USA), Inc.*, 580 F.Supp.3d 66, 72 (D.N.J. 2022);

- Ohio, the state of payment and of B&G Future's domicile. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006); or

- Florida, the state of Ichor Oil's domicile (omitting the second element above). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).

B&G Futures believes that the law of Texas, the forum state should control since no one has argued for the application of another state's law.

82.     Moreover, Dan-Bunkering is in no position to complain about the selection of which state's law governs the transaction since it has never even fulfilled its obligation under Local Rule 56.3(a)(1) to identify the elements of its claim for breach of contract despite repeated complaints from B&G Futures on this very point.

83.     Resolution of the currently pending motions for summary judgment is thus unaffected by whether the Court exercises admiralty jurisdiction or diversity jurisdiction.

84.     Since the substantive rights of the parties remain the same regardless of whether the Court applies the federal common law or the Texas state law of breach of contract, the currently pending summary judgment motions are unaffected whether the Court exercises jurisdiction in admiralty or diversity.

### 2.     The Pending Motion for Judgment on the Pleadings

85.     Likewise, resolution of B&G Futures's pending Motion for Judgment on the Pleadings is also unaffected by whether the Court exercises jurisdiction in admiralty or diversity. B&G Futures explicitly states in its motion that it seeks judgment on the pleadings under the *Twombly-Iqbal* standard applicable to all civil suits, including those in admiralty. (Appx. 86-90).

86.     It is true that Dan-Bunkering is not required in diversity to plead facts relating to the property to be garnished as would be required under Rule B.

87.     But Dan-Bunkering is required in both admiralty and diversity to plead something about B&G Futures. *DS-Rendite Fonds Nr. 108 v. Essar Capital Americas Inc.*, 882 F.3d 44, 50 (2nd Cir. 2018) (admiralty); *E.N. Bisso & Son, Inc., v. Bouchard Transp. Co., Inc.*, 2019 WL 7185555, p. 1-3 (D.Md. 2019) (admiralty); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (diversity); *Aldridge v. Mississippi Dept. of Corrections*, 990 F.3d 868, 873 (5th Cir. 2021) (diversity).

88.     Thus the pleading burden in admiralty and diversity is exactly the same with respect to Dan-Bunkering's substantive claim for breach of contract – with the sole exception that in diversity Dan-Bunkering's burden is slightly lower because it is not required to also plead facts relating to any property to be garnished.

89.     It would be different if Dan-Bunkering had complied with the pleading rules of admiralty and was now in default because its pleading was, without notice, being judged under a higher standard. But that is not the case here. The standard in diversity is in all respects the same or lower than in admiralty.

90.     Here Dan-Bunkering has not alleged anything at all about B&G Futures – not even B&G Futures's name – in any complaint, application, or other live pleading. This fact alone entitles B&G Futures to judgment on the pleadings under Fed. R. Civ. P. 12(c) whether in admiralty or diversity.

91.     Thus, the Court's rulings on the pending motions for summary judgment and for judgment on the pleadings will not be affected by the question of whether jurisdiction arises in admiralty or diversity. If Dan-Bunkering disagrees, then it can identify for the Court the points on which it would need to further brief the issues, and it can provide that additional briefing in a Reply to this Brief.

92.     B&G Futures joins in Dan-Bunkering's request that the Court proceed to judgment in order to avoid further delay or expense in this case.

## PRAYER

Wherefore, premises considered, Respondent B&G Futures, Inc. respectfully requests that the Court:

(A)     Find that it has subject matter jurisdiction of this case in diversity under 28 U.S.C. § 1332; and

(B)     Continue to administer this case without interruption, including considering and ruling on the dispositve motions that are currently pending; and

(C)     Grant B&G Futures such other, further, and general relief to which it may show itself to be justly entitled.

Respectfully submitted,

/s/ Kurt S. Elieson
_____
Kurt S. Elieson
Texas Bar No. 06521100
CARPENTER & ASSOCIATES
101 E. Park Blvd., Suite 1150
Plano, Texas 75074
972-455-8700 – Tel.
972-767-5599 – Fax
kurte@carplawfirm.com – Email

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2022 a true and correct copy of the foregoing document has been served via the Court's electronic notification system to all counsel of record.

/s/ Kurt S. Elieson
_____
Kurt S. Elieson