IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| DAN-BUNKERING (AMERICA), INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 3:20-cv-03341-S |
| v. | § | |
| | § | IN ADMIRALTY, RULE 9(h) |
| ICHOR OIL, LLC, | § | |
| | § | |
| Defendant | § | |

## B&G FUTURES'S APPENDIX IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

TO THE HONORABLE REBECCA SUTHERLAND, UNITED STATES MAGISTRATE JUDGE:

Now comes B&G Futures, Inc. to file this Appendix in Support of its Motion for Judgment

on the Pleadings as follows:

| Item | Description | Page |
|---|---|---|
| 1. | Dan-Bunkering Answers to Requests for Admission | 4 |
| 2. | Assignment of Claim | 10 |
| 3. | Declaration of Steve DiPietro | 11 |
| 4. | Affidavit of Gary Stanley | 15 |
| 5. | Affidavit of Matthew Sharkey #1 | 16 |
| 6. | Affidavit of Matthew Sharkey #2 | 18 |
| 7. | Second Declaration of Steve DiPietro | 23 |
| 8. | Contracts and Invoices | 27 |
| 9. | Text Messages | 33 |

November 28, 202210.    Certificate of Formation of Dan-Bunkering . . . . . . . . . . . . . . . . 39

11.    Dan-Bunkering Webpage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

12.    Certificate of Formation of Ichor OIl . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

13.    Ichor Oil Webpage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

14.    Certificate of Formation of B&G Futures. . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

15.    Deposition of Gary Stanley. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

16.    Dan-Bunkering's Original Complaint (ECF 1). . . . . . . . . . . . . . . . . . . . . . . . 65

17.    Return of Summons (ECF 17) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

18.    Dan-Bunkering Request for Writ to B&G Futures (ECF 19). . . . . . . . . . . . . 73

19.    Default Judgment against Ichor Oil (ECF 38) . . . . . . . . . . . . . . . . . . . . . . . . 78

20.    B&G Futures First Amended Answer (ECF 91). . . . . . . . . . . . . . . . . . . . . . . 79

21.    Dan-Bunkering's Motion for Summary Judgment (ECF 98) . . . . . . . . . . . . . 84

22.    B&G Futures Brief in Support of Motion on the Pleadings (ECF 102) . . . . . . . . . . . . 86

23.    B&G Futures Brief in Support of Motion for Summary Judgment (ECF 106) . . . . . . . 99

24.    Dan-Bunkering Response to Summary Judgment (ECF 107) . . . . . . . . . . . . . . . . . 111

25.    Dan-Bunkering Brief Opposing Summary Judgment (ECF 108). . . . . . . . . . . . . . . . 116

Respectfully submitted,

  /s/ Kurt S. Elieson
Kurt S. Elieson
Texas Bar No. 06521100
KurtE@CarpLawFirm.com
CARPENTER & ASSOCIATES
555 Republic Drive, Suite 510
Plano, Texas 75074
972-455-8700 – Tel.
972-807-3837 – Fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served upon all counsel of record at the time of filing via the Court's electronic notification system.

  /s/ Kurt S. Elieson
Kurt S. Elieson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | | |
|---|---|---|
| Dan-Bunkering (America) Inc., | § | |
| | § | CIVIL ACTION NO.: 20-cv-3341-S-BT |
| Plaintiff, | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| vs. | § | |
| | § | **DAN-BUNKERING (AMERCIA), INC.'S** |
| IChor Oil, LLC, et al., | § | **RESPONSE TO B&G FUTURES, INC.'S** |
| | § | **REQUESTS FOR ADMISSION NO.1-19** |
| Defendant and Garnishees. | § | |

Dan-Bunkering (America) Inc. ("Dan-Bunkering") provides its responses and objections

as follows to B&G Futures, Inc. ("B&G") Requests for Admission No. 1-19.

## RESPONSES

**REQUEST FOR ADMISSION NO. 1:** Please admit or deny: That the document served
herewith as Ex. C is a true and correct copy of an assignment of claims from Ichor Oil, LLC to
Dan-Bunkering (America), Inc.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 2:** Please admit or deny: That the document served
herewith as Ex. D is a true and correct copy of a pro forma transmitted by B&G Futures, Inc. to
Ichor Oil, LLC on or about August 22, 2019.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

The document purports to be a B&G document; Dan Bunkering does not know whether or when,

or if at all, B&G "transmitted" it. Dan Bunkering has made reasonable inquiry and that the

information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 3:** Please admit or deny: That the document served
herewith as Ex. E is a true and correct copy of a pro forma transmitted by B&G Futures, Inc. to
Ichor Oil, LLC on or about August 22, 2019.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

The document purports to be a B&G document; Dan Bunkering does not know whether or when,

or if at all, B&G "transmitted" it. Dan Bunkering has made reasonable inquiry and that the

information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 4:** Please admit or deny: That the document served herewith as Ex. F is a true and correct copy of an invoice transmitted by B&G Futures, Inc. to Ichor Oil, LLC on or about August 22, 2019.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

The document purports to be a B&G document; Dan Bunkering does not know whether or when,

or if at all, B&G "transmitted" it. Dan Bunkering has made reasonable inquiry and that the

information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 5:** Please admit or deny: That the document served herewith as Ex. G is a true and correct copy of an invoice transmitted by B&G Futures, Inc. to Ichor Oil, LLC on or about August 27, 2019.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

The document purports to be a B&G document; Dan Bunkering does not know whether or when,

or if at all, B&G "transmitted" it. Dan Bunkering has made reasonable inquiry and that the

information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 6:** Please admit or deny: That the document served herewith as Ex. H is a true and correct copy of a confirmation by BB&T of the wire transmission of $350,000 from Ichor Oil, LLC to B&G Futures, LLC on or about August 28, 2019.

**RESPONSE:** Denied. The wire is to Andy Ginella's client trust account.

**REQUEST FOR ADMISSION NO. 7:** Please admit or deny that: On or about December 4, 2020 Defendant Ichor Oil, LLC assigned to Plaintiff Dan-Bunkering (America) Inc. any and all claims that Defendant Ichor Oil, LLC may have against B&G Futures, Inc.

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 8:** Please admit or deny that: The only parties to the Contract were B&G Futures, Inc. and Ichor Oil, LLC.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

Dan Bunkering further objects to this request because it is unclear, not defining which "contract"

it refers to. Without waiving this objection, Dan Bunkering states that the parties to the contract

between Dan Bunkering and Ichor, for the sale to Dan Bunkering of marine fuel for $500,000, was between Dan Bunkering and Ichor. There also was a contract between B&G and Ichor to sell marine fuel to Ichor for at least $350,000, to fulfill the Ichor contact with Dan Bunkering. B&G, by Tiku Vyas, promised to return the $350,000 to Dan Bunkering but reneged on that promise and pocketed the $350,000, providing nothing either to Ichor or to Dan Bunkering.

**REQUEST FOR ADMISSION NO. 9:** Please admit or deny that: The purpose for which Ichor Oil, LLC sought to purchase fuel oil from B&G Futures, Inc. was for resale to Dan-Bunkering (America), Inc.

**RESPONSE:** Admitted that Dan Bunkering paid Ichor $500,000 for marine fuel oil which was never delivered by B&G to Ichor, and thus from Ichor to Dan Bunkering. Please also see response to Request No. 8.

**REQUEST FOR ADMISSION NO. 10:** Please admit or deny that: Plaintiff Dan-Bunkering (America) Inc.'s claim of a right to recover against B&G Futures, Inc. is based upon the allegation that B&G Futures breached the Contract.

**RESPONSE:** Denied. The claim is that moneys are owed to Ichor because of B&G's failure to deliver marine fuel to Ichor, and B&G's receipt of $350,000 from Ichor, and providing nothing to Ichor and from Ichor, to Dan Bunkering. B&G, by Tiku Vyas, promised to return the $350,000 to Dan Bunkering but reneged on that promise and pocketed the $350,000, providing nothing either to Ichor or to Dan Bunkering.

**REQUEST FOR ADMISSION NO. 11:** Please admit or deny that: The Contract was for the sale of approximately 100,000 barrels of fuel oil, which was revised upward to 107,500 barrels.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request. Dan Bunkering further objects to this request because it is unclear, not defining which "contract" it refers to. Dan Bunkering has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 12:** Please admit or deny that: The purchase price for the fuel oil in connection with the Transaction was $53.05 per barrel (subject to "Final price and volume to be reconciled upon loading").

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

Dan Bunkering further objects to this request because it is unclear, not defining which

"Transaction" it refers to. Dan Bunkering has made reasonable inquiry and that the information

it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 13:** Please admit or deny that: The purchase price for the 107,500 barrels of fuel oil in connection with the Transaction was $5,697,875 (subject to "Final price and volume to be reconciled upon loading").

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

Dan Bunkering further objects to this request because it is unclear, not defining which

"Transaction" it refers to. Dan Bunkering has made reasonable inquiry and that the information

it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 14:** Please admit or deny that: The terms of the Contract required Ichor Oil, LLC to pay the full purchase price of the fuel oil to B&G Futures, Inc. before B&G Futures, Inc. delivered the fuel oil.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

Dan Bunkering further objects to this request because it is unclear, not defining which

"Contract" it refers to. Dan Bunkering has made reasonable inquiry and that the information it

knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 15:** Please admit or deny that: By August 26, 2019, Ichor Oil, LLC was delinquent in making payment to B&G Futures under the Contract.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

Dan Bunkering further objects to this request because it is unclear, not defining which

"Contract" it refers to. Dan Bunkering has made reasonable inquiry and that the information it

knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 16:** Please admit or deny that: B&G Futures Invoice No. 717993 was for 100,000 barrels of fuel oil at a purchase price of $5,305,000.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

The document purports to be a B&G document; Dan Bunkering does not know whether or when,

B&G issued the invoice if at all or to whom. Dan Bunkering has made reasonable inquiry and

that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 17:** Please admit or deny that: B&G Futures Invoice No. 717994 was for 7,500 barrels of fuel oil for a total purchase price of $397,875 (subject to "Final price and volume to be reconciled upon loading").

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

The document purports to be a B&G document; Dan Bunkering does not know whether or when,

B&G issued the invoice if at all or to whom. Dan Bunkering has made reasonable inquiry and

that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

**REQUEST FOR ADMISSION NO. 18:** Please admit or deny that: The bank's confirmation of the wire transfer of $350,000 from Ichor Oil, LLC to B&G Futures, Inc. references "Invoice 717993. Purchase of Diesel."

**RESPONSE:** Admitted.

**REQUEST FOR ADMISSION NO. 19:** Please admit or deny that: The purpose of the $350,000 payment from Ichor Oil, LLC to B&G Futures, Inc. was to obtain an extension of the time during which Ichor Oil, LLC could purchase the fuel oil from B&G Futures, Inc. under the Contract.

**RESPONSE:** Dan Bunkering is without sufficient information to admit or deny this request.

Dan Bunkering has made reasonable inquiry and that the information it knows or can readily

obtain is insufficient to enable it to admit or deny.

Dated: February 4, 2022.

/s/ J. Stephen Simms
J. Stephen Simms (admitted *pro hac vice*)
Simms Showers LLP
201 International Circle, Ste. 230
Baltimore, Maryland 21030
Telephone:     (410) 783-5795
Facsimile:      (410) 510-1789
jssimms@simmsshowers.com

Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
Emily R. Steppick
emily.steppick@kellyhart.com
State Bar No. 24117095

KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

Counsel for Dan-Bunkering (America) Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2022 I caused the foregoing Dan Bunkering Response

to B&G's Requests for Admissions to be served by email/.pdf imaged to B&G counsel:

Kurt S. Elieson
Carpenter & Associates
101 East Park Blvd., Suite 1150
Plano, Texas 75074
972-455-8700 - Main
940-300-3801 - Cell
KurtE@CarpLawFirm.com

/s/ J. Stephen Simms

## **ASSIGNMENT**

For value received, Ichor Oil, LLC assigns to Dan-Bunkering (America) Inc. all right, title and interest to all rights of recovery and causes of action which Ichor Oil, LLC has or may have against B&G Futures, Inc. and any and all of its affiliates, employees, consultants, attorneys, officers, managers, managing members or directors, including but not limited to Chirag ("Tiku") Vyas, Steve DiPietro, and/ or Andrea Ginella.

*Gary Stanley*
_____
C. Gary Stanley, CEO
Ichor Oil, LLC

December 4, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| DAN-BUNKERING (AMERICA), INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 3:20-cv-03341-D |
| v. | § | |
| | § | IN ADMIRALTY, RULE 9(h) |
| ICHOR OIL, LLC, | § | |
| | § | |
| Defendant | § | |

## UNSWORN DECLARATION OF STEVEN P. DIPIETRO

| | |
|---|---|
| STATE OF OHIO | § |
| | § |
| COUNTY OF STARK | § |

1.       "My name is Steven P. DiPietro. I am the President of B&G Futures, Inc. The facts stated in this Declaration are true and correct and are within my personal knowledge.

2.       "I am familiar with the facts stated in this Declaration based upon my personal involvement in the events described, my 10 years of experience in the oil trading business, and the fact that I have lived 61 years in Ohio where many people use fuel oil to warm their homes during the winter.

3.       "References in this Declaration to the "oil" are to the approximately 107,500 barrels of oil that B&G Futures contracted to sell to Ichor Oil.

4.       "The sale from B&G Futures to Ichor Oil was just one in a series of transactions:

(a)       "B&G Futures contracted to acquire the oil from Maersk;

(b)       "B&G Futures also contracted to sell the oil to Ichor Oil;

(c)       "I am told that Ichor Oil contracted to sell the oil to Dan-Bunkering;

(d)       "I am told that Dan-Bunkering sold the oil to Philips 66.

5.      "The grade of the 107,500 barrels of oil that B&G Futures sold to Ichor Oil was "RMK 500-700."

6.      "Matthew Sharkey states in his Affidavit dated November 8, 2022 that this "is a grade of high sulfur fuel specifically designed for burning and consumption by marine vessel engines." While this statement is true, it is also incomplete.

7.      "In fact this grade of oil is designed for, and has, *three* common uses:

(a)      as fuel for marine vessels;

(b)      as fuel for electric power generating plants; and

(c)      as home heating oil in the northeastern United States during the winters months.

8.      "Thus the grade "RMK 500-700" does not indicate that the oil *will* be used as fuel for a vessel at some subsequent of ownership, but only that it *might* be used as fuel for a vessel.

9.      "In the 6 pages of texts between me and Gary Stanley filed in this case as ECF 116-1, the reference to "P66" means Philips 66, which operates a large oil depot at Bayonne, New Jersey.

10.      "When B&G Futures entered into the contract with Ichor Oil in August 2019, I was aware that Ichor Oil would turn around and immediately sell the oil to Dan-Bunkering because Gary Stanley told me so. I was also aware that Dan-Bunkering would likewise turn around and sell the oil to Philips 66 because Philips 66 Operations called me and told me so during about this same time.

11.      "In the texts on page 2 of 6, Gary Stanley said that Matthew Sharkey "was shocked when I told him p66," meaning that Matt Sharkey had not realized until then that Gary Stanley and I were aware that Dan-Bunkering was purchasing the oil for resale to Philips 66.

12.      "Our understanding that Dan-Bunkering was reselling the oil to Philips 66 is again reflected in the statement on page 3 of 6 of the texts, where reference is made to Matthew Sharkey of Dan-Bunkering and the fact that "he charged p66" for the oil. The fact that Philips 66 was paying money to Dan-Bunkering demonstrates that Dan-Bunkering was selling the oil to Philips 66.

13.      "The fact that Dan-Bunkering was reselling the oil to Philips 66 is again reflected in the texts on page 3 of 6 in the statement that Matthew Sharkey of Dan-Bunkering wanted the analysis of the oil in order to justify the price that he was charging Philips 66 for the oil.

14.     "If Dan-Bunkering had instead hired Philips 66 to deliver Dan-Bunkering's oil to customers of Dan-Bunkering, then it would instead have been Dan-Bunkering who was paying money to Philips 66. Since the money went in the other direction from Philips 66 to Dan-Bunkering, it is clear that ownership of the oil passed from Dan-Bunkering to Philips 66.

15.     "There is also a reference in the texts on page 5 of 6 that the oil (which was being sold by Maersk) was being held in an onshore tank and that Marc Holmes of Maersk was anxious to get the sale closed so he could transfer the oil out of that tank and use the tank to hold some other oil.

16.     "In the texts on page 1 of 6 reference is also made to a transfer, tanks and a barge. "1711" identifies the tank where the oil was delivered. Tank 1711 had to be emptied so that the oil being sold by B&G Futures to Ichor Oil could be delivered to Tank 1711. I explained in my text that Tank 1711 might be emptied to make room for our oil by transferring the other oil to a different tank either via onshore pipes or via loading onto "their barge," meaning a barge owned or used by the owner of that other oil. The barge had no reference to transport of the oil sold by B&G Futures to Ichor Oil.

17.     "B&G Futures is an Ohio company with its headquarters and principal place of business in Ohio where all business decisions are made. B&G Futures does not have any locations outside of Ohio.

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Executed on November 28, 2022.

_____
Steve DiPietro

14. "If Dan-Bunkering had instead hired Philips 66 to deliver Dan-Bunkering's oil to customers of Dan-Bunkering, then it would instead have been Dan-Bunkering who was paying money to Philips 66. Since the money went in the other direction from Philips 66 to Dan-Bunkering, it is clear that ownership of the oil passed from Dan-Bunkering to Philips 66.

15. "There is also a reference in the texts on page 5 of 6 that the oil (which was being sold by Maersk) was being held in an onshore tank and that Marc Holmes of Maersk was anxious to get the sale closed so he could transfer the oil out of that tank and use the tank to hold some other oil.

16. "In the texts on page 1 of 6 reference is also made to a transfer, tanks and a barge. "1711" identifies the tank where the oil was delivered. Tank 1711 had to be emptied so that the oil being sold by B&G Futures to Ichor Oil could be delivered to Tank 1711. I explained in my text that Tank 1711 might be emptied to make room for our oil by transferring the other oil to a different tank either via onshore pipes or via loading onto "their barge," meaning a barge owned or used by the owner of that other oil. The barge had no reference to transport of the oil sold by B&G Futures to Ichor Oil.

17. "B&G Futures is an Ohio company with its headquarters and principal place of business in Ohio where all business decisions are made. B&G Futures does not have any locations outside of Ohio.

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Executed on November 28, 2022.

Steve DiPietro

B&G Jurisdiction Appx. 014

## **AFFIDAVIT OF GARY STANLEY**

Gary Stanley certifies as follows:

1.      I am CEO of Ichor Oil, LLC, over 18 years old and competent to make this affidavit.

2.      On or about August 26, 2019, Ichor Oil sold to Dan-Bunkering America, Inc. 110,000 Barrels of fuel oil and received from Dan-Bunkering America, Inc. an initial payment of $500,000.

3.      To fulfill the sale contract to Dan-Bunkering America, Inc., Ichor Oil entered into a contract with B&G Futures Inc. to sell to Ichor Oil approximately 107,500 barrels of fuel oil, which was revised upward to 110,000.

4.      By agreement with B&G Futures, Ichor Oil accordingly on August 29, 2019 wired $350,000 to the client trust account of B&G Futures' lawyer, Andrea (Andy) Ginella for the benefit of B&G Futures.

5.      Afterwards, however, B&G Futures failed to provide the oil, and Ichor Oil therefore was unable to fulfill its contract with Dan-Bunkering America, Inc.

6.      B&G Futures owes Ichor Oil at least $350,000, for the 110,000 Barrels of fuel oil that Ichor Oil paid B&G Futures for, with money received from Dan-Bunkering America, Inc. but that B&G Futures never delivered or provided to Ichor Oil.  This $350,000 debt is the debt due from B&G Futures to Ichor Oil.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 20, 2021.

_Gary Stanley_
C. Gary Stanley, CEO
Ichor Oil, LLC

- 1 -

## <u>AFFIDAVIT OF MATTHEW SHARKEY</u>

Matthew Sharkey certifies as follows:

1.      I am over 18 years old and competent to make this affidavit.

2.      I am and was at the time of Dan-Bunkering's transactions with Ichor Oil and Maersk in August, 2019, Senior Purchaser of Dan-Bunkering (America) Inc.'s branch office in Stamford, Connecticut.

3.      On the 21st of August 2019, I approached Gary Stanley of Ichor Oil ("Ichor") in order to buy about 105,000 barrels of marine fuel (bunkers) for the account of Dan-Bunkering (America) Inc.

4.      After Ichor Oil submitted necessary documentation, Dan-Bunkering approved the transaction.  I agreed on behalf of Dan-Bunkering, that Dan-Bunkering would wire Ichor an initial $500,000 as a deposit, with the remainder to follow when the bunkers were delivered to Dan-Bunkering.

5.      Sometime during my conversations with Gary Stanley I asked him about the source of the bunkers. He said it was Maersk (a large vessel operator, which has a bunkering operation) and that he was dealing with a person "at Maersk" named Steve DiPietro.  Because I had never heard of someone at Maersk named Steve DiPietro, I spoke with Marc Refso Holm, a friend and business partner at Maersk bunkering operations.

6.      Gary Stanley later told me that Steve DiPietro was a principal of B&G Futures, and I learned from Marc that Maersk from time to time was buying oil blending components from B&G.

7.      Around August 27, 2020, Dan-Bunkering caused $500,000 to be wired to Ichor's bank account.

Dan Apx 001

8.      Just after the wire went out to Ichor's account, Tiku Vyas, who I learned was an officer or employee of B&G Futures, telephoned me.  I had never spoken with Tiku Vyas before this call.  He asked, "did you just wire $500,000 to Ichor?"  When I responded "yes" Tiku said, "Gary Stanley is a crook, get him to send the money back."

9.      Tiku told me that B&G was buying the bunkers from Maersk, and then selling them to Ichor.

10.     I called Gary Stanley, who told me that he had wired out the money that Dan-Bunkering had sent Ichor, to B&G (this without specifying how much was wired).  There was never any suggestion by Gary Stanley that any amount sent to B&G was a non-refundable "option" or at all non-refundable; it was to pay for bunkers which Dan-Bunkering was to receive through Ichor and to be refunded if they did not receive the bunkers.

11.     In a later conversation, Tiku told me that Gary Stanley and/or Ichor owed B&G money from a previous transaction that had gone bad.   Tiku suggested that as an act of good faith and potentiality to act as business partner to Dan-Bunkering and our global supply group in the future, B&G would seek to recover and wire back the $350,000 to Dan-Bunkering.  B&G from what we understand never recovered the funds from Ichor, hence never did return the $350,000 as they said they would to Dan-Bunkering.

12.     Dan-Bunkering never received any bunkers from Ichor.  To fulfill commitment to Dan-Bunkering's client a deal was made with Maersk via B&G, not involving Ichor in any form, where B&G was to receive commission to be paid out as soon as they had recovered the mentioned $350,000 from Ichor, which eventually never happened.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 18, 2022.


/s/ Matthew Sharkey

Dan Apx 002

## <u>AFFIDAVIT OF MATTHEW SHARKEY</u>

Matthew Sharkey certifies as follows:

1.      I am over 18 years old and competent to make this affidavit.

2.      I refer to and incorporate my May 19, 2022, to this affidavit.

3.      Dan-Bunkering's sole business is the sale of marine fuel for provision to ocean-going vessels.

4.      The marine fuel (bunkers) that Dan-Bunkering bought from Ichor Oil, which Ichor Oil failed to deliver, was to be "RMK 500-700," which is a grade of high sulfur fuel specifically for burning and consumption by marine vessel engines.

5.      The ultimate source of the bunkers was Maersk (a large vessel operator, which has a bunkering operation).

6.      Dan-Bunkering's traders receive orders from customers which operate ocean-going vessels.  Dan-Bunkering purchased the bunkers, to fulfill these orders.

7.      When Dan-Bunkering did not receive the bunkers from Ichor, Dan-Bunkering Bunkering contracted directly with Maersk to purchase the bunkers, which were located in shore tanks at Bayonne, New Jersey.   In order to have the bunkers delivered to Dan-Bunkering's customers, Dan-Bunkering then sold the bunkers to Phillips 66, which operates bunker barges in the New York Harbor.

8.      Using its bunker barges, Phillips 66 then fueled the vessels of Dan-Bunkering's customers.  When the fueling was complete, Phillips 66 issued bunker delivery notes, examples herewith.  This is the same way that Dan-Bunkering expected, had Ichor fulfilled its contract with Dan-Bunkering, to have the bunkers to be purchased from Ichor, be loaded aboard the vessels of Dan-Bunkering's customers.

<span style="color:red">**Exhibit 2**</span>

9.      Dan-Bunkering's contract with Ichor for the bunkers was to provide services to facilitate activity on navigable waters.  Specifically, the entire purpose of the contract was to make bunkers available for Dan-Bunkering's customers, which operate vessels on navigable waters.

10.     Dan-Bunkering expected that its customers' vessels would play a substantial role in the completion of the contract with Ichor.  Namely, it if were not for the need to provide bunkers to Dan-Bunkering's customers, Dan-Bunkering would have had no reason to contract with Ichor to buy the bunkers.


I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 8, 2022.


/s/ Matthew Sharkey



Phillips 66 Company
2331 CityWest Blvd
Houston, TX 77042
Phone: (832) 765-3010

**Bunker Delivery Receipt**

| Vessel Name / IMO# | | Flag *LIBERIA* | Date 09/15/19 |
|---|---|---|---|
| M/V ZIM SHEKOU   9322322 | | | |

| Terminal Location | Delivery Location / Port |
|---|---|
| IMTT Bayonne, NJ | Maher Terminal (Port Elizabeth, NJ) |

| Product Description | Weight(MT) | Gross Barrels | Net Barrels | Gravity API | Density @ 15C | Visc. CST @ 50°C | Temp °F | Flash °F | Pour °F | Sulphur % Wt. |
|---|---|---|---|---|---|---|---|---|---|---|
| RMK-500 | 1,502.040 | 9,777.36 | 9,561.04 | 11.4 | 989.6 | 228.4 | 117.52 | 184 | 43 | 2.99 |
| | | | | | | | | | | |
| | | | | | | | | | | |

| Sample Seal Numbers | Remarks | | Date | Time |
|---|---|---|---|---|
| MARPOL 200918 | | Barge Along Side | 09/15/19 | 15:50 |
| | | Hose Connected | 09/15/19 | 16:35 |
| Supplier | | Started Pumping | 09/15/19 | 17:25 |
| Ship   200919 | | Finished Pumping | 09/15/19 | 21:40 |
| | | Hose Disconnected | 09/15/19 | 22:20 |
| Barge   200920 | | Barge Away | 9/15/19 | 2255 |

No disclaimer of any type or form will be accepted on the Marine Bunker Delivery Receipt, and if any words of disclaimer are applied, they will not alter, impair or waive Phillip 66 Company's maritime lien against the vessel or affect the vessel's ultimate responsibility for the debt incurred through this transaction. The fuel delivered conforms with Regulation 18.3 of MARPOL Annex VI (the "Annex") and the sulphur content of the fuel delivered does not exceed:

[✓] the limit value given by Regulation 14.1 of the Annex; or

[ ] the limit value given by Regulation 14.4 of the Annex; or

[ ] the purchaser's specified limit value of _____ (% m/m), as completed by Phillips 66 Company's representative and on the basis of the purchaser's notification that the fuel oil is intended to be used: (1) in combination with an equivalent means of compliance in accordance with Regulation 4 of the Annex; or (2) is subject to a relevant exemption for a ship to conduct trials for sulphur oxides emission reduction and control technology research in accordance with Regulation 3.2 of the Annex. If no selection is made above, then the first option ("the limit value given by Regulation 14.1 of the Annex") shall apply.
All disputes arising from this sale shall be resolved in accordance with Maritime Law of the United States of America.

| Vessel's Next Destination *SAVANNAH* |
|---|

| Samples Given to Chief Engineer (Signature) | Ship's Engineer Invited to Check Gauges: [✓] Yes [ ] No | Gauges witness by Ship's Rep: [✓] Yes [ ] No |
|---|---|---|

| Delivery Company Vane Line Bunkering, Inc.   DS304 | Received for use as bunkers, together with representative sample, the quantities shown above. Exact quantities shown are subject to correction in case of error. |
|---|---|
| By (Signature) George Foreman   *George Foreman* | Master/Chief Engineer (Signature) Ch. Eng *[signature]* |
| Date 9/15/19 | Date 15.09.2019 |

*[Ship stamp: ZIM SHEKOU  IMO 9322322  MONROVIA]*

9/3.F. 1-15

B&G Jurisdiction Appx. 020



**Bunker Delivery Receipt**

Phillips 66 Company
2331 CityWest Blvd
Houston, TX 77042
Phone: (832) 765-3010

| Vessel Name / IMO# | | Flag | Date |
|---|---|---|---|
| M/V ATHOS    9408293 | | ~~Marshall Islands~~  LIBERIA | 09/05/19 |

| Terminal Location | Delivery Location / Port |
|---|---|
| IMTT Con Hook (Bayonne, NJ) | Global Container Terminals (Jersey City, NJ) |

| Product Description | Weight(MT) | Gross Barrels | Net Barrels | Gravity API | Density @ 15C | Visc. CST @ 50°C | Temp °F | Flash °F | Pour °F | Sulphur % Wt. |
|---|---|---|---|---|---|---|---|---|---|---|
| RMK-700 | 3,998.330 | 25,831.21 | 25,200.64 | 10.0 | 999.4 | 420.9 | 124.39 | 184 | 43 | 2.39 |
| | | | | | | | | | | |
| | | | | | | | | | | |

| Sample Seal Numbers | Remarks | | Date | Time |
|---|---|---|---|---|
| MARPOL 252661/~~247939~~ 247944 | LAB-252657/~~247943~~ 247948 | Barge Along Side | 09/05/19 | 19:25 |
| | SURV-252656/~~247942~~ 247947 | Hose Connected | 09/05/19 | 20:45 |
| Supplier B1-252660/~~247940~~ 247945 | | Started Pumping | 09/05/19 | 21:00 |
| Ship 252659/~~247938~~ 247943 | | Finished Pumping | 09/06/19 | 04:10 |
| | | Hose Disconnected | 09/06/19 | 0545 |
| Barge B2-252658/~~247941~~ 247946 | | Barge Away | 09/06/19 | 0630 |

No disclaimer of any type or form will be accepted on the Marine Bunker Delivery Receipt, and if any words of disclaimer are applied, they will not alter, impair or waive Phillip 66 Company's maritime lien against the vessel or affect the vessel's ultimate responsibility for the debt incurred through this transaction. The fuel delivered conforms with Regulation 18.3 of MARPOL Annex VI (the "Annex") and the sulphur content of the fuel delivered does not exceed:

- [✓] the limit value given by Regulation 14.1 of the Annex; or
- [ ] the limit value given by Regulation 14.4 of the Annex; or
- [ ] the purchaser's specified limit value of _____ (% m/m), as completed by Phillips 66 Company's representative and on the basis of the purchaser's notification that the fuel oil is intended to be used: (1) in combination with an equivalent means of compliance in accordance with Regulation 4 of the Annex; or (2) is subject to a relevant exemption for a ship to conduct trials for sulphur oxides emission reduction and control technology research in accordance with Regulation 3.2 of the Annex. If no selection is made above, then the first option ("the limit value given by Regulation 14.1 of the Annex") shall apply.

All disputes arising from this sale shall be resolved in accordance with Maritime Law of the United States of America.

Vessel's Next Destination

| Samples Given to Chief Engineer (Signature) | Ship's Engineer Invited to Check Gauges: | Gauges witness by Ship's Rep: |
|---|---|---|
| Yes | [✓] Yes   [ ] No | [✓] Yes   [ ] No |

| Delivery Company | Received for use as bunkers, together with representative sample, the quantities shown above. Exact quantities shown are subject to correction in case of error. |
|---|---|
| Vane Line Bunkering, Inc.    DS305 | |

| By (Signature) | Master/Chief Engineer (Signature) | SHIP STAMP |
|---|---|---|
| Scott Stevens | | MASTER |
| Date | Date | |
| 09/06/19 | Sept. 06. 2019 | |

B&G Jurisdiction Appx. 021



Phillips 66 Company
2331 CityWest Blvd
Houston, TX 77042
Phone: (832) 765-3010

**Bunker Delivery Receipt**

| Vessel Name / IMO# | | Flag LIBERIA | Date 09/15/19 |
|---|---|---|---|
| M/V ZIM SHEKOU   9322322 | | | |

| Terminal Location | Delivery Location / Port |
|---|---|
| IMTT Bayonne, NJ | Maher Terminal (Port Elizabeth, NJ) |

| Product Description | Weight(MT) | Gross Barrels | Net Barrels | Gravity API | Density @ 15C | Visc. CST @ 50°C | Temp °F | Flash °F | Pour °F | Sulphur % Wt. |
|---|---|---|---|---|---|---|---|---|---|---|
| RMK-500 | 1,502.040 | 9,777.36 | 9,561.04 | 11.4 | 989.6 | 228.4 | 117.52 | 184 | 43 | 2.99 |
| | | | | | | | | | | |
| | | | | | | | | | | |

| Sample Seal Numbers | Remarks | | Date | Time |
|---|---|---|---|---|
| MARPOL 200918 | | Barge Along Side | 09/15/19 | 15:50 |
| | | Hose Connected | 09/15/19 | 16:35 |
| Supplier | | Started Pumping | 09/15/19 | 17:25 |
| Ship   200919 | | Finished Pumping | 09/15/19 | 21:40 |
| | | Hose Disconnected | 09/15/19 | 22:20 |
| Barge   200920 | | Barge Away | 9/15/19 | 2255 |

No disclaimer of any type or form will be accepted on the Marine Bunker Delivery Receipt, and if any words of disclaimer are applied, they will not alter, impair or waive Phillip 66 Company's maritime lien against the vessel or affect the vessel's ultimate responsibility for the debt incurred through this transaction. The fuel delivered conforms with Regulation 18.3 of MARPOL Annex VI (the "Annex") and the sulphur content of the fuel delivered does not exceed:

☑ the limit value given by Regulation 14.1 of the Annex; or

☐ the limit value given by Regulation 14.4 of the Annex; or

☐ the purchaser's specified limit value of ____ (% m/m), as completed by Phillips 66 Company's representative and on the basis of the purchaser's notification that the fuel oil is intended to be used: (1) in combination with an equivalent means of compliance in accordance with Regulation 4 of the Annex; or (2) is subject to a relevant exemption for a ship to conduct trials for sulphur oxides emission reduction and control technology research in accordance with Regulation 3.2 of the Annex. If no selection is made above, then the first option ("the limit value given by Regulation 14.1 of the Annex") shall apply. All disputes arising from this sale shall be resolved in accordance with Maritime Law of the United States of America.

| Vessel's Next Destination | SAVANNAH |
|---|---|

| Samples Given to Chief Engineer (Signature) | Ship's Engineer Invited to Check Gauges: ☑ Yes   ☐ No | Gauges witness by Ship's Rep: ☑ Yes   ☐ No |
|---|---|---|

| Delivery Company | Received for use as bunkers, together with representative sample, the |
|---|---|
| Vane Line Bunkering, Inc.   DS304 | quantities shown above. Exact quantities shown are subject to correction in case of error. |
| By (Signature) George Foreman | Master/Chief Engineer (Signature) Ch. Eng |
| Date 9/15/19 | Date 15.09.2019 |

SHIP STAMP

C/S ZIM SHEKOU
IMO
9322322
MONROVIA

9-1/3-F. 1-15

B&G Jurisdiction Appx. 022

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| DAN-BUNKERING (AMERICA), INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 3:20-cv-03341-D |
| v. | § | |
| | § | IN ADMIRALTY, RULE 9(h) |
| ICHOR OIL, LLC, | § | |
| | § | |
| Defendant | § | |

## SECOND UNSWORN DECLARATION OF STEVEN P. DIPIETRO

| | |
|---|---|
| STATE OF OHIO | § |
| | § |
| COUNTY OF STARK | § |

1.      "My name is Steven P. DiPietro. I am the President of Respondent B&G Futures, Inc. The facts stated in this Declaration are true and correct and are within my personal knowledge.

2.      "Attached hereto as Exhibit 1 is a true and correct copy of the First Invoice from B&G Futures, Inc. to Ichor Oil, LLC dated and sent to Ichor Oil on August 22, 2019 for 100,000 barrels of oil at a price of $5,305,000 (or $53.05 per barrel).

3.      "Attached hereto as Exhibit 2 is a true and correct copy of the Original Pro Forma from B&G Futures to Ichor Oil dated and sent to Ichor Oil on August 22, 2019 for approximately 100,000 barrels of oil.

4.      "Pursuant to the transaction represented by these two documents, Ichor Oil, LLC was to pay to B&G Futures, Inc. the sum of $5,305,000 by August 22, 2019. B&G Futures, Inc. was then to deliver approximately 100,000 barrels of oil to Ichor Oil, LLC on a date that would be determined (1) upon confirmation of full payment by Ichor Oil, LLC; and then (2) approval of the vessel from which the oil would be taken.

5.      "Later that day the quantity of oil to be delivered was revised upward from 100,000 barrels to 107,500 barrels.

6.      "Attached hereto as Exhibit 3 is a true and correct copy of the Second Invoice from B&G Futures, Inc. to Ichor Oil, LLC dated and sent to Ichor Oil on August 27, 2019 for the

---

additional 7,500 barrels of oil (again at the same price of $53.05 per barrel).

7.    "Attached hereto as Exhibit 4 is a true and correct copy of the Revised Pro Forma from B&G Futures to Ichor Oil dated and sent to Ichor Oil on August 22, 2019 for the total quantity of approximately 107,500 barrels of oil. As stated by Mr. Stanley in ¶ 2 of his Affidavit (Docket No. 75-3), this was a single transaction for a little more than 100,000 barrels of oil, and was not two separate transactions – although in ¶ 3 of his Affidavit Mr. Stanley misremembered the quantity as being revised upward from 107,500 to 110,000 when in fact it was revised upward from 100,000 to 107,500 as reflected on the two Invoices and two Pro Formas.

8.    "The First Invoice states that payment from Ichor Oil is 'Due Upon Receipt' in the amount of $5,305,000. The Second Invoice states that the additional sum of $397,875 is a "Prepayment." Both Pro Formas state in the first paragraph below the heading "Payment" that:

> Full payment of Invoice shall be made within one (1) New York banking days after receipt of invoice …

9.    "Of the total invoiced amount of $5,702,875, Ichor Oil, LLC paid only the sum of $350,000, and never paid any of the remaining balance of $5,352,875.

10.   "Both Pro Formas state in the fourth paragraph below the heading "Payment" that:

> In the event that payment is not made on the due date, Buyer will be charged on the outstanding balance, from the date that payment is due until the date payment is made at the current J.P. Morgan Chase Bank (New York) prime rate plus 2%.

11.   "B&G Futures, Inc. did not deliver the oil for which Ichor Oil, LLC had paid an initial partial payment, in part because Ichor Oil, LLC never made full payment for the 107,500 barrels of oil.

12.   "Moreover, B&G Futures, Inc. did not deliver the oil for which Ichor Oil, LLC had paid an initial deposit, in part because an important detail regarding delivery were never determined. I previously stated from memory that the oil was not delivered in part because the destination port had not been determined. But upon refreshing my memory by reviewing the Pro Formas, I now realize that this was close to, but not exactly, what happened. Although I correctly remembered that one of the reasons for non-delivery was that an important detail regarding delivery had not been determined, I misremembered that detail as being a failure to identify the port at which the oil would be delivered, when in fact, after reviewing the Pro Formas, I now remember that the port of delivery had been determined and that the detail that had not been determined was the vessel from which the

oil would be taken. And the reason the vessel was never determined is that Ichor Oil, LLC never made full payment.

13.    "Attached hereto as Exhibit 5 are six pages that are true and correct copies opf text messages sent between me, Steve DiPietro on behalf of B&G Futures, Inc. and Gary Stanley on behalf of Ichor Oil, LLC. The texts sent by Gary Stanley are on the left and are designated with a circled G. The texts sent by me are on the right and are designated with a circled S. The date and time of the first text on each page is: (page 1) 2:30 p.m. on August 23, 2019; (2) 5:04 p.m. on August 24; (3) 5:09 p.m. on August 24; (4) 9:09 a.m. on August 25; (5) 1:12 p.m. on August 27, and (6) 6:21 p.m. on August 27, 2019.

14.    "As shown by the Pro Forma and First Invoice, payment of $5,305,000 from Ichor Oil to B&G Futures was due on Friday, August 23. As shown in the text chain, the closing of the transaction was initially scheduled to occur on Monday morning, August 26 with the pricing based on a three-day average of August 22, 23, and 26.

15.    "The Ichor Oil-B&G Futures transaction was part of a larger chain of transactions in which fuel oil would be sold from Maersk (the large international business that is engaged in shipping and related activities) to B&G Futures to Ichor Oil to Dan-Bunkering. When the transaction did not close on Monday, August 26, Maersk represented to B&G Futures that it wanted to hurry up and unload the oil from its tanker. Maersk further represented to B&G Futures that, in order to continue to hold the oil for a few additional days, a payment of $500,000 toward the total purchase would be required. This was not money that B&G Futures would get back if it changed its mind and decided not to purchase the oil. Rather, it was a non-refundable payment as a condition of Maersk continuing to hold the oil available for purchase by B&G Futures.

16.    "B&G Futures then communicated to Ichor Oil that a payment of $500,000 toward the full purchase price would be required in order to continue to hold the transaction open. Again, this was not money that Ichor Oil would get back if it changed its mind and decided not to purchase the oil. Rather, it was a non-refundable payment as a condition of B&G Futures continuing to hold the oil available for purchase by Ichor Oil. Moreover, this was not a payment that Ichor Oil would send directly to Maersk. Rather, this was a payment that Ichor Oil would send to B&G Futures in order for B&G futures to continue to hold the oil available for purchase by Ichor Oil.

17.    "On Tuesday, August 27 at 6:32 p.m., B&G Futures sent a text to Ichor Oil inquiring "Are you able to forward the 500k to keep Maersk calm."

18.    "The next morning at 9:34 a.m. on Wednesday, August 28, Gary Stanley of Ichor Oil texted back that he was at the bank sending the wire to B&G Futures. In fact, Ichor Oil did not send the wire to B&G Futures until the next afternoon, Thursday, August 29.

SECOND UNSWORN DECLARATION OF STEVEN P. DIPIETRO                                    Page 3 of 4

19.     "Attached hereto as Exhibit 6 is a true and correct copy of a webpage from the website of JP Morgan Chase Bank listing the JP Morgan Chase Bank prime rate at all times since December 17, 2015. I have personally relied for years upon this site as the source of my information regarding the JP Morgan Chase Bank prime rate, and I have always found it to be reliable.

20.     "As seen from Exhibit 6, the JP Morgan Chase Bank prime rate has at all times since August 1, 2019 been:

| Beginning Date | Ending Date | Rate | Rate + 2% |
|---|---|---|---|
| August 1, 2019 | September 18, 2019 | 5.25% | 7.25% |
| September 19, 2019 | October 30, 2019 | 5.00% | 7.00% |
| October 31, 2019 | March 3, 2020 | 4.75% | 6.75% |
| March 4, 2020 | March 15, 2020 | 4.25% | 6.25% |
| March 16, 2020 | through at least the date of this Declaration | 3.25% | 5.25% |

21.     "Although Exhibit 6 does not explicitly state the JP Morgan Chase Bank prime rate for 2021, there has been no change in the rate since March 16, 2020, and the rate continues to be 3.25%.

22.     I note that the webpage only lists changes in the rate rather than the effective dates of each rate, and that there have been no changes to the JP Morgan Chase Bank prime rate during 2021 or at any other time since March 16, 2020. I assume, although I do not know, that this is the reason why the JP Morgan Chase Bank website does not list any prime rate or prime rate changes for 2021 is because

23.     "Accrued interest on the unpaid balance of $5,702,875 at the rate rates stated in ¶ 20 long ago surpassed $350,000. Thus, because B&G Futures has an offsetting claim for more than $350,000, Ichor Oil, LLC has effectively forfeited its initial payment of $350,000.

"Further Declarant sayeth naught."

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Executed on November 10, 2021.

Steve DiPietro



# INVOICE

**Date**
8/22/19

**Bill To**
ICHOR OIL
10150 Highland Manor Drive Suite 200
Tampa, FL 33610

**Ship To**
Ex-Works
Bayonne, NJ

| Invoice # | Date | Customer Number | Your PO No. | Freight | Terms |
|---|---|---|---|---|---|
| 717993 | 8/22/19 | BGF-MOT | 82119 | EX-WORKS | Due Upon Receipt |

| Quantity | Item | Units | Description | BGF BOL# | Unit Price | Total |
|---|---|---|---|---|---|---|
| 100,000.00 | R.M.K | Barrels (BBLS) | RMK 500-700 | 8911 | $53.05000 | $5,305,000.00 |
| | | | | | **Subtotal** | **$5,305,000.00** |
| | | | | | Sales Tax | $0 |
| | | | | | Shipping & Handling | $0 |
| | | | | | **Total Due By 8/22/2019** | **$5,305,000.00** |

Notes:

Final price and volume to be reconciled upon loading

Remittance:  Please make all Payments Via Wire Transfer To: Andrea Ginella, Attorney at Law IOLTA Trust.

| | |
|---|---|
| **Routing Number:** | 041000124 |
| **Account Number:** | 4221175945 |
| **Bank Name:** | P.N.C Bank. |
| **Address:** | Canton, OH 44718 |

**4084  Holiday St NW**
**Canton, MI 44721**
**U.S.A**
**Tel:**        330-493-3377
**Fax:**        330-493-3443
**Email:**        info@bgfutures.com

−− Ex. 1 −−

**B&G Futures, Inc.**

**B&G Futures, Inc.**
4084 Holiday St NW
Canton, OH 44718, USA.
Tel. 001 330-493-0034

DATE:        22 AUGUST 2019

TO:          ICHOR OIL
ATTN.:       GARY STANLEY
EMAIL:       G.STANLEY@ICHOROIL.COM

**PRIVATE AND CONFIDENTIAL**

**PLEASE REFERENCE BGF'S REFERENCE NUMBER ON ALL CORRESPONDENCE.**

**CONTRACT ADMINISTRATION'S FAX NUMBER IS 330-493-3443.**

IN ACCORDANCE WITH THE BINDING AGREEMENT BETWEEN THE PARTIES, THIS CONTRACT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PREVIOUS NEGOTIATIONS, REPRESENTATIONS, AGREEMENTS, BROKER CONFIRMATIONS, OR COMMITMENTS WITH REGARD TO ITS SUBJECT MATTER. B&G FUTURES, INC IS PLEASED TO CONFIRM THE FOLLOWING AGREEMENT:

**BGF REF.:**        10337292.

**TRADE DATE:**      22 AUGUST 2019.

**BGF TRADER:**      STEVEN DIPIETRO.

**SELLER:**          B&G FUTURES, INC.

**BUYER:**           ICHOR OIL.

**PRODUCT:**         RMK 500-700.

**QUANTITY:**        APPROXIMATELY 100,000 BARRELS.

QUANTITY DETERMINATION AS PER MEASUREMENT TERMS HEREIN.  IN THE EVENT OF BOOK / STOCK / IN-TANK TRANSFER, QUANTITY AND EFFECTIVE DATE SHALL BE SET FORTH IN THE EMAILED/FAXED CONTRACT.

**QUALITY:**         TYPICAL RMK 500-700 SPECIFICATIONS.

QUALITY WILL BE ASCERTAINED AT LOADING PORT, BASED ON TANK COMPOSITE SAMPLE ANALYSIS PRIOR  TO LOADING AS VERIFIED BY MUTUALLY AGREED INDEPENDENT INSPECTOR OF RECORD.

**DELIVERY TERMS:**

    **INCOTERMS:**      EX-WORKS.
    **LOCATION:**       **BAYONNE, NEW JERSEY, U.S.A.**
    **DELIVERY DATES:** TBD UPON APPROVAL OF VESSEL AND PAYMENT CONFIRMATION.
    NOTES:

- PUBLIC DOCK CLAUSE SHALL APPLY.

**PRICE:** SHALL BE PLATTS NYH 3%S + $5.75 PER BARREL. PRICING WILL BE DEEMED ON A 3 DAY AVERAGE AROUND LOADING WINDOW.

INVOICE IS DELIVERED EX-WORKS BASIS ACTUAL LOCATION, OUTTURN QUANTITY AND QUALITY.

**PAYMENT:**  FULL PAYMENT OF INVOICE SHALL BE MADE WITHIN ONE (1) NEW YORK BANKING DAYS AFTER RECEIPT OF INVOICE WITHOUT DISCOUNT, DEDUCTION, WITHOLDING, OFFSET, OR COUNTERCLAIM IN U.S. DOLLAR TO THE SELLERS BANK ACCOUNT, VIA WIRE TRANSFER OF IMMEDIATELY AVAILABLE FUNDS ON OR BEFORE THE PAYMENT DUE DATE.

–– Ex. 2 ––

**B&G Futures, Inc.**

**B&G Futures, Inc.**

4084 Holiday St NW

Canton, OH 44718, USA.

Tel. 001 330-493-0034

IN THE EVENT OF BOOK TRANSFER, PAYMENT SHALL BE DUE AND PAYABLE ON THE EFFECTIVE DATE OF THE BOOK TRANSFER.

IN THE EVENT PAYMENT DATE IS A SATURDAY OR A NEW YORK BANKING HOLIDAY OTHER THAN MONDAY, PAYMENT SHALL BE DUE THE PREVIOUS NEW YORK BANKING DAY. IN THE EVENT PAYMENT DATE IS A SUNDAY OR A MONDAY BANKING HOLIDAY IN NEW YORK, PAYMENT SHALL BE DUE THE FOLLOWING NEW YORK BANKING DAY.

IN THE EVENT THAT PAYMENT IS NOT MADE ON THE DUE DATE, BUYER WILL BE CHARGED ON THE OUTSTANDING BALANCE, FROM THE DATE THAT PAYMENT IS DUE UNTIL THE DATE PAYMENT IS MADE AT THE CURRENT J.P. MORGAN CHASE BANK (NEW YORK) PRIME RATE PLUS 2 PERCENT.

DOCUMENTATION MUST BE RECEIVED BY 12:00 NOON EASTERN TIME TO BE EFFECTIVELY RECEIVED ON A WORKING DAY. DOCUMENTS RECEIVED AFTER 12:00 NOON EASTERN TIME ARE DEEMED RECEIVED THE FOLLOWING WORKING DAY. THE EFFECTIVE RECEIPT DATE EQUALS DAY ZERO (0) WHEN CALCULATING THE PAYMENT DUE DATE.

**CREDIT:** OPEN CREDIT. IF CREDIT APPROVAL IS NOT GIVEN, BUYER AGREES TO THE FOLLOWING TERMS: BUYER TO POST AN IRREVOCABLE STANDBY LETTER OF CREDIT IN A FORM AND AT A BANK ACCEPTABLE TO SELLER TWO (2) NEW YORK BANKING DAYS PRIOR TO THE FIRST DAY OF CONTRACTUAL WINDOW (OPERATIONALLY NARROWED WHEN APPLICABLE) OR PREPAYMENT AT SELLERS DISCRETION.

**DUTIES, FEES, TAXES:** BUYER SHALL BE RESPONSIBLE FOR EXPORTATION AND ALL DUTIES, COSTS, AND FEES. BUYER SHALL PAY OR REIMBURSE SELLER THE AMOUNT OF ALL APPLICABLE FEDERAL, STATE, AND LOCAL EXCISE, ENVIRONMENTAL, GROSS RECEIPTS, SALES AND FUEL TAXES OR FEES, HOWEVER DESIGNATED, OTHER THAN TAXES ON INCOME, PAID OR INCURRED BY SELLER DIRECTLY OR INDIRECTLY WITH RESPECT TO THE OIL OR PRODUCT BEING SOLD HEREUNDER AND/OR THE VALUE THEREOF. IF BUYER IS EXEMPT FROM ANY OF THE AFOREMENTIONED CHARGES, IT WILL PROVIDE SELLER WITH THE APPLICABLE CERTIFICATE OF EXEMPTION.

**INSPECTION:** MUTUALLY AGREED INDEPENDENT INSPECTOR SHALL DETERMINE QUANTITY AND QUALITY LOADED PER QUALITY/MEASUREMENT TERMS HEREIN. INDEPENDENT INSPECTOR'S FINDINGS SHALL BE BINDING ON BOTH BUYER AND SELLER, ABSENT FRAUD OR ERRORS AND OMISSIONS. IF NO INDEPENDENT INSPECTOR IS IN ATTENDANCE, THE DETERMINATION OF THE QUANTITY MADE BY THE LOADING TERMINAL SHALL, ABSENT FRAUD OR ERRORS AND OMISSIONS, BE FINAL AND BINDING ON BOTH PARTIES. COSTS SHALL BE EQUALLY SHARED.

**TITLE AND RISK OF LOSS:** EXCEPT AS OTHERWISE SPECIFIED IN THE SPECIFIC TERMS, TITLE AND RISK OF LOSS SHALL PASS FROM SELLER TO BUYER AT THE APPLICABLE LOADING PORT, AS THE PRODUCT PASSES THE LAST PERMANENT OUTLET FLANGE OF THE SELLER'S SHORE TANK.

**GENERAL TERMS AND CONDITIONS:** BGF GT&C's.

THIS CONFIRMATION IS INTENDED TO REFLECT ACCURATELY THE BINDING AGREEMENT BETWEEN THE PARTIES. IF COUNTERPARTY IS AWARE OF ANY DIFFERENCE BETWEEN THE BINDING AGREEMENT OF THE PARTIES' REPRESENTATIVES REGARDING THIS TRANSACTION AND THE CONTENTS OF THIS CONFIRMATION, COUNTERPARTY MUST NOTIFY BGF INC. IN WRITING OF ANY DIFFERENCES WITHIN TWO BUSINESS DAYS FROM RECEIPT OF THIS CONFIRMATION. OTHERWISE, THIS AGREEMENT SHALL BE DEEMED TO CONTAIN ALL THE TERMS OF THE BINDING AGREEMENT REGARDING THIS TRANSACTION. IF COUNTERPARTY NOTIFIES BGF INC. OF ADDITIONAL OR DIFFERENT TERMS FROM THOSE SET FORTH HEREIN, THOSE TERMS SHALL BE CONSTRUED

ONLY AS PROPOSALS FOR AMENDMENTS TO THIS AGREEMENT AND SHALL NOT BECOME PART OF THIS AGREEMENT UNLESS EXPRESSLY AGREED BY BGF. IN A SUPPLEMENTAL WRITTEN CONFIRMATION. NOTWITHSTANDING THE FOREGOING, THIS DOES NOT LIMIT EITHER COUNTERPARTY OR BGF. FROM SEEKING TO REFORM THIS CONTRACT UNDER GOVERNING LAW IN THE EVENT IT IS LATER DETERMINED THAT THIS CONFIRMATION IS NOT A TRUE AND ACCURATE REFLECTION OF THE BINDING AGREEMENT.

REGARDS,

**B&G FUTURES, INC.**



# INVOICE

**Date**
8/27/19

**Bill To**
ICHOR OIL
10150 Highland manor Drive Suite 200
Tampa, FL 33610

**Ship To**
Ex-Works
Bayonne, NJ

| Invoice # | Date | Customer Number | Your PO No. | Freight | Terms |
|---|---|---|---|---|---|
| 717994 | 8/27/19 | BGF-ICHOR | 82619 | Delivered | Prepayment |

| Quantity | Item | Units | Description | BGF BOL# | Unit Price | Total |
|---|---|---|---|---|---|---|
| 7,500.00 | R.M.K | Barrels (BBLS) | RMK 500-700 | 8911 | $53.05000 | $397,875.00 |
| | | | | | **Subtotal** | **$397,875.00** |
| | | | | | Sales Tax | $0 |
| | | | | | Shipping & Handling | $0 |
| | | | | | | **$397,875.00** |

Notes:

Final price and volume to be reconciled upon loading

Remittance:   Please make all Payments Via Wire Transfer To: Andrea Ginella, Attorney at Law IOLTA Trust.

|  |  |
|---|---|
| **Routing Number:** | 041000124 |
| **Account Number:** | 4221175945 |
| **Bank Name:** | P.N.C Bank. |
| **Address:** | Canton, OH 44718 |

**4084 Holiday St NW**
**Canton, MI 44721**
**U.S.A**
**Tel:**       330-493-3377
**Fax:**      330-493-3443
**Email:**   info@bgfutures.com

–– Ex. 3 ––

**B&G Jurisdiction Appx. 030**                    **B&G App. 43**

**B&G Futures, Inc.**

**B&G Futures, Inc.**
4084 Holiday St NW
Canton, OH 44718, USA.
Tel. 001 330-493-0034

DATE:          22 AUGUST 2019 REVISED

TO:            ICHOR OIL
ATTN.:         GARY STANLEY
EMAIL:         G.STANLEY@ICHOROIL.COM

**PRIVATE AND CONFIDENTIAL**

**PLEASE REFERENCE BGF'S REFERENCE NUMBER ON ALL CORRESPONDENCE.**
**CONTRACT ADMINISTRATION'S FAX NUMBER IS 330-493-3443.**

IN ACCORDANCE WITH THE BINDING AGREEMENT BETWEEN THE PARTIES, THIS CONTRACT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PREVIOUS NEGOTIATIONS, REPRESENTATIONS, AGREEMENTS, BROKER CONFIRMATIONS, OR COMMITMENTS WITH REGARD TO ITS SUBJECT MATTER. B&G FUTURES, INC IS PLEASED TO CONFIRM THE FOLLOWING AGREEMENT:

**BGF REF.:**          10337292.

**TRADE DATE:**        22 AUGUST 2019.

**BGF TRADER:**        STEVEN DIPIETRO.

**SELLER:**            B&G FUTURES, INC.

**BUYER:**             ICHOR OIL.

**PRODUCT:**           RMK 500-700.

**QUANTITY:**          APPROXIMATELY 107,500 BARRELS.

QUANTITY DETERMINATION AS PER MEASUREMENT TERMS HEREIN.  IN THE EVENT OF BOOK / STOCK / IN-TANK TRANSFER, QUANTITY AND EFFECTIVE DATE SHALL BE SET FORTH IN THE EMAILED/FAXED CONTRACT.

**QUALITY:**           TYPICAL RMK 500-700 SPECIFICATIONS.

QUALITY WILL BE ASCERTAINED AT LOADING PORT, BASED ON TANK COMPOSITE SAMPLE ANALYSIS PRIOR  TO LOADING AS VERIFIED BY MUTUALLY AGREED INDEPENDENT INSPECTOR OF RECORD.

**DELIVERY TERMS:**

     **INCOTERMS:**       EX-WORKS.
     **LOCATION:**        **BAYONNE, NEW JERSEY, U.S.A.**
     **DELIVERY DATES:**  TBD UPON APPROVAL OF VESSEL AND PAYMENT CONFIRMATION.
     NOTES:

        • PUBLIC DOCK CLAUSE SHALL APPLY.

**PRICE:** SHALL BE PLATTS NYH 3%S + $5.75 PER BARREL. PRICING WILL BE DEEMED FOR AUGUST 23, 24, 26 2019

INVOICE IS DELIVERED EX-WORKS BASIS ACTUAL LOCATION, OUTTURN QUANTITY AND QUALITY.

**PAYMENT:** FULL PAYMENT OF INVOICE SHALL BE MADE WITHIN ONE (1) NEW YORK BANKING DAYS AFTER RECEIPT OF INVOICE WITHOUT DISCOUNT, DEDUCTION, WITHOLDING, OFFSET, OR COUNTERCLAIM IN U.S. DOLLAR TO THE SELLERS BANK ACCOUNT, VIA WIRE TRANSFER OF IMMEDIATELY AVAILABLE FUNDS ON OR BEFORE THE PAYMENT DUE DATE.

–– Ex. 4 ––

IN THE EVENT OF BOOK TRANSFER, PAYMENT SHALL BE DUE AND PAYABLE ON THE EFFECTIVE DATE OF THE

B&G Futures, Inc.

**B&G Futures, Inc.**
4084 Holiday St NW
Canton, OH 44718, USA.
Tel. 001 330-493-0034

BOOK TRANSFER.

IN THE EVENT PAYMENT DATE IS A SATURDAY OR A NEW YORK BANKING HOLIDAY OTHER THAN MONDAY, PAYMENT SHALL BE DUE THE PREVIOUS NEW YORK BANKING DAY. IN THE EVENT PAYMENT DATE IS A SUNDAY OR A MONDAY BANKING HOLIDAY IN NEW YORK, PAYMENT SHALL BE DUE THE FOLLOWING NEW YORK BANKING DAY.

IN THE EVENT THAT PAYMENT IS NOT MADE ON THE DUE DATE, BUYER WILL BE CHARGED ON THE OUTSTANDING BALANCE, FROM THE DATE THAT PAYMENT IS DUE UNTIL THE DATE PAYMENT IS MADE AT THE CURRENT P.N.C BANK (NEW YORK) PRIME RATE PLUS 2 PERCENT.

DOCUMENTATION MUST BE RECEIVED BY 12:00 NOON EASTERN TIME TO BE EFFECTIVELY RECEIVED ON A WORKING DAY. DOCUMENTS RECEIVED AFTER 12:00 NOON EASTERN TIME ARE DEEMED RECEIVED THE FOLLOWING WORKING DAY. THE EFFECTIVE RECEIPT DATE EQUALS DAY ZERO (0) WHEN CALCULATING THE PAYMENT DUE DATE.

**CREDIT:** OPEN CREDIT. IF CREDIT APPROVAL IS NOT GIVEN, BUYER AGREES TO THE FOLLOWING TERMS: BUYER TO POST AN IRREVOCABLE STANDBY LETTER OF CREDIT IN A FORM AND AT A BANK ACCEPTABLE TO SELLER TWO (2) NEW YORK BANKING DAYS PRIOR TO THE FIRST DAY OF CONTRACTUAL WINDOW (OPERATIONALLY NARROWED WHEN APPLICABLE) OR PREPAYMENT AT SELLERS DISCRETION.

**DUTIES, FEES, TAXES:** BUYER SHALL BE RESPONSIBLE FOR EXPORTATION AND ALL DUTIES, COSTS, AND FEES. BUYER SHALL PAY OR REIMBURSE SELLER THE AMOUNT OF ALL APPLICABLE FEDERAL, STATE, AND LOCAL EXCISE, ENVIRONMENTAL, GROSS RECEIPTS, SALES AND FUEL TAXES OR FEES, HOWEVER DESIGNATED, OTHER THAN TAXES ON INCOME, PAID OR INCURRED BY SELLER DIRECTLY OR INDIRECTLY WITH RESPECT TO THE OIL OR PRODUCT BEING SOLD HEREUNDER AND/OR THE VALUE THEREOF. IF BUYER IS EXEMPT FROM ANY OF THE AFOREMENTIONED CHARGES, IT WILL PROVIDE SELLER WITH THE APPLICABLE CERTIFICATE OF EXEMPTION.

**INSPECTION:** MUTUALLY AGREED INDEPENDENT INSPECTOR SHALL DETERMINE QUANTITY AND QUALITY LOADED PER QUALITY/MEASUREMENT TERMS HEREIN. INDEPENDENT INSPECTOR'S FINDINGS SHALL BE BINDING ON BOTH BUYER AND SELLER, ABSENT FRAUD OR ERRORS AND OMISSIONS. IF NO INDEPENDENT INSPECTOR IS IN ATTENDANCE, THE DETERMINATION OF THE QUANTITY MADE BY THE LOADING TERMINAL SHALL, ABSENT FRAUD OR ERRORS AND OMISSIONS, BE FINAL AND BINDING ON BOTH PARTIES. COSTS SHALL BE EQUALLY SHARED.

**TITLE AND RISK OF LOSS:** EXCEPT AS OTHERWISE SPECIFIED IN THE SPECIFIC TERMS, TITLE AND RISK OF LOSS SHALL PASS FROM SELLER TO BUYER AT THE APPLICABLE LOADING PORT, AS THE PRODUCT PASSES THE LAST PERMANENT OUTLET FLANGE OF THE SELLER'S SHORE TANK.

**GENERAL TERMS AND CONDITIONS:** BGF GT&C's.

THIS CONFIRMATION IS INTENDED TO REFLECT ACCURATELY THE BINDING AGREEMENT BETWEEN THE PARTIES. IF COUNTERPARTY IS AWARE OF ANY DIFFERENCE BETWEEN THE BINDING AGREEMENT OF THE PARTIES' REPRESENTATIVES REGARDING THIS TRANSACTION AND THE CONTENTS OF THIS CONFIRMATION, COUNTERPARTY MUST NOTIFY BGF INC. IN WRITING OF ANY DIFFERENCES WITHIN TWO BUSINESS DAYS FROM RECEIPT OF THIS CONFIRMATION. OTHERWISE, THIS AGREEMENT SHALL BE DEEMED TO CONTAIN ALL THE TERMS OF THE BINDING AGREEMENT REGARDING THIS TRANSACTION. IF COUNTERPARTY NOTIFIES BGF INC. OF ADDITIONAL OR DIFFERENT TERMS FROM THOSE SET FORTH HEREIN, THOSE TERMS SHALL BE CONSTRUED

ONLY AS PROPOSALS FOR AMENDMENTS TO THIS AGREEMENT AND SHALL NOT BECOME PART OF THIS AGREEMENT UNLESS EXPRESSLY AGREED BY BGF. IN A SUPPLEMENTAL WRITTEN CONFIRMATION. NOTWITHSTANDING THE FOREGOING, THIS DOES NOT LIMIT EITHER COUNTERPARTY OR BGF. FROM SEEKING TO REFORM THIS CONTRACT UNDER GOVERNING LAW IN THE EVENT IT IS LATER DETERMINED THAT THIS CONFIRMATION IS NOT A TRUE AND ACCURATE REFLECTION OF THE BINDING AGREEMENT.

REGARDS,
**B&G FUTURES, INC.**

**Gary Stanley**
(727) 744-4281

G  this. He says that's what he would need to make payment
2:30 PM

G  Sent you yesterday's platts in email
2:31 PM

G  Send e the final analysis when complete.  Closing will be Monday morning
4:44 PM

S  Pricing will be deemed 22,23,26. We have already loaded barges from 1711 so there is room now to bring this tank into 1711 so if they don't want to transfer to P66 tanks, they can load directly from our tanks to their barge
5:14 PM

Saturday, August 24, 2019

1:41 PM  I'll call you right back  S

G  Bad or good news
1:42 PM    -- Ex. 5 --

Enter message







**Gary Stanley**
(727) 744-4281

G Steve any update on the final analysis
5:04 PM

5:05 PM Doesn't really matter S

G Yea Matthew just going to be an AH wanting then to wire the money

He was not happy 5:06 PM

G Practically hung up on me.

Was shocked when I told him p66 5:07 PM

He got caught. He called Maersk trying to cut us out.
P66 Operations called us
5:08 PM S

G Yep 5:08 PM

G Well as long as he's forced to play by our rules we control the trade
5:09 PM

Enter message

 

**Gary Stanley**
(727) 744-4281

control the trade

5:09 PM

G    But he will I can tell want that analysis before he sends payment. One to validate what he charged p66

I am sure

Just don't wanna any last crap before payment. You know

5:10 PM

G    Hey Steve don't wanna upset the apple cart but if we could get the analysis before Monday am so all that to be done was pay would be great

Thanks for the heads up before

6:22 PM

Sunday, August 25, 2019

G    Steve. If we can get the final tank analysis it will make things go fast in

 Enter message



B&G Jurisdiction Appx. 035

B&G App. 48

**Gary Stanley**
(727) 744-4281

G Plus there should be one just for everyone's knowledge of how the final blend turned out

Should be something available

9:09 AM

Monday, August 26, 2019

S Just spoke with Marc. He isout of the office sick , but assured me the analysis is being run

1:28 PM

G Great

Thx  1:29 PM

Tuesday, August 27, 2019

S 22,500 bbls are being transferred

11:24 AM

G Ok ok call in a sec  11:26 AM

G ...thew is on ...s and all

Paste    Clipboard

Enter message

 

## Gary Stanley
(727) 744-4281

We need a update on the funds. Maersk would like to transfer the product today to free up the tank

1:12 PM



Marc is pressing us. Has the first wired cleared

2:18 PM



Just emailed you the final invoices

2:32 PM

You should be able to initiate the wire from your account once it shows pending. The bank will finalize the wire once funds post

2:42 PM

Any update from Matt

6:14 PM

G  I'll get copies of remaining in am.

I'll send to you   6:21 PM



Are you able to forward



 Enter message  

B&G App. 50

**Gary Stanley**
(727) 744-4281

I'll send to you  6:21 PM

Are you able to forward the 500k transfer to keep Maersk calm    ⓢ
6:32 PM

Wednesday, August 28, 2019

Ⓖ At bank sending wire  9:34 AM

Ⓖ Will call when I leave  9:35 AM

Ⓖ Wire has been sent

From me  10:15 AM

Any update ? I need to let Marc know    ⓢ
12:02 PM

Ⓖ At bank

Call when finished  12:06 PM

Ⓖ You out of funeral  12:19 PM

Enter message

 

**B&G Jurisdiction Appx. 038**    **B&G App. 51**

# CERTIFICATE OF FORMATION
## OF
### DAN-BUNKERING (AMERICA) INC.

**FILED**
In the Office of the
Secretary of State of Texas

## FEB 1 0 2012

### ARTICLE I
Name

## Corporations Section

The filing entity being formed is a for-profit corporation, and the name of the entity is Dan-Bunkering (America) Inc. (the '**Corporation**").

## ARTICLE II
### Registered Agent and Office

The initial registered agent is an individual resident of the state whose name is and the address of the initial registered agent and the registered office of the Corporation is A. Christian Larsen 3811 Shadow Trace Circle  Houston, TX 77082.

## ARTICLE III
### Directors

The number of directors constituting the Corporation's initial board of directors are two (2), and the name and address of the persons who are to serve as the initial directors until the first annual meeting of shareholders or until their successor is elected and qualified is as follows:

| Name | Address |
| --- | --- |
| Soren Lund | Dan-Bunkering Ltd Strandvejen 5 Middelfart, DNK 05500 DNK |
| A. Christian Larsen | 3811 Shadow Trace Circle Houston, TX 77082 |

## ARTICLE IV
### Authorized Shares

The total number of shares the Corporation is authorized to issue is 10,000 with a One Thousand dollar ($1,000.00) par value.

## ARTICLE V
### Purpose

The purpose for which the Corporation is formed is for the transaction of any and all lawful business for which a for-profit corporation may be organized under the Texas Business Organizations Code (the "**TBOC**").

## ARTICLE VI
### Limitation of Directors' Liability

To the fullest extent permitted under the laws of the State of Texas, a director of the Corporation shall not be liable to the Corporation or its shareholders for monetary damages for an act or omission in such director's capacity as a director. Any repeal or amendment of this Article VI by the shareholders of the Corporation shall be prospective only and shall not adversely affect any limitation on the personal liability of a director of the Corporation existing at the time of such repeal or amendment.

## ARTICLE VII
### Organizer

The name and address of the Corporation's organizer is A. Christian Larsen 3811 Shadow Trace Circle Houston, TX  77082.

This Certificate of Formation becomes effective when it is filed with the Texas Secretary of State.

The undersigned signs this Certificate of Formation subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Dated: February 10, 2012

A.  Christian Larsen, Organizer



HOME   ABOUT   SOLUTIONS   PRODUCTS   PORTS   PRESS   CAREER   TERMS   **CONTACT**

Here for you 24/7/365



BEST BUNKER BUY   RISK MANAGEMENT   TURNKEY FUEL SOLUTIONS   TOOLS AND SPECS.   **VESSEL SERVICES**   YACHTS

Home  »  Solutions  »  Vessel services

VESSEL SERVICES

## "ONE-STOP-SHOP
## IF YOU LIKE"

As you know, you can ask us for bunkers and lube oil anywhere, any day, and at any hour. But did you know that we can supply you with a range of complementary products and services? One-stop-shopping, if you like.

Would you like a quote? Please do not hesitate to contact us for an offer.

**CONTACT US**

### Among the complementary products and services are:

| Crew change | Fresh water | Provisions | Transits | Agency |

| **MDF** Middelfart | **CPH** Copenhagen | **MON** Monaco | **DUB** Dubai | **CPT** Cape Town | **SIN** Singapore |

B&G Jurisdiction Appx. 041

**SHA**  **BEI**  **SYD**  **STA**  **HOU**

As you know, you can ask us for bunkers and lube oil anywhere, any day, and at any hour. But did you know that we can supply you with a range of complementary products and services? One-stop-shopping, if you like.

Would you like a quote? Please do not hesitate to contact us for an offer.

**CONTACT US**

## Among the complementary products and services are:

 Crew change

 Fresh water

 Provisions

 Transits

 Agency

**MDF**
Middelfart

**CPH**
Copenhagen

**MON**
Monaco

**DUB**
Dubai

**CPT**
Cape Town

**SIN**
Singapore

**SHA**
Shanghai

**BEI**
Beijing

**SYD**
Sydney

**STA**
Stamford

**HOU**
Houston



**Dan-Bunkering**
- Best Bunker Buy -

| HOME | IMO 2020 | PRESS | |
|---|---|---|---|
| **ABOUT** | **CONTACT** | All news | **CONTACT OUR TEAMS WORLDWIDE** |
| Company profile | ALL OFFICES | Pictures and logos | |
| History | EUROPE | | We are ready to help |
| News | AMERICAS | **TERMS** | |
| Events | ASIA / MIDDLE EAST | General terms | **CONTACT** |
| Social relations | AFRICA | Audit / DNV | |
| Profile brochure | OCEANIA | ISO certification | |
| | MANAGEMENT | | |
| **SOLUTIONS** | | **CAREER** | **YOUR LOCAL OFFICE** |
| Best Bunker Buy | | Working at Dan-Bunkering | 440 Louisiana Street, Suite 2100 |
| Risk management | | Vacancies | Houston, TX 77002, USA |
| Turnkey Fuel Solutions | | Apply | Phone +1 281 833 5801 |
| Tools and specs. | | Academy | Fax +1 281 833 5802 |
| Vessel services | | | houston@dan-bunkering.com |
| Yachts | | | |

# Electronic Articles of Organization
## For
# Florida Limited Liability Company

L16000091958
FILED 8:00 AM
May 11, 2016
Sec. Of State
thampton

## Article I

The name of the Limited Liability Company is:

ICHOR OIL, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

10150 HIGHLAND MANOR DRIVE
200
TAMPA, FL. US  33610

The mailing address of the Limited Liability Company is:

10150 HIGHLAND MANOR DRIVE
200
TAMPA, FL.  33610

## Article III

The name and Florida street address of the registered agent is:

GARY  STANLEY
7710 N OLA AVE
TAMPA, FL.  33604

Having been named as registered agent and to accept service of process for the above stated limited
liability company at the place designated in this certificate, I hereby accept the appointment as registered
agent and agree to act in this capacity.  I further agree to comply with the provisions of all statutes
relating to the proper and complete performance of my duties, and I am familiar with and accept the
obligations of my position as registered agent.

Registered Agent Signature:   GARY STANLEY

# Article IV

The name and address of person(s) authorized to manage LLC:

L16000091958
FILED 8:00 AM
May 11, 2016
Sec. Of State
thampton

   Title:  MGR
   GARY  STANLEY
   10150 HIGHLAND MANOR DRIVE
   TAMPA, FL.  33610  US

   Title:  MGR
   NADISON  ATEM
   10150 HIGHLAND MANOR DRIVE
   TAMPA, FL.  33610

# Article V

The effective date for this Limited Liability Company shall be:

   05/05/2016

## Signature of member or an authorized representative

Electronic Signature: GARY STANLEY

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.



OIL & GAS GLOBAL TRADING

CALL US
USA:
+1 (813) 280-0533

Dominican Republic:
+1 (809) 542-2511

China:
+86-134-1046-8858

EMAIL US
info@ichoroil.com

LOCATIONS
> Tampa, FL

> Santo Domingo, Dominican Republic

> Shenzhen, China

 

HOME    ABOUT ⌄    SERVICES ⌄    NEWS & MEDIA    CAREERS    CONTACT    KYC APPLICATION

# The Ichor Team

"Teamwork is the ability to work together toward a common vision.
The ability to direct individual accomplishments toward organizational objectives.
It is the fuel that allows common people to attain uncommon results." ~ Andrew Carnegie

HOME > ABOUT > LEADERS

The Company

Our Vision & Mission

Our Approach

Operations

Our Leaders

OUR BELIEF

**FOUR PILLARS**

The foundation of our business rests on four key pillars that enable us to add value and efficiency to the marketplace.

1) Research Based Investing.

2) Strong Capital Base.

3) Credibilty and Reliability.

4) Talented Employee Base.

## OUR ORGANIZATION



B&G Jurisdiction Appx. 045

FOUR PILLARS

The foundation of our business rests on four key pillars that enable us to add value and efficiency to the marketplace.

1) Research Based Investing.

2) Strong Capital Base.

3) Credibility and Reliability.

4) Talented Employee Base.

## OUR ORGANIZATION



---



Ichor Oil has access to all traded oil and gas commodities markets from our main business hubs in Tampa, Dominican Republic, China, Caribbean & Oman. We originate the physical transactions that support our customers' businesses. We source, we ship, we store, and we transact.

  

## QUICK LINKS

Storage & Refineries

Careers

Contact

Ichor Financial Services

## OUR SERVICES

Gasoline & Diesel

Aviation Fuels & Marine Fuels

Heavy Fuel Oils

Bio-Fuels

Crude Oils

Asphalt

Lubricants

LNG

Logistics

## NEWSLETTER

Subscribe to our newsletters to receive latest news and updates.

* indicates required

Email Address *

First Name

Last Name

~SUBSCRIBE NOW!~

B&G Jurisdiction Appx. 046

Copyright © 2021 Ichor Oil LLC. All rights reserved.

Terms of use    Privacy Policy    |

DOC ID ----> 201612601520



| DATE | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|------|-------------|-------------|--------|-------|---------|------|------|
| 05/06/2016 | 201612601520 | DOMESTIC FOR PROFIT CORP - ARTICLES (ARF) | 99.00 | 0.00 | 0.00 | 0.00 | 0.00 |

## Receipt

This is not a bill. Please do not remit payment.

ATTORNEY AT LAW
4096 HOLIDAY ST., NW
CANTON, OH 44718-2513

# STATE OF OHIO
## CERTIFICATE

### Ohio Secretary of State, Jon Husted
#### 3900015

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**B & G FUTURES INC.**

and, that said business records show the filing and recording of:

| Document(s) | Document No(s): |
|-------------|-----------------|
| **DOMESTIC FOR PROFIT CORP - ARTICLES** | **201612601520** |
| **Effective Date: 05/05/2016** | |



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 6th day of May, A.D. 2016.

*Jon Husted*

**Ohio Secretary of State**



**Form 532A Prescribed by:**

**JON HUSTED**
**Ohio Secretary of State**

Central Ohio: (614) 466-3910
Toll Free: (877) SOS-FILE (767-3453)
*www.OhioSecretaryofState.gov*
*Busserv@OhioSecretaryofState.gov*

Date Electronically Filed: 5/5/2016

# Initial Articles of Incorporation
## (For Profit, Domestic Corporation)
## Filing Fee: $99
### (113 - ARF)

**First:** Name of Corporation | B & G Futures Inc.

**(Name must include the following word or abbreviation: company, co., corporation, corp., incorporated, or inc.)**

**Second:** Location of Principal office in Ohio

CANTON
City

OHIO
State

STARK
County

Effective Date **(Optional)**

5/5/2016
mm/dd/yyyy

**(The legal existence of the corporation begins upon the filing of the articles or on a later date specified that is not more than ninety days after filing)**

**Third:** The number of shares which the corporation is authorized to have outstanding.
(Please state if shares are common or preferred and their par value, if any.)

| 750 | COMMON | 0 |
|---|---|---|
| **Number of Shares** | **Type** | **Par Value** |

**Fourth:** If the corporation is to have an initial stated capital, please state the amount of that stated capital

0
Amount

**\*\*Note: ORC Chapter 1701 allows additional provisions to be included in the Articles of Incorporation that are filed with this office. If including any of these additional provisions, please do so by including them in an attachment to this form.\*\***

## ORIGINAL APPOINTMENT OF STATUTORY AGENT

The undersigned, being at least a majority of the incorporators of

B & G Futures Inc.

hereby appoint the following to be statutory agent upon whom any process, notice or demand required or permitted by statute to be served upon the corporation may be served. The complete address of the agent is

ANDY GINELLA, ESQ
Name

4096 HOLIDAY ST., NW
Mailing Address

| CANTON | OHIO | 44718 |
|--------|------|-------|
| City | State | Zip Code |

Must be signed by the Incorporators or a majority of the incorporators

ANDY GINELLA, ESQ
Signature

Signature

Signature

## ACCEPTANCE OF APPOINTMENT

The Undersigned, | ANDY GINELLA, ESQ | , named herein as the
Statutory Agent Name

Statutory agent for | B & G Futures Inc. |
Corporation Name

hereby acknowledges and accepts the appointment of statutory agent for said corporation.

Statutory Agent Signature | ANDY GINELLA |

Individual Agent's Signature/Signature on Behalf of Business Serving as Agent

**By signing and submitting this form to the Ohio Secretary of State, the undersigned hereby certifies that he or she has the requisite authority to execute this document.**

**Required**
Articles and original appointment of agent must be signed by the incorporator(s).

If the incorporator is an individual, then they must sign in the "signature" box and print his/her name in the "Print Name" box.

If the incorporator is a business entity, not an individual, then please print the entity name in the "signature" box, an authorized representative of the business entity must sign in the "By" box and print his/her name and title/authority in the "Print Name" box.

ANDY GINELLA, ESQ

Signature

By

Print Name

Signature

By

Print Name

Signature

By

Print Name

B&G Jurisdiction Appx. 050

## In the Matter Of:

## DAN-BUNKERING Vs. ICHOR OIL

20-cv-3341-S-BT

---

## GARY STANLEY

*March 30, 2022*

---



800.211.DEPO (3376)
EsquireSolutions.com

1               THE UNTIED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
2
                   CIVIL ACTION NO.: 20-cv-3341-S-BT
3
DAN-BUNKERING(America) Inc.,            )
4                                       )
    Plaintiff,                          )
5                                       )
v                                       )
6                                       )
ICHOR OIL, LLC., et al.,                )
7                                       )
    Defendants.                         )
8   _____/

9
                    REMOTE DEPOSITION OF
10                      GARY STANLEY

11

12  DATE:            Wednesday, March 30th, 2022

13  TIME:            4:00 p.m. to 5:28 p.m.

14  LOCATION:        Remote via Zoom
                     Clearwater, Florida
15
    REPORTED BY:     MICHELE FACONTI, RPR, FPR
16                   Court Reporter and Notary
                     Public, State of Florida
17

18

19

20

21

22

23

24

25



```
 1  A P P E A R A N C E S:

 2  J. STEPHEN SIMMS, ESQUIRE (via Zoom)
    OF:         Simms Showers, LLP
 3              201 International Circle, Suite 230
                Baltimore, Maryland 21030
 4              410-783-5795
                jssimms@simmsshowers.com
 5
                Appearing on behalf of the Plaintiff
 6
    KURT S. ELIESON, ESQUIRE (via Zoom)
 7  OF:         Carpenter & Associates
                555 Republic Drive, Suite 510
 8              Plano, Texas 75074
                972-455-8700
 9              kurte@carplawfirm.com

10              Appearing on Behalf of B&G

11  Also Present:  Steven DiPietro, (via Zoom)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



1                    I N D E X

2                                                      Page

3   TESTIMONY OF GARY STANLEY
         Direct Examination by Mr. Elieson. . . . .      5
4        Cross-Examination by Mr. Simms . . . . . .     55
         Redirect Examination by Mr. Elieson. . . .     57
5
    CERTIFICATE OF OATH . . . . . . . . . . . . . .     61
6
    CERTIFICATE OF REPORTER . . . . . . . . . . . .     62
7
    ERRATA SHEET. . . . . . . . . . . . . . . . . .     63
8

9                  E X H I B I T S

10
    Plaintiff's Exhibit Number 1  . . . . . . . . .      4
11      (B&G Futures, Inc.'s notice of taking
         deposition of defendant Ichor Oil, LLC)
12
    Plaintiff's Exhibit Number 2  . . . . . . . . .      4
13      (B&G Futures, Inc., requests for production
         No. 1-19 to defendant Ichor Oil, LLC)
14
    Plaintiff's Exhibit Number 4  . . . . . . . . .      4
15      (Bates-stamped B&G App. 46-51)

16  Plaintiff's Exhibit Number 5  . . . . . . . . .      4
        (Bates-stamped B&G App. 40)
17
    Plaintiff's Exhibit Number 6  . . . . . . . . .      4
18      (Bates-stamped B&G App. 41-42)

19  Plaintiff's Exhibit Number 7  . . . . . . . . .      4
        (Bates-stamped B&G App. 43)
20
    Plaintiff's Exhibit Number 8  . . . . . . . . .      4
21      (Bates-stamped B&G App. 44-45)

22  Plaintiff's Exhibit Number 9  . . . . . . . . .      4
        (Bates-stamped B&G App. 28)
23
    Plaintiff's Exhibit Number 11 . . . . . . . . .      4
24      (Bates-stamped B&G App. 19)

25  Plaintiff's Exhibit Number 12 . . . . . . . . .      4
        (Bates-stamped B&G App. 24-25)



```
 1        (Proceedings remotely began at 4:00 p.m.)
 2        (Plaintiff's Exhibit Numbers 1, 2, 4, 5,
 3         6, 7, 8, 9, 11, 12 marked.)
 4        THE STENOGRAPHER:  Please raise your right
 5   hand.
 6        THE WITNESS:  (Complies.)
 7        THE STENOGRAPHER:  Do you solemnly swear
 8   or affirm the testimony you are about to give
 9   is the truth, the whole truth, and nothing but
10   the truth?
11        THE WITNESS:  Yes, I do.
12        THE STENOGRAPHER:  Thank you.
13        Proceed, Counsel.
14        MR. ELIESON:  Okay.  Thank you.
15        Just want to put on the record real
16   quickly with Mr. Simms.  I think we're agreed
17   that any problems about the witness being in
18   the same room with the court reporter and other
19   issues like that, we're waiving those and just
20   glad to get the deposition done; is that right?
21        MR. SIMMS:  Yes.
22        MR. ELIESON:  Okay.  We both noticed it
23   and we're both happy to have it.
24        MR. SIMMS:  Yes.
25
```



1                    GARY STANLEY,

2    having been first duly sworn, as hereinafter

3    certified, testified as follows:

4                    DIRECT EXAMINATION

5    BY MR. ELIESON:

6        Q     Mr. Stanley, have you given your

7    deposition before?

8        A     No.

9        Q     I'm sorry, is that a yes or a no?

10       A     Not that I recall, no.

11       Q     Okay.  Are you on any medications today

12   that would affect your ability to understand or

13   respond to my questions?

14       A     Nope.

15       Q     Is there any other reason why you would

16   not be able to understand or respond to my

17   questions?

18       A     None at all.

19       Q     Before we get started, just a couple of

20   things.  If I ask a question and it doesn't make

21   sense or if you don't understand it, feel free to

22   stop and tell me.  I'll be surprised if I get

23   through this deposition and that doesn't happen at

24   least once.

25       A     Okay.

1       Q     If you do answer, I'm going to assume that
2    you understood the question.  But, again, feel free
3    to stop me and say that you don't.
4       A     Okay.
5       Q     One other thing that we've done pretty
6    well with so far, we have to take turns.  The court
7    reporter has a real problem taking down what we say
8    if we speak over each other.  So I'll ask a
9    question, I'll try to wait until you're done
10   answering.  And then if you'll wait until I'm done
11   asking questions, that will help a lot.
12      A     Okay.
13      Q     Also it may be that me or Mr. Simms at
14   some points object to a question.  Our objections
15   won't take very long, but if you'll just -- if we
16   start to do that, if you'll just wait, let us say
17   the objection, and then you can go ahead and answer
18   afterward.
19      A     All right.
20      Q     Can you tell me where you are currently
21   located, what city and state?
22      A     Clearwater, Florida.
23      Q     I have sent some emails to you at an email
24   address.  I believe it's g.stanley@ichoroil.com.  Is
25   that a good email address for you?



1        A    Yes, it is.

2        Q    Did you receive an email from me a day or

3   two ago with some documents to print up for the

4   deposition?

5        A    Yes.  I don't have them printed out, but I

6   can pull them up on the computer and look at them.

7        Q    That's fine.  Just so we're all able to

8   look at the same document.  Thank you.

9             Okay.  Several weeks ago I sent to you

10  a -- let me back up.

11            Okay.  What is your position with Ichor

12  Oil?

13       A    I'm the CEO.

14       Q    Are you the only person with an ownership

15  in Ichor Oil?

16       A    Yes, I am.

17       Q    Are you the person in charge of its

18  day-to-day operations?

19       A    Yes, I am.

20       Q    You don't have any boss, correct?

21       A    No.

22       Q    And is --

23       A    My wife.

24       Q    How many -- I'm sorry, I'm sorry to

25  interrupt you.



1       A    I was just making a joke.  I said unless

2    it's my wife.

3       Q    Does Ichor Oil have any other employees

4    besides you?

5       A    No.

6       Q    Okay.  I sent to you about a month ago,

7    maybe a little less, an email with some documents

8    that were requested from Ichor Oil.  Do you recall

9    receiving that?

10      A    I can't say -- I mean, I may or may not

11   have.  I must have overlooked it.  I've been out of

12   the country for a couple weeks -- three weeks now.

13      Q    My recollection is that we had a text

14   exchange and you said let me know what documents and

15   I then emailed that to you.

16      A    Yeah, I remember that.

17      Q    Have you collected any of those documents

18   yet?

19      A    I have all the documents collected, but --

20   I have associated with this particular case.  But,

21   you know, I'd have to go back and review and see

22   which ones you requested and all that to get them to

23   you.  So, yeah.

24      Q    Okay.  What is a convenient way for you to

25   produce those documents?  Is it convenient to do it



1  by --

2      A    I can email them, yeah.  It will take

3  several emails, they are large, but I can email to

4  you.

5      Q    Or would you like me to send you a Dropbox

6  link?

7      A    That would be great, yeah.

8      Q    Okay.  I will send you a Dropbox link this

9  evening.

10     A    Okay.

11     Q    How long do you think it would take you to

12  get those documents uploaded to Dropbox?

13     A    Oh, I don't know.  In the next day or two

14  anyway.  You know, by the end of the week.

15     Q    Okay.  The corporate office of Ichor Oil,

16  where is that located?

17     A    Right now it's where I reside.

18     Q    Okay.  What address is that?

19     A    1772 Greenlea Drive, Clearwater.

20     Q    Is there anyone at Ichor Oil besides you

21  who would have knowledge of the transactions with

22  Dan-Bunkering and B&G Future?

23     A    No.

24     Q    What is your background in the oil trading

25  industry?



1  lawyer can do that; you understand that?

2      A    Yes.

3      Q    Okay.  Did you agree that Ichor Oil, in

4  fact, owed that much to Dan-Bunkering, the whole

5  500,000?

6      A    No.  I did not.

7      Q    Okay.  Do you have any deals with

8  Dan-Bunkering about the outcome of this lawsuit?

9      A    No, I do not.

10     Q    Okay.  What communications have you had

11 with Dan-Bunkering about this lawsuit?

12     A    The judgment.  It looks like you

13 discovering, you know.  Asking for the emails and

14 texts and documents, anything like that.  Pretty

15 much that's about it.

16     Q    What did you understand about what

17 Dan-Bunkering was going to do with the oil after

18 they acquired it?

19     A    I have no idea.  It's their business, not

20 mine.

21     Q    Do you know what they, in fact, did with

22 it after they acquired it?

23     A    No, I don't.

24     Q    Did you ever have any emails that you

25 exchanged with Matt Sharkey or anyone else at



1  thing is I had noticed the corporate

2  representative, which is why I asked those

3  questions about his position and all.  Steve

4  noticed him individually.  He's only got the

5  company.  I don't think this makes any

6  difference.  But just understand I had noticed

7  the corporate representative and he noticed

8  Gary individually.

9       And, Steve, I don't care if we just say

10 it's both of them together and treat it that

11 way or whatever you want.

12      MR. SIMMS:  That's fine.

13      MR. ELIESON:  Okay.

14    (Deposition concluded at 5:28 p.m.)

15

16

17

18

19

20

21

22

23

24

25



1                   CERTIFICATE OF OATH

2    STATE OF FLORIDA
     COUNTY OF ST. LUCIE
3

4        I, Michele Faconti, RPR, FPR, Court Reporter

5    and Notary Public of the State of Florida, certify

6    that GARY STANLEY, remotely appeared before me via

7    Zoom on the 30th day of March, 2022, and were duly

8    sworn.

9        WITNESS my hand and official seal this 30th day

10   of March, 2022.

11

12                   _____
                     Michele Faconti, RPR, FPR
13                   Court Reporter and Notary Public
                     State of Florida
14                   My Commission:  HH 045623
                     Expires:  January 10, 2025
15

16

17

18

19

20

21

22

23   Produced Identification

24   Type of Identification Produced, Driver's License

25



800.211.DEPO (3376)
EsquireSolutions.com

1                    CERTIFICATE OF REPORTER

2    STATE OF FLORIDA

3    COUNTY OF ST. LUCIE

4

5        I, MICHELE FACONTI, RPR, FPR, Court Reporter

6    and Notary Public of the State of Florida, CERTIFY I

7    was authorized to and did stenographically report

8    the videotaped, remote deposition of GARY STANLEY;

9    that a review of the transcript was requested; and

10   the foregoing transcript, page 1 through page 63, is

11   a true and accurate record of my stenographic notes.

12           I further certify that I am not a

13   relative, employee, attorney, or counsel of any of

14   the parties, nor am I a relative or employee of any

15   of the parties' attorney or counsel connected with

16   the action, nor am I financially interested in the

17   action.

18       DATED this 11th day of April, 2022.

19

20

21

22                          _michele faconti_
                            _____
23                          Michele Faconti, RPR, FPR
                            Court Reporter

24

25



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Dan-Bunkering (America) Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: |
| v. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| Ichor Oil, LLC, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| Truist Bank d/b/a BB&T, | § | |
| | § | |
| Garnishee. | § | |

## VERIFIED COMPLAINT WITH REQUEST FOR ISSUE OF
## PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT

Dan-Bunkering (America) Inc. ("Dan-Bunkering") brings this action against Ichor Oil, LLC ("Ichor") *quasi in rem* pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims, requesting the issuance of writs of maritime attachment and garnishment including to Garnishee Truist Bank d/b/a BB&T ("BB&T") and states as follows:

### JURISDICTION AND VENUE

1.      This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Federal Rule of Civil Procedure 9(h).

2.      Venue is proper in this District because BB&T can be found, and/or can be served with process in this District.

3.      Venue is also proper in this District because Ichor's property is or soon will be in this District, namely, one or more bank accounts held by BB&T and owned by Ichor.

4.      Ichor cannot be found in this District within the meaning of Supplemental Rule B.

## THE PARTIES

5.      Dan-Bunkering is a Texas corporation with its principal place of business in Houston, Texas provides marine fuel (the "Bunkers") to ocean-going vessels in Texas and throughout the world.

6.      Ichor is a Florida limited liability company which sells various types of petroleum products, including marine fuel.

7.      BB&T is a banking entity with offices or agents located in this District which, on information and belief as detailed below, Dan-Bunkering reasonably believes holds accounts which are the property of and/or owed to Ichor.  Specifically, BB&T holds one or more  accounts for the benefit of Ichor and by information and belief may hold accounts and other property of Ichor in similar debit or deposit accounts (herein collectively, the "Garnishee Truist Bank d/b/a BB&T Bank Accounts").

## STATEMENT OF FACTS

8.      For $500,000.00, Ichor in August, 2019 agreed to sell and Dan-Bunkering agreed to buy from Ichor 110,000 barrels of marine fuel (the "Marine Fuel").  Ichor required that Dan-Bunkering pre-pay the $500,000.00 by wire transfer to Ichor's account held by BB&T, which Dan-Bunkering did on or about August 26, 2020.

9.      Afterwards, Dan-Bunkering pressed Ichor for delivery of the Marine Fuel.  In response, Ichor, by its principal and sole member, C. Gary Stanley, gave various excuses about why the delivery to Dan-Bunkering of the Marine Fuel was delayed.  Finally, Mr. Stanley explained that he could not deliver the Marine Fuel, and that he (acting as Ichor) would refund the $500,000.00 to Dan-Bunkering instead.

10.     Ichor and C. Gary Stanley eventually ceased communicating with Dan-Bunkering without refunding the $500,000.00 as promised despite Dan-Bunkering's repeated demand.

11.     Dan-Bunkering's contract with Ichor for the Marine Fuel is a maritime contract.

## CAUSES OF ACTION

### Count I: Breach of Maritime Contract

12.      Dan-Bunkering incorporates the above paragraphs as if fully set forth herein.

13.      Ichor breached its maritime contracts with Dan-Bunkering as set out above. Despite repeated demands, Dan-Bunkering remains unpaid.

14.      Dan-Bunkering, therefore, demands judgment, as set out more fully below.

### Count II: Maritime Attachment and Garnishment (Rule B)

15.      Dan-Bunkering incorporates the above paragraphs as if specifically set forth herein.

16.      Dan-Bunkering seeks issue of process of maritime attachment so that it may obtain security for a damage award against Ichor.

17.      No security for Dan-Bunkering's claims has been posted by Ichor or anyone acting on its behalf to date.

18.      Ichor cannot be found within this District within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of garnishees within this District, including but not limited to BB&T.

### PRAYER FOR RELIEF

WHEREFORE, Dan-Bunkering respectfully prays:

A.      That in response to Count I, process of maritime attachment be issued to garnish and attach property of Ichor in the principal amount of at least $500,000.00 plus attorneys' fees pursuant to Texas Civil Practice and Remedies Code Section 38.001, and interest and costs of at least $100,000.00 for a total amount of $600,000.00 as detailed above;

B.      That in response to Count II, since Ichor cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process

of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Ichor's tangible or intangible property or any other funds held by BB&T and any further garnishee, up to at least the amount demanded herein to secure Dan-Bunkering's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint;

      C.     That as provided in Supplemental Rule B, that such person over 18 years of age be appointed as moved for herein pursuant to Supplemental Rule B and Federal Rule of Civil Procedure 4(c) to serve the process of maritime attachment and garnishment; and

      D.     That this Court award Dan-Bunkering such other and further relief that this Court deems just and proper.

Dated:   November 8, 2020.

Respectfully submitted,


*/s/ Scott R. Wiehle*
Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
Emily R. Steppick
emily.steppick@kellyhart.com
State Bar No. 24117095
**KELLY HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopy: (817) 878-9280

and

J. Stephen Simms
(Motion for Pro Hac Vice to be filed)
jssimms@simmsshowers.com
**SIMMS SHOWERS LLP**
201 International Circle, Suite 250
Baltimore, Maryland 21030
Telephone: (410) 783-5795
Facsimile: (410) 510-1789

**ATTORNEYS FOR PLAINTIFF DAN-BUNKERING (AMERICA) INC.**

B&G Jurisdiction Appx. 069

## **VERIFICATION**

I am a principal of Simms Showers LLP, counsel to Plaintiff Dan-Bunkering (America) Inc. ("Dan-Bunkering").  There exist no officers of Dan-Bunkering within this District to make this Verification.  Dan-Bunkering has authorized me to make this Verification on their behalf based on facts and documents I received Dan-Bunkering and obtained through my investigation of the factual allegations herein.  The facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District. I also caused a search to be made for any corporate registration of Ichor in the State of Texas, or otherwise of any agent authorized to accept service of process in this District.  There is no record of any general or resident agent authorized to accept service of process for Ichor in this District.

Pursuant to 28 U.S.C. § 1746(1), I certify under penalty of perjury that the foregoing is true and correct.

Executed November 8, 2020

*/s/ J. Stephen Simms*
J. Stephen Simms
**SIMMS SHOWERS LLP**
201 International Circle
Baltimore, Maryland 21030
443-290-8704; fax 410-510-1789
jssimms@simmsshowers.com

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Northern District of Texas

| | | |
|---|---|---|
| Dan-Bunkering (America) Inc | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 3:20-cv-03341-S-BT |
| | ) | |
| Ichor Oil LLC et al | ) | |
| *Defendant* | ) | |

## Summons in a Civil Action

**TO:** Ichor Oil LLC

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) -- or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) -- you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or the plaintiff's attorney, whose name and address are:

Scott Wiehle
201 Main St.
Suite 2500
Fort worth , TX 76102

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

DATE: 11/12/2020

*Signature of Clerk or Deputy Clerk*

## AFFIDAVIT OF SERVICE

State of Texas

Northern District of Texas

Case Number: 3:20-CV-3341-S-BT



APD2020001780

Plaintiff(s):
**DAN-BUNKERING (AMERICA) INC.**

vs.

Defendant(s):
**ICHOR OIL LLC, et al:**

For:
J. STEPHEN SIMMS, ESQ.
201 International Circle
BALTIMORE, MD 21030

Received by  on the 12th day of November, 2020 at 11:00 am to be served on **ICHOR OIL, LLC., c/o GARY STANLEY, 14195 SIESTA  RD., LARGO, FL 33774.**

I, Mark Maraventano, being duly sworn, depose and say that on the **14th day of November, 2020** at **2:15 pm, I:**

served a **CORPORATION** by delivering a true copy of the **SUMMONS, VERIFIED COMPLAINT WITH REQUEST FOR ISSUE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT, MOTION FOR ORDER FOR ISSUANCE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT, MEMORANDUM IN SUPPORT OF MOTION FOR ORDER FOR ISSUANCE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT, ORDER and PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT** with the date and hour of service endorsed thereon by me, to: **GARY STANLEY as CEO for ICHOR OIL, LLC.,**, at the address of: **14195 SIESTA RD., LARGO, FL 33774,** and informed said person of the contents therein, in compliance with state statutes.

**Military Status:** Based upon inquiry of party served, Defendant is not in the military service of the United States of America.

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made. Pursuant to F. S. 92.525, under penalties of perjury, I declare that I have read the forgoing document and that the facts stated are true.



```
RAYMOND GUDAITIS
Notary Public - State of Florida
Commission # HH 028218
My Comm. Expires Aug 4, 2024
Bonded through National Notary Assn.
```

Subscribed and Sworn to before me on the 17TH day of
NOVEMBER, 2020 by the affiant who is
personally known to me.

NOTARY PUBLIC

**Mark Maraventano**
Process Server # APS 09976

**201 International Circle**
**BALTIMORE, MD 21030**

Our Job Serial Number: APD-2020001780

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1t

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | | |
|---|---|---|
| Dan-Bunkering (America) Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: |
| vs. | § | 3:20-cv-03341-S |
| | § | |
| IChor Oil, LLC, | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| Truist Bank d/b/a BB&T, | § | |
| | § | |
| Garnishee. | § | |

**REQUEST TO THE CLERK TO ISSUE
SUPPLEMENTAL PROCESS OF MARITIME ATTACHMENT
AND GARNISHMENT, PURSUANT TO
THE COURT'S ORDER [ECF 9]**

To the Clerk:

Please pursuant to the Court's November 10, 2020 [ECF 9], *inter alia*:

**ORDERED**, that supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court . . .

Issue a supplemental Rule B Writ of Maritime Attachment and Garnishment to garnishee B&G

Futures Inc.

Dan-Bunkering (America) Inc. herewith submits a draft writ.

[continued on next page]

Dated:  December 4, 2020.

Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com

Emily R. Steppick
emily.steppick@kellyhart.com
State Bar No. 24117095

KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

*/s/ J. Stephen Simms*
J. Stephen Simms
(*pro hac vice*)
jssimms@simmsshowers.com

Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Telephone: (410) 783-5795
Facsimile: (410) 510-1789

Counsel for Dan-Bunkering (America) Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | | |
|---|---|---|
| Dan-Bunkering (America) Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: |
| vs. | § | 3:20-cv-03341-S |
| | § | |
| IChor Oil, LLC, | § | IN ADMIRALTY, Rule 9(h) |
| | § | |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| Truist Bank d/b/a BB&T, | § | |
| | § | |
| Garnishee. | § | |

## PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT

TO GARNISHEE:  B & G Futures Inc.

THE PRESIDENT OF THE UNITED STATES OF AMERICA

THE UNITED STATES MARSHAL FOR THE NORTHERN DISTRICT OF TEXAS,

GREETINGS:

WHEREAS, Plaintiff Dan-Bunkering (America) Inc. filed a Verified Original Complaint in the United States District Court for the Northern District of Texas on November 6, 2020, with a claim against Defendant IChor Oil, LLC in an amount of at least **$600,000** (herein, the "Garnishment Amount"), with a prayer for process of maritime attachment and garnishment against the property of said Defendant, accompanied by an Affidavit pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure stating that, to the best of affiant's knowledge, or on information and belief, the Defendant cannot be found within the District, together with a Motion for Issuance of Process of Maritime Attachment and Garnishment, and

WHEREAS, the Court reviewed the Verified Original Complaint and Affidavit and found that the conditions of Rule B appeared to exist and entered an Order so stating and authorizing the issuance of process of maritime attachment and garnishment;

NOW THEREFORE, we hereby do empower, strictly charge and command you, the said Marshal, (1) to cite and admonish Defendant if it be found in your District, to appear before the United States District Court for the Northern District, at the United States District Courthouse, 1100 Commerce Street, Dallas, Texas  75242, within the time prescribed by law, then and there

---

to answer the aforementioned Verified Original Complaint, and to make their allegations in their behalf; and if the Defendant cannot be found in the Northern District of Texas, (2) to cause service to be made on such garnishees or their agents in this District holding property including accounts of Defendant Ichor Oil, LLC, garnishing any tangible or intangible personal property, which belongs to, is the property of, is held in a fiduciary capacity for, or is otherwise claimed by Defendant, in an amount up to the Garnishment Amount.

We do further hereby empower, strictly charge and command you, the said Marshal, to instruct Garnishee, and its agents, to maintain custody and possession of the tangible personal property, including, but not limited to any accounts, which belong to, is the property of, is held in a fiduciary capacity for, or is otherwise claimed by Defendant and having served the warrant to make due and prompt return.

We do further hereby empower, strictly charge and command you, the said Marshal, to execute this writ by leaving with the Garnishee a copy of the complaint and process requiring the Garnishee to answer as provided in Rule B(3)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure; or you may accept for payment into the registry of the Court the amount owed to the extent of the amount claimed by Plaintiff with interest and costs.

We do further empower, strictly charge and command you, the said Marshal, to notify the Defendant and Garnishees as follows:

(1)     An attachment and garnishment has been filed pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure against IChor Oil, LLC, Defendant in this action;

(2)     Garnishees are required to file with the Clerk of the United States District Court for the Northern District of Texas, with copy to the Plaintiff's attorney Scott R. Wiehle, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500,  Fort Worth, Texas 76102 and J. Stephen Simms, Simms Showers., LLP, 201 International Circle, Suite 230, Baltimore, Maryland 21030, within twenty-one (21) days from the service of this Writ, a report, under oath, setting forth in detail all debts owing by Garnishee to Defendant; all property of Defendant in the possession, custody or control of Garnishee or to which the Garnishee hold legal title; all property which is held by Garnishee as fiduciary in which the Defendant has an interest; and whether any property attached is immune or exempt from attachment; unless, if intangible property is attached, Garnishee provides to the Marshal for payment into the registry of the Court the amount owed to the extent of the amount claimed by Plaintiff with interest and costs, in which event Garnishee shall not be required to answer;

(3)     Garnishee is required to promptly forward a copy of this Writ to Defendant;

(4)     Defendant is required to file with the Clerk of the United States District Court for the Northern District of Texas, with copy to the Plaintiff's attorney Scott R. Wiehle, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500,  Fort Worth,

Texas 76102 and J. Stephen Simms, Simms Showers., LLP, 201 International Circle, Suite 230, Baltimore, Maryland 21030, within thirty (30) days of service of this Writ, an answer to Plaintiff's Verified Original Complaint.

(5)      A hearing of any objections which might be raised by Defendant, or the Garnishees herein, under Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure may be scheduled by calling the case manager of the United States  District/Magistrate Judge in this case.

Witness, the Honorable Judge of the United States District Court for the Northern District

of Texas, this ___ day of December, 2020.

KAREN MITCHELL,
United States District Clerk for the
Northern District of Texas


By:_____
Deputy Clerk

NOTE: This process is issued pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| DAN-BUNKERING (AMERICA) INC., | § |
| | § |
| v. | § CIVIL ACTION NO. 3:20-CV-3341-S-BT |
| | § |
| ICHOR OIL, LLC, et al., | § |

## DEFAULT JUDGMENT AGAINST DEFENDANT ICHOR OIL, LLC

The Court has entered its Order in this case accepting the Findings, Conclusions, and Recommendation of the United States Magistrate Judge.

Therefore, **IT IS ORDERED** that Plaintiff's Request for Default Judgment Against Defendant Ichor Oil, LLC [ECF No. 26] is **GRANTED**. The Court enters judgment against Ichor Oil, LLC, and in favor of Dan-Bunkering (America) Inc., in the amount of $521,265.10. All relief not expressly granted is **DENIED**.

**SO ORDERED.**

SIGNED May 5, 2021.

**UNITED STATES DISTRICT JUDGE**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| DAN-BUNKERING (AMERICA), INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 3:20-cv-03341-D |
| v. | § | |
| | § | IN ADMIRALTY, RULE 9(h) |
| ICHOR OIL, LLC, | § | |
| | § | |
| Defendant | § | |

---

## B&G FUTURES, INC.'S FIRST AMENDED ANSWER TO PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT (Docket No. 20) **AND COUNTERCLAIM**

---

TO THE HONORABLE KAREN GREN SCHOLER, UNITED STATES JUDGE:

Now comes Respondent B&G Futures, Inc. to file this First Amended Answer to Process of Maritime Attachment and Garnishment (Docket No. 20) and Counterclaim, and in support thereof would respectfully show the following:

## I. ANSWER TO PROCESS

1.      At the time the Process was served on Respondent on December 8, 2020, and at all times since then, Respondent was and has been indebted to Defendant Ichor Oil, LLC in the amount of ZERO dollars.

2.      At the time the Process was served on Respondent on December 8, 2020, and at all times since then, NO property of Defendant Ichor Oil, LLC was or has been in the possession, custody or control of Respondent, and Respondent held and has held legal title to NO property of Defendant Ichor Oil, LLC.

3.      At the time the Process was served on Respondent on December 8, 2020, and at all

---

times since then, Respondent held and has held NO property as a fiduciary in which Defendant Ichor Oil had or has had an interest.

4.      NO property is identified as immune or exempt from attachment because there is NO property responsive to the Process.

## II. <u>SPECIFICALLY PLEADED MATTERS</u>

5.      Dan-Bunkering's claims in this suit are not maritime claims and thus do not arise in admiralty. B&G Futures acknowledges, however, that diversity jurisdiction exists under 28 U.S.C. § 1332(a) and that the Court therefore has subject matter jurisdiction of this case.

6.      Ichor Oil breached its contract with B&G Futures by failing to timely make payment in full to B&G Futures in the amount of about $5.7 million prior to delivery of the fuel oil.

7.      Ichor Oil's payment of $350,000 was for the purpose of purchasing an extension of time in which to perform by making payment of the full remainder of the purchase price to B&G Futures. Although a payment of $500,000 had been required, Ichor Oil nevertheless received that extension of time, but Ichor Oil still failed to perform.

8.      B&G Futures was permitted by the terms of its contract with Ichor Oil to charge interest on the outstanding balance owed by Ichor Oil, which amount exceeds and thus fully offsets the $350,000 payment by Ichor.

9.      Upon information and belief, Ichor Oil's inability to perform was caused by Dan-Bunkering's breach of its obligations to Ichor Oil and its attempt to circumvent Ichor Oil and B&G Futures in order to obtain fuel oil directly from B&G Future's source.

## II. <u>COUNTERCLAIM</u>

10.     As a result of the Process, it has been necessary for Respondent to employ the undersigned attorneys to answer the Process herein and to otherwise represent it. Respondent seeks to recover its costs and its reasonable and necessary attorneys fees pursuant to Rule B(1)(e) of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeitures, Fed. R. Civ. P. 64, and Tex. R. Civ. P. 677, and also pursuant to the Court's inherent authority to sanction.

## <u>PRAYER</u>

Wherefore, premises considered, Respondent B&G Futures, Inc. respectfully requests that the Court award it the following relief:

(A)     Discharge Respondent B&G Futures, Inc. from all liability to Plaintiff Dan-Bunkering (AMERICA), Inc. and to Defendant Ichor Oil, LLC;

(B)     Award B&G Futures its costs and its reasonable and necessary attorneys fees incurred in connection with this matter; and

(C)     Grant B&G Futures such other, further, and general relief to which it may show itself to be justly entitled.

Respectfully submitted,

 /s/ Kurt S. Elieson
Kurt S. Elieson
Texas Bar No. 06521100
CARPENTER & ASSOCIATES
101 E. Park Blvd., Suite 1150
Plano, Texas 75074
972-455-8700 – Tel.
972-767-5599 – Fax
kurte@carplawfirm.com – Email

## VERIFICATION

STATE OF OHIO            §
                         §
COUNTY OF STARK          §

     1.     "My name is Steven P. DiPietro. I am over twenty-one (21) years of age and of sound mind, have never been convicted of a felony or crime involving moral turpitude, and am otherwise competent and capable of making this Verification. I am the President of Respondent B&G Futures, Inc.

     2.     "I have read the foregoing First Amended Answer and Counterclaim. The facts stated in ¶ 1-4 are within my personal knowledge and are true and correct.

     3.     "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

     Executed on December 3, 2021.


_____
Steven P. DiPietro


## CERTIFICATE OF SERVICE

     I hereby certify that on December 3, 2021 a true and correct copy of the foregoing document has been served via the Court's electronic notification system to all counsel of record at the time of filing.


 /s/ Kurt S. Elieson_____
Kurt S. Elieson

## VERIFICATION

STATE OF OHIO             §
                          §
COUNTY OF STARK           §

1.      "My name is Steven P. DiPietro. I am over twenty-one (21) years of age and of sound mind, have never been convicted of a felony or crime involving moral turpitude, and am otherwise competent and capable of making this Verification. I am the President of Respondent B&G Futures, Inc.

2.      "I have read the foregoing First Amended Answer and Counterclaim. The facts stated in ¶ 1-4 are within my personal knowledge and are true and correct.

3.      "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Executed on December 3, 2021.


_____
Steven P. DiPietro


## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2021 a true and correct copy of the foregoing document has been served via the Court's electronic notification system to all counsel of record at the time of filing.


/s/ Kurt S. Elieson
_____
Kurt S. Elieson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | | |
|---|---|---|
| Dan-Bunkering (America) Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: 20-cv-3341-S-BT |
| vs. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| IChor Oil, LLC, et al., | § | |
| | § | |
| Defendant and Garnishees. | § | |

**PLAINTIFF DAN-BUNKERING'S MOTION FOR SUMMARY JUDGMENT
AGAINST GARNISHEE B&G FUTURES, INC.
ON THE MARITIME GARNISHMENT AND ATTACHMENT WRIT
SERVED TO B&G FUTURES INC.
AND AGAINST B&G COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. 56, plaintiff Dan-Bunkering (America) Inc. moves for summary judgment for $350,000, interest and costs against defendant B&G Futures, Inc. on Dan-Bunkering's its maritime garnishment and attachment writ served on B&G Futures and against B&G's counterclaims.

The required matters of Civil Rule 56.3 ("Content of Motion") are set out in Dan-Bunkering's accompanying memorandum ( brief) and appendix, filed separately, all of which confirm that there is no material fact dispute and that this Court now should grant Dan-Bunkering summary judgment against B&G as a matter of law.

WHEREFORE, Dan-Bunkering respectfully requests this Court to grant this motion, entering judgment against B&G Futures.  Dan-Bunkering herewith submits a draft order.

Dated: May 20, 2022.


/s/  J. Stephen Simms
J. Stephen Simms (admitted *pro hac vice*)
Simms Showers LLP
201 International Circle, Ste. 230
Baltimore, Maryland 21030

Telephone:     (410) 783-5795
Facsimile:      (410) 510-1789
jssimms@simmsshowers.com

- 1 -

Scott R. Wiehle                             KELLY HART & HALLMAN LLP
State Bar No. 24043991                      201 Main Street, Suite 2500
scott.wiehle@kellyhart.com                  Fort Worth, Texas 76102
Emily R. Steppick                           Telephone: (817) 332-2500
emily.steppick@kellyhart.com                Facsimile: (817) 878-9280
State Bar No. 24117095

Counsel for Dan-Bunkering (America) Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2022, I caused the foregoing to be filed on the Court's

CM/ECF system for electronic on all counsel of record.

/s/ J. Stephen Simms
J. Stephen Simms

- 2 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| DAN-BUNKERING (AMERICA), INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 3:20-cv-03341-S |
| v. | § | |
| | § | IN ADMIRALTY, RULE 9(h) |
| ICHOR OIL, LLC, | § | |
| | § | |
| Defendant | § | |

---

**B&G FUTURES, INC.'S BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

TO THE HONORABLE REBECCA SUTHERLAND, UNITED STATES MAGISTRATE JUDGE:

Now comes B&G Futures, Inc. to file this Brief in Support of Motion for Judgment on the

Pleadings pursuant to Fed. R. Civ. P. 12(c), and in support thereof would respectfully show the

following:

**TABLE OF CONTENTS**

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**I.**   **Overview of Motion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**II.**   **Undisputed Facts.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

    A.   The Request for Maritime Garnishment Directed to BB&T Bank . . . . . . . . . . . . 5

    B.   The Request for Maritime Garnishment Directed to Unidentified Garnishees. . . . 6

C.     The Request for Maritime Garnishment Directed to B&G Futures . . . . . . . . . . . 7

III.    **Argument and Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.     Judgment on the pleadings is available in admiralty . . . . . . . . . . . . . . . . . . . . . 7

B.     This motion for judgment on the pleadings is timely . . . . . . . . . . . . . . . . . . . . 8

C.     The standard for granting judgment on the pleadings is well-pleaded facts that plausibly state a claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.     The same standard applies to pleading for garnishment under Admiralty Rule B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

E.     This Pleading Standard Requires Alleging Specific Facts about B&G Futures . . 10

F.     Dan-Bunkering did not plead any facts relating to B&G Futures . . . . . . . . . . . 12

G.     B&G Futures is entitled to judgment on the pleadings . . . . . . . . . . . . . . . . . . . 12

**Prayer** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Aldridge v. Mississippi Dept. of Corrections,*
> 990 F.3d 868 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Ashcroft v. Iqbal,*
> 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

*Bell Atl. Corp. v. Twombly,*
> 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

*DS-Rendite Fonds Nr. 108 v. Essar Capital Americas Inc.,*
> 882 F.3d 44 (2nd Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

*EEOC v. JBS USA, LLC,*
> 481 F.Supp.3d 1204 (D.Colo. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*E.N. Bisso & Son, Inc., v. Bouchard Transp. Co., Inc.,*
> 2019 W.L. 7185555 (D.Md. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11-12

*Farkas v. Ocwen Loan Serv.,LLC,*
> 725 Fed.Appx. 273 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Harbor Pilots of NY NJ, LLC v. Bouchard Transp. Co., Inc.,*
> 474 F.Supp.3d 727 (D.Md. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11-12

*Iqbal*, see *Ashcroft v. Iqbal*

*In re Enron Corp. Securities, Derivative, & ERISA Litigation,*
> 439 F.Supp.2d 692 (S.D.Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Machete Prod., LLC v. Page,*
> 809 F.3d 281 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Macsteel Int'l South Africa (Pty) Ltd., v. Calypso A.S.*,

    2009 W.L. 2777173 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Norcal Gold, Inc. v. Laubly*,

    543 F.Supp.2d 1132 (E.D.Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Peninsula Petr. Ltd. v. New Econ Line Pte Ltd.*,

    2009 W.L. 702840 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tango Marine, S.A. v. Elephant Group Ltd.*,

    431 F.Supp.3d 726 (E.D.Va. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10, 12

*Templeton v. Jarmillo*,

    28 F.4th 618 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Twombly,* see *Bell Atl. Corp. v. Twombly*

## **RULES**

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10-12

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 7-8

Fed. R. Civ. P. 12(h)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. Supp. R. A(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. Supp. R. B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7, 12

Fed. R. Civ. P. Supp. R. E. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

Fed. R. Civ. P. Supp. R. E(2)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# I. OVERVIEW OF MOTION

1.      In order to avoid an adverse judgment on the pleadings, a plaintiff must plead facts

sufficient to state a claim for relief that is plausible on its face.

2.      In the case of a Maritime Writ of Garnish under Rule B, those facts must include at

least the identity of the garnishee and some basis upon which to conclude that the garnishee is legally

indebted to or otherwise in possession of property that belongs to the defendant.

3.      Here Dan-Bunkering's maritime garnishment action against B&G Futures is not

supported by any factual allegations whatsoever relating to B&G Futures.

4.      Dan-Bunkering's maritime garnishment action is therefore subject to an adverse

judgment on the pleadings under Rule 12(c).

# II. <u>UNDISPUTED FACTS</u>

**A.      The Request for Maritime Garnishment Directed to BB&T Bank**

5.      On November 8, 2020 Dan-Bunkering commenced this case by filing a Verified

Complaint with Request for Issu[anc]e of Process of Maritime Attachment and Garnishment.

(Appx. 3).

6.      In Count I of the Complaint, Plaintiff Dan-Bunkering asserted a claim for breach of

contract against Defendant Ichor Oil. (Appx. 4-5, ¶ 8-14).

7.      In Count II of the Complaint, Dan-Bunkering requested the issuance of a Maritime

Writ of Garnishment directed to Garnishee BB&T Bank. (Appx. 4-5, ¶ 7, 15-18).

8.      On that same day, Dan-Bunkering also filed a Motion for Issuance of Process of

Maritime Attachment and Garnishment. The motion requested an order authorizing the Clerk to issue a Maritime Writ of Garnishment pursuant to Rule B against assets owed or belonging to Ichor Oil in the possession of BB&T. (Appx. 12).

9.      Dan-Bunkering's Memorandum in support of the motion also discussed its right to proceed against Defendant Ichor Oil and Garnishee BB&T Bank. (Appx. 16-23.)

**B.      The Request for Maritime Garnishment Directed to Unidentified Garnishees**

10.      In Dan-Bunkering's Complaint, Motion, and Memorandum, it never identified or discussed any garnishee other than BB&T Bank.

11.      Dan-Bunkering's Complaint nevertheless requested the issuance of additional Maritime Writs of Garnishment under Rule B to garnish any property of Ichor Oil "held by BB&T and any further garnishee." (Appx. 6, ¶ B, underline added).

12.      The Motion likewise requested the issuance of Maritime Writs of Garnishment directed to "any garnishee within this District, including without limitation, assets held by or at Garnishee Trust Bank d/b/a BB&T … and said Order being equally applicable with respect to the issuance and service of additional Writs of Maritime Attachment and Garnishment upon any garnishees in this District not named herein … pursuant to Rule B." (Appx. 11-12, underline added).

13.      Two days later on November 10, 2020 the Court signed the proposed order authorizing the subsequent issuance of Maritime Writs of Garnishment against additional garnishees who are not even named in Dan-Bunkering's Verified Complaint. (Appx. 25-26.)

**C.   The Request for Maritime Garnishment Directed to B&G Futures**

14.   A month later on December 4, 2020 Dan-Bunkering requested the Clerk to issue an additional "Rule B Writ of Maritime Attachment and Garnishment to Garnishee B&G Futures." (Appx. 28-32).

15.   In support of this request, Dan-Bunkering told the Court absolutely nothing about Garnishee B&G Futures, nor about whether or why B&G Futures might be indebted to Defendant Ichor Oil, and did not identify any property of Ichor Oil that B&G Futures might be holding. Dan-Bunkering did not amend its Verified Complaint to add allegations regarding Garnishee B&G Futures. Dan-Bunkering did not even make allegations about Garnishee B&G Futures in its Motion. The Motion simply stated: "Please … issue a supplemental Rule B Writ of Maritime Attachment and Garnishment to Garnishee B&G Futures." (Appx. 28).

16.   On December 7, 2020 the Court issued a Process of Maritime Attachment and Garnishment directed to Garnishee B&G Futures pursuant to Rule B. (Appx. 33-35).

## III. ARGUMENT AND AUTHORITIES

**A.   Judgment on the Pleadings Is Available in Admiralty**

17.   Rule A(2) of the Supplemental Admiralty Rules states that, except to the extent of any inconsistency, the Federal Rules of Civil Procedure apply to admiralty proceedings.

18.   For example, in this case there was nothing improper about Dan-Bunkering filing a motion for summary judgment that explicitly invoked Fed. R. Civ. P. 56. (Appx. 36).

19.   This Motion for Judgment on the Pleadings is filed pursuant to Fed. R. Civ. P. 12(c).

**B.    This Motion for Judgment on the Pleadings Is Timely**

20.    A motion for judgment on the pleadings may be filed at any time after the pleadings have closed, as long as the motion will not delay trial. Fed. R. Civ. P. 12(c); *EEOC v. JBS USA, LLC*, 481 F.Supp.3d 1204, 1212-13 (D.Colo. 2020); *In re Enron Corp. Securities, Derivative, & ERISA Litigation*, 439 F.Supp.2d 692, 695 (S.D.Tex. 2006).

21.    Here the pleadings closed five months ago when B&G Futures filed its Amended Answer on December 3, 2021, prior to the deadline to amend pleadings by December 17, and Dan-Bunkering filed a timely response to that pleading on December 27, 2021. (Appx. 62, ¶ 1; Appx. 66-70; Appx. 71-73). *Norcal Gold, Inc. v. Laubly*, 543 F.Supp.2d 1132, 1135 (E.D.Cal. 2008).

22.    Trial has not been set in this case, and will not be set until the Court also rules on B&G Futures's Motion for Summary Judgment Motion that is being filed concurrently with this Motion. (Appx. 64, ¶ 5). Thus this Motion will not delay trial.

**C.    The Standard for Granting Judgment on the Pleadings Is Well-Pleaded Facts that Plausibly State a Claim**

23.    The standard for dismissing a complaint under Rule 12(c) is whether the complaint contains sufficient factual matter that, if accepted as true, will state a claim for relief that is plausible on its face. Fed. R. Civ. P. 8; *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022). In other words, to avoid an adverse judgment, Dan-Bunkering must plead sufficient facts to state a claim that is plausible on its face. *Aldridge v. Mississippi Dept. of Corrections*, 990 F.3d 868, 873 (5th Cir. 2021); *Farkas v. Ocwen Loan Serv.*, LLC, 725 Fed.Appx. 273, 276 (5th Cir. 2018).

24.     In making this evaluation, all factual allegations in Dan-Bunkering's pleading must be accepted as true. *Aldridge*, 990 F.3d at 873. But Dan-Bunkering must nevertheless plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Aldridge*, 990 F.3d at 873.

25.     This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Machete Prod., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (internal citations and quotation marks omitted), citing, Fed. R. Civ. P. 8 and *Twombly*, 550 U.S. at 555.

26.     This is the same standard applicable to deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) or 12(h)(2). *Templeton*, 28 F.4th at 621.

## D.     The Same Standard Applies to Pleading for Garnishment under Admiralty Rule B

27.     The *Twombly-Iqbal* pleading standard under Rule 8 also applies to maritime garnishment proceedings under Rule B. *DS-Rendite Fonds Nr. 108 v. Essar Capital Americas Inc.*, 882 F.3d 44, 50 (2nd Cir. 2018); *Harbor Pilots of NY NJ, LLC v. Bouchard Transp. Co., Inc.*, 474 F.Supp.3d 727, 730-31 (D.Md. 2020); *Tango Marine, S.A. v. Elephant Group Ltd.*, 431 F.Supp.3d 726, 729-31 (E.D.Va. 2020); *E.N. Bisso & Son, Inc., v. Bouchard Transp. Co., Inc.*, 2019 W.L. 7185555, p. 1-3 (D.Md. 2019).

28.     This pleading standard is well known to Dan-Bunkering through its counsel of record, as he is listed in each of these four opinions as the counsel of record for a plaintiff who suffered an adverse ruling after failing to comply with the pleading rules that apply to a Rule B maritime garnishment.

29.     Rule E, which applies to garnishments under Rule B, similarly requires that:

> the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Fed. R. Civ. P. Supp. R. E(2)(a); *DS-Rendite*, 882 F.3d at 47-49; *Peninsula Petr. Ltd. v. New Econ Line Pte Ltd.*, 2009 W.L. 702840, p. 1 (S.D.N.Y. 2009).

30.     Some cases have suggested that the pleading standard stated in Rule E for admiralty cases is even higher than the general pleading standard under Rule 8. *Macsteel Int'l South Africa (Pty) Ltd., v. Calypso A.S.*, 2009 W.L. 2777173, p. 1 (S.D.N.Y. 2009). However, it is not necessary to decide that issue here since this case can be resolved even under the pleading standard of Rule 8 as explained in *Twombly* and *Iqbal*.  See, *Tango Marine*, 431 F.Supp.3d at 729-30.

## E.     This Pleading Standard Requires Alleging Specific Facts about B&G Futures

31.     The leading case on the pleading standard applicable to Maritime Writs under Rule B is *DS-Rendite*. In that case the court explained that the plaintiff's complaint must provide targeted guidance as to the property that is to be garnished. The plaintiff, however, had only made the conclusory allegation that "Each of the Garnishees, on information and belief, holds property of [the

defendant]." This failed to meet the applicable *Twombly* standard of pleading because the allegations did not explain why any of the proposed garnishees would be holding property of the defendant. *DS-Rendite*, 882 F.3d at 51.

32.     In *Tango Marine*, the court held that the plaintiff's pleading did not meet the *Twombly-Iqbal* pleading standard because "there is insufficient factual pleading as to whether … Garnishee is in possession of property in which Defendants have an interest. … [and] contains no identification of the supposed property held by Garnishee." *Id.*, 431 F.Supp.3d at 729-30.

33.     In *Harbor Pilots*, the court held that the plaintiff's pleading did not meet the *Twombly-Iqbal* pleading standard because:

> As to the other categories of property Harbor Pilots seeks to attach or garnish – "assets, cash, funds … or any other tangible and/or intangible assets" – it similarly has included no factual allegations that plausibly demonstrate that [the garnishee] holds any of these within the District."

*Id.*, 474 F.Supp.3d at 733.

34.     In *E.N. Bisso*, the court held that the plaintiff's pleading did not meet the *Twombly-Iqbal* pleading standard. This because "E.N. Bisso has not plausibly shown, through factual allegations, that the Garnishees and [the defendant] are engaged in any commercial ventures or other business relationships. Nor has E.N. Bisso plausibly demonstrated why any one of those [garnishees] would hold property of [the defendant]." *Id.*, 2019 W.L. 7185555, at 3.

**F.     Dan-Bunkering Did Not Pleaded Any Facts Relating to B&G Futures**

35.     Dan-Bunkering's Verified Complaint is insufficient to plausibly state a claim for garnishment directed to B&G Futures because the Complaint does not even identify B&G Futures, let alone plead any facts regarding its business relations with Defendant Ichor Oil, or identify any property of Defendant Ichor Oil that might be held by Garnishee B&G Futures.

36.     Contrary to the position taken by Dan-Bunkering, a plaintiff may not obtain a Maritime Writ of Garnishment under Rule B against "garnishees not named herein [in the plaintiff's complaint]." (Appx. 6, Prayer, ¶ B; Appx. 11-12).

37.     To the contrary, Dan-Bunkering was required plead these matters both under Rule 8 as explained by *Twombly* and *Iqbal* and under Rule E(2)(a) as explained by *DS-Rendite*.

**G.     B&G Futures is Entitled to Judgment on the Pleadings**

38.     Dan-Bunkering knew that its Complaint was deficient through the personal involvement of its counsel in four cases on this exact point over the last four years. *DS-Rendite*, 882 F.3d at 46; *E.N. Bisso*, 2019 W.L. 7185555, at 1; *Harbor Pilots*, 474 F.Supp.3d at 729; *Tango Marine,* 431 F.Supp.3d at 727.

39.     Dan-Bunkering also knew that its pleadings were deficient through the repeated occasions on which B&G Futures complained about Dan-Bunkering's failure and then refusal to amend its Complaint to allege facts and a legal basis for the allegation that Garnishee B&G Futures is legally indebted to Defendant Ichor Oil. (Appx. 42-45, ¶ 5-16; Appx. 47-49; Appx. 56-57, ¶ 2-5; Appx. 60; Appx. 78/10-13; Appx. 79/9-11; Appx. 79/21-80/11).

40.    B&G Futures is therefore entitled to judgment on the pleadings under Rule 12(c) since Dan-Bunkering has not pleaded sufficient facts to render it plausible that funds belonging to Ichor Oil are present in the Northern District in the hands of B&G Futures.

### PRAYER

Wherefore, premises considered, Respondent B&G Futures, Inc. respectfully requests that the Court dismiss with prejudice all claims that B&G Futures is indebted to Ichor Oil, LLC and/or to Dan-Bunkering (America), Inc. and grant B&G Futures such other and further relief to which it may show itself to be entitled.

Respectfully submitted,

  /s/ Kurt S. Elieson
Kurt S. Elieson
Texas Bar No. 06521100
CARPENTER & ASSOCIATES
101 E. Park Blvd., Suite 1150
Plano, Texas 75074
972-455-8700 - Tel.
972-767-5599 - Fax
kurte@carplawfirm.com - Email

### CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2022 a true and correct copy of the foregoing document has been served via the Court's electronic notification system to all counsel of record.

  /s/ Kurt S. Elieson
Kurt S. Elieson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| DAN-BUNKERING (AMERICA), INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 3:20-cv-03341-S |
| v. | § | |
| | § | IN ADMIRALTY, RULE 9(h) |
| ICHOR OIL, LLC, | § | |
| | § | |
| Defendant | § | |

## B&G FUTURES, INC.'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE REBECCA SUTHERLAND, UNITED STATES MAGISTRATE JUDGE:

Now comes B&G Futures, Inc. to file this Brief in Support of Motion for Summary Judgment

pursuant to Fed. R. Civ. P. 56, and in support thereof would respectfully show the following:

## TABLE OF CONTENTS

I.    **Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   **Undisputed Facts.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    B&G Futures did not breach its contract with  Ichor Oil . . . . . . . . . . . . . . . . . . . . 4

    B.    Dan-Bunkering denies knowledge of the terms of the contract . . . . . . . . . . . . . . 9

    C.    Dan-Bunkering has never pleaded its claim for breach of contract . . . . . . . . . . . 9

    D.    Dan-Bunkeirng denies that it has a claim for breach of contact . . . . . . . . . . . . . . 9

**B&G Jurisdiction Appx. 099**

    E.      Ichor Oil Assigned its claims to Dan-Bunkering . . . . . . . . . . . . . . . . . . . . . . . . . 10

**III.**    **Argument and Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.      B&G Futures Did Not Breach Its Contract with Ichor Oil . . . . . . . . . . . . . . . . . 10

    B.      Dan-Bunkering Denies that It Has a Claim for Breach of Contract . . . . . . . . . . 10

    Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# I. SUMMARY

1.      To the extent that Dan-Bunkering has identified the nature of its claim against B&G Futures, it is for breach of contract. But Dan-Bunkering also denies that its claim against B&G Futures is for breach of contract.

2.      B&G Futures is more than frustrated at its inability to be given fair notice of the claim (and of the elements of that claim) against which it must defend.

3.      Here Dan-Bunkering cannot recover against B&G Futures on its Writ of Maritme Garnishment because:

(1)      B&G Futures did not breach its contract with Ichor Oil;

(2)      Dan-Bunkering denies that it has a claim for breach of contract.

## II. <u>UNDISPUTED FACTS</u>

4.      In 2019 a series of transactions were arranged for the sale of about 100,000 barrels of fuel oil originating with Maersk and ending with Philips 66.

Maersk ➔ B&G Futures ➔ Ichor Oil ➔ Dan-Bunkering ➔ Philips 66

This case involve the three middle parties to this series of transactions: B&G Futures, Ichor Oil, and Dan-Bunkering. (Appx. 5, ¶ 18).

### A.      **Ichor Oil Breached Its Contract with B&G Futures**

5.      The Contract between Ichor Oil and B&G Futures is evidenced by two Invoices and two Pro Formas.

6.      <u>Initial Terms</u>. The First Invoice and Original Pro Forma reflect that the initial agreement on August 22, 2019 was for Ichor Oil to pay the sum of $5,305,000 to B&G Futures by the next day, and for B&G Futures to thereafter deliver approximately 100,000 barrels of oil to Ichor Oil. The price per barrel was $53.05. (Appx. 7-10).

7.      <u>Revised Quantity at the Same Unit Price</u>. The Revised Pro Forma reflects that later the same day, August 22, the quantity of oil to be delivered in this transaction was increased from 100,000 barrels to 107,500 barrels. (App. 12-13). Five days later on August 27 B&G Futures sent a Second Invoice for the additional 7,500 barrels × $53.05 per barrel = $397,875. (App. 11-16).

8.      <u>One Single Transaction</u>. This was a single transaction for 107,500 barrels of oil, not two separate transactions. This fact is confirmed in both Stanley Affidavits, in both DiPietro Declarations, and in the Revised Pro Forma for the entire quantity of 107,500 barrels. (Appx. 3-4, ¶ 7-9; Appx. 12 "Quantity").

9.      <u>Ichor Oil Was Required to Immediately Prepay the Entire $5.7 Million Price</u>. Both

Pro Formas clearly state that "Full payment of Invoice shall be made within one (1) New York banking days after receipt of invoice." The First Invoice for $5.3 million is dated August 22. The Second Invoice for $397,875 is dated five days later, August 27. Both Pro Formas also clearly state that Ichor Oil was required to pay this full $5.7 million purchase price before there would be any determination of the delivery date. Consistent with the two Pro Formas, the First Invoice for $5,305,000 states that the term for payment was "Due Upon Receipt," and the Second Invoice states that the term for payment was "Prepayment." (Appx. 7; 8 "Payment," "Delivery Terms;" Appx. 11; 12 "Payment," "Delivery Terms"). Thus, to the extent that payment was not timely made, $5,305,000 of the purchase price became delinquent on August 24, and the remainder became delinquent five days later on August 29.

10.    Ichor Oil Paid Only $350,000 Toward the Total Purchase Price. Ichor Oil only ever made a single payment on August 29 of $350,000 toward the purchase price of $5,702,875. (Appx. 4, ¶ 12). The wire receipt for that payment expressly states  that it relates to Invoice #717993, which is the First Invoice for 100,000 barrels at a price of $5.3 million, and which was clearly received prior to this date. (App. 7 "Invoice Number;" 24, "Reference"). Thus it is clear that the payment did *not* relate only or specifically to the additional 7,500 barrels identified in the Second Invoice #717994. Moreover, it is clear from the texts between B&G Futures and Ichor Oil that the payment was made with reference to the entire transaction, not just the additional 7,500 barrels. (Appx. 21-22). Finally, the payment of $350,000 would not have matched or fully paid the $397,875 amount stated in the Second Invoice. (Appx. 11). Again, the payment was made toward a single large transaction, not a smaller separate transaction.

11.    The $350,000 Purchased a Non-Refundable Contract Extension. As shown by the Pro Forma and the First Invoice, payment of $5,305,000 from Ichor Oil to B&G Futures was due on

Friday, August 23. (Appx. 7; 8 "Payment"). The transaction closing was scheduled for the following Monday morning, August 26. (Appx. 17, 19).

12.     The Ichor Oil-B&G Futures transaction was part of a larger chain of transactions in which fuel oil would be sold from Maersk to B&G Futures to Ichor Oil to Dan-Bunkering. (Appx. 19 ¶ 2; 47; 51). When the transaction did not close on Monday, August 26 because of Ichor Oil's failure to pay the purchase price, Maersk expressed to B&G Futures that it was anxious to dispose of its oil. (Appx. 5 ¶ 18-19).

13.     B&G Futures communicated to Ichor Oil that a payment of $500,000 would be required to continue to hold open the transaction between B&G Futures and Ichor Oil. This was not money that Ichor Oil would send directly to Maersk. Rather, this was money that Ichor Oil would send to B&G Futures. Moreover, that payment would likewise not be refundable if B&G Futures changed its mind and decided not to purchase the oil or that it could not pay for the oil. The payment would merely purchase additional time during which Ichor Oil would still have the opportunity to purchase the oil by making full payment of more than $5 million. (Appx. 5 ¶ 19).

14.     On Tuesday, August 27 at 6:32 p.m., B&G Futures sent a text to Ichor Oil inquiring "Are you able to forward the 500k to keep Maersk calm." (Appx. 21-22).

15.     The next morning at 9:34 a.m. on Wednesday, August 28, Gary Stanley of Ichor Oil went to the bank and sent a wire to B&G Futures for $350,000. (Appx. 22, 24).

16.     Dan-Bunkering had paid $500,000 to Ichor Oil toward the purchase price of the oil. That is the same amount that Maersk told B&G Futures, and that B&G Futures told Ichor Oil, was required to keep the transaction open for a few additional days. But out of that $500,000, Ichor Oil only ever paid $350,000 and kept the other $150,000 as its expected profit on the deal even though it had not performed. (Appx. 4-5, ¶ 12-17; 31/2 - 32/18; 33/8 - 35/24).

17.     Ichor Oil did not reveal this to Dan-Bunkering until much later when pressed by Dan-Bunkering's attorney. Dan-Bunkering subsequently obtained a judgment against Ichor Oil in this case which included the $150,000 that Ichor Oil had secretly kept. (Appx. 4-5, ¶ 12-17; 31/2 - 32/18; 33/8 - 35/24).

18.     <u>The Unpaid Balance Was $5,352,875</u>. The total purchase price was $5,305,000 + $397,875 = $5,702,875. (Appx. 7, 11-12). But Ichor Oil paid only $350,000 toward this price. (Appx. 4 ¶ 12). This left an unpaid balance of $5,352.875, and it left Ichor Oil in breach of the transaction terms.

19.     <u>B&G Futures Never Became Obligated to Deliver the Oil</u>. The failure of Ichor Oil to pay more than about 6% of the purchase price means that B&G Futures never became obligated to deliver the oil and that Ichor Oil forfeited the deposit it had paid to keep the transaction open.

20.     <u>Right to Charge Interest on Unpaid Balance</u>. Even if the $350,000 payment had been refundable as Dan-Bunkering argues (and it was not), B&G Futures would still be entitled to retain that amount under the terms stated in the Pro Formas. Both Pro Formas clearly state that:

> In the event that payment is not made on the due date, Buyer will be charged on the outstanding balance, from the date that payment is due until the date payment is made at the current J.P. Morgan Chase Bank (New York) prime rate plus 2%.

(Appx. 9, third paragraph; 13, second paragraph). That variable interest rate plus 2% is also set forth in the following table. (App. 23 ¶ 22-23; Appx. 23).

21.     <u>Calculation of Applicable Interest</u>. The amount that B&G Futures was allowed to charge on Ichor Oil's overdue payment is calculated as follows: (App. 76-82).[1]

---

[1] If Dan-Bunkering challenges this calculation, it must do more than quibble over minor details that would move the August 15, 2020 date by only a few days one way or the other.

| Beginning Date | Ending Date | Beginning Balance | Interest Rate | Periodic Interest | Ending Balance |
|---|---|---|---|---|---|
| 8/24/19 | 8/29/19 | $5,305,000.00 | 7.25% | $5,268.66 | $5,310,268.66 |
| 8/29/19 | – $350,000.00 for initial partial payment | | | | $4,960,268.66 |
| 8/29/19 | + $397,875.00 for additional 7,500 barrels | | | | $5,708,143.66 |
| 8/29/19 | 9/19/19 | $5,708,143.66 | 7.25% | $23,810.00 | $5,731,953.66 |
| 9/19/19 | 10/31/19 | $5,731,953.66 | 7.00% | $46,169.71 | $5,778,123,37 |
| 10/31/19 | 3/04/20 | $5,778,123,37 | 6.75% | $133,569.63 | $5,911,693.00 |
| 3/04/20 | 3/16/20 | $5,911,693.00 | 6.25% | $12,147.31 | $5,923,840.31 |
| 3/16/20 | **8/15/20** | $5,923,840.31 | 5.25% | $129,513.00 | $6,053,353.31 |
| Cumulative Interest | | | | **$350,478.31** | |

22.     Offset in Favor of B&G Futures. Because the accrued interest on the unpaid balance is more than the $350,000 that Ichor Oil paid, there is an offset greater than Ichor Oil's claim, which effectively results in Ichor Oil again forfeiting its deposit of $350,000.

23.     This transaction between B&G Futures and Ichor Oil sits at the heart of this case.

24.     The contract between Ichor Oil and Dan-Bunkering likewise required Dan-Bunkering to pay in full to Ichor Oil before delivery of the oil to Dan-Bunkering, thus making it possible for Ichor Oil to make full payment to B&G Futures prior to delivery. (Appx. 25).

**B.     Dan-Bunkering Denies Knowledge of the Terms of the Contract**

25.     In response to discovery requests, Dan-Bunkering repeatedly denied any knowledge of the terms of the transaction between B&G Futures and Ichor Oil. (Appx. 60-62, #1-7, 10-19).

**C.     Dan-Bunkering Has Never Pleaded a Claim for Breach of Contract**

26.     Dan-Bunkering has never pleaded any claim against B&G Futures.

27.     Counsel for Dan-Bunkering has represented on the record that Dan-Bunkering's claim is for B&G Futures's alleged breach of the contract between B&G Futures and Ichor Oil. (Appx. 70/10-21; 71/4-24; 72/8 - 73/5).

**D.     Dan-Bunkering Denies that It Has a Claim for Breach of Contract**

28.     On January 5, 2022 B&G Futures served Dan-Bunkering with the following request for admission:

> Please admit or deny that: Plaintiff Dan-Bunkering (America) Inc.'s claim of a right to recover against B&G Futures, Inc. is based upon the allegation that B&G Futures breached the Contract.

(The "Contract" was defined as the legally binding terms that governed the transaction between Ichor Oil and B&G Futures in or about late August 2019 that was referenced in the two affidavits attached to Dan-Bunkering's own Summary Judgment Motion and Reply). (Appx. 46, #10).

29.     On February 4, 2022 Dan-Bunkering responded by denying that it has a claim for breach of contract:

> Denied. The claim is that moneys are owed to Ichor because of B&G's failure to deliver marine fuel to Ichor, and B&G's receipt of $350,000 from Ichor, and providing nothing to Ichor and from Ichor, to Dan-Bunkering. B&G, by Tyku Vyas, promised to return the $350,000 to Dan Bunkering but reneged on that promise and pocketed the $350,000, providing nothing either to Ichor or to Dan Bunkering.

(Appx. 62, #10).

**E.      Ichor Oil Assigned Its Claims to Dan-Bunkering**

30.     Ichor Oil assigned all of its claims against B&G Futures to Dan-Bunkering on or about December 4, 2020. (Appx. 62, #7).

31.     The Maritime Writ of Garnishment directed to B&G Futures was not issued until three days later on December 7, 2020.

## ARGUMENT AND AUTHORITIES

**A.      B&G Futures Did Not Breach Its Contract Ichor Oil.**

32.     The foregoing facts demonstrate that B&G Futures did not breach its contract with Ichor Oil.

33.     Rather, because Ichor Oil never performed its obligation to make full payment prior to delivery of the fuel oil, B&G Futures never became obligated to deliver the oil.

34.     Ichor Oil was not entitled to the return of any funds under its agreement with B&G Futures.

35.     Moreover, B&G Futures was authorized to charge interest on the unpaid balance of Ichor Oil's obligation, thus offsetting any amount that Ichor Oil would otherwise have been entitled to have returned.

**B.      Dan-Bunkering Denies that It Has Claim for Breach of Contract**

36.     To the extent that Dan-Bunkering has ever identified the legal basis of its allegation that B&G Futures is indebted to Ichor Oil, that legal basis is an alleged breach by B&G Futures of

its contract with Ichor Oil.

37.     However, Dan-Bunkering also denied in discovery that it has a claim for breach of contract against B&G Futures.

38.     While the denial of a request for admission does not have the same binding effect as an admission, the denial leaves Dan-Bunkering with no claim asserted against B&G Futures.

## PRAYER

Wherefore, premises considered, Respondent B&G Futures, Inc. respectfully requests that the Court dismiss with prejudice all claims that B&G Futures is indebted to Ichor Oil, LLC and/or to Dan-Bunkering (America), Inc. and grant B&G Futures such other and further relief to which it may show itself to be entitled.

Respectfully submitted,

  /s/ Kurt S. Elieson
Kurt S. Elieson
Texas Bar No. 06521100
KurtE@CarpLawFirm.com
CARPENTER & ASSOCIATES
555 Republic Drive, Suite 510
Plano, Texas 75074
972-455-8700 – Tel.
972-807-3837 – Fax

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on May 20, 2022 a true and correct copy of the foregoing document has been served via the Court's electronic notification system to all counsel of record.

                    /s/ Kurt S. Elieson                  
                    Kurt S. Elieson

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| Dan-Bunkering (America) Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: 20-cv-3341-S-BT |
| vs. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| | § | |
| Ichor Oil, LLC, et al, | § | |
| | § | |
| Defendant and Garnishees | § | |

**PLAINTIFF DAN-BUNKERING (AMERICA), INC.'S BRIEF IN OPPOSITION TO
B&G FUTURES, INC'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Dan-Bunkering (America) Inc.
("Dan-Bunkering" or "Plaintiff") responds in opposition to the Motion for Summary Judgment
("Motion") (ECF No. 105) filed by Garnishee B&G Futures, Inc. ("Garnishee" or "B&G") and
respectfully requests that this Court deny B&G's motion in its entirety.

## I.      THE RELEVANT UNDISPUTED MATERIAL FACTS

First, Ichor Oil, LLC ("Ichor") breached a maritime contract with Plaintiff, which resulted
in damages in the amount of $521,265.10, as evidenced by the default judgment entered against
Ichor by this Court on May 5, 2021.  [ECF 38].

Second, Ichor and B&G entered into a contract comprised of two invoices and two pro
formas. [ECF 106 at ¶¶ 5-8; ECF 105 at APP.7-9, 11-13].

Third, Ichor remitted $350,000 to B&G as part of the purchase price.  [ECF 106 at ¶ 10
("Ichor Oil only ever made a single payment on August 29 of $350,000 toward the purchase price
of $5,702,875.); ECF 105 at 24].

Fourth, B&G did not deliver even a single barrel of fuel oil to Ichor or Plaintiff.  [ECF 106
at ¶ 19; ECF 100 at APP.2, 4].

- 1 -

Finally, B&G retained the $350,000 paid to it by Ichor.  [ECF 100 at APP.14]

## II.    ARGUMENT AND AUTHORITIES

### A.    The Evidence Establishes that B&G is not Entitled to Retain the $350,000 Paid to It by Ichor.

"General rules of contract law apply to maritime contracts."  *Paragon Asset Co., Ltd. v. Gulf Copper Co. Ltd.*, 2022 WL 970551, *30 (S.D.Tex. March 31, 2022) (citing *Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986) (also recognizing that the Restatement (Second) of Contracts is recognized as instructive under federal law). "'[W]hen one party to a contract repudiates that contract, the other party 'is entitled to restitution for any benefit that he has conferred on' the repudiating party 'by way of part performance of reliance.'"  *In re Chester J. Marine LLC*, 636 B.R. 704, 717 (E.D.La. 2021) (quoting *Mobile Oil Exploration & Producing Se., Inc. v. U.S.*, 530 U.S. 604, 608 (2000) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 373 (1979)); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 374 (1979) ("if a party justifiably refuses to perform on the grounds that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance").

Ichor contracted with B&G to provide 107,500 barrels of fuel oil for approximately $5.7 million.  Ichor made a single payment of $350,000 on that contract.  B&G never delivered a single barrel of oil.  Neither party completely performed under the contract, but Ichor at least accomplished partial performance.  To retain the partial payment remitted by Ichor, B&G was obligated to partially perform, in turn, by delivering $350,000 worth of fuel of oil.  This never occurred.  B&G admits that it deemed the contract void because Ichor has failed to pay.  [*See also* ECF 100 at APP.35 (B&G employee testifying that he thought $350,000 had been returned because "we weren't part of the deal anymore")].  B&G claims that it "never became obligated to

- 2 -

deliver the oil" because Ichor failed to pay the entire purchase price.  [ECF 106 at ¶ 19].  As a result, Ichor has a superior and legal right to recover its $350,000 partial payment.  *See In re Chester J. Marine LLC*, 636 B.R. at 717 (E.D.La. 2021); RESTATEMENT (SECOND) OF CONTRACTS § 374 (1979).

B&G contests this outcome by presenting two flawed arguments.  First, that the $350,000 payment was actually a "non-refundable contract extension."  [ECF 106 at ¶ 11-17, 34].  Second, that B&G is entitled to keep these funds as an offset due to the late-payment interest provision in the contract.  [ECF 106 at ¶¶ 20-22, 35].  Neither of these argument is legally supportable.

There is nothing in the contract between Ichor and B&G that sets forth any type of deposit or payment terms for an extension.  Moreover, the contract contains a merger clause that states, "THIS CONTRACT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PREVIOUS NEGOTIATIONS, REPRESENTATIONS, BROKER CONFIRMATION, OR COMMITTEMENTS WITH REGARD TO ITS SUBJECT MATTER." [ECF 105 at APP.8, 12].  The contract also states that the parties can seek "TO REFORM THIS CONTRACT UNDER GOVERNING LAW IN THE EVENT IT IS LATER DETERMINED THAT THIS CONFIRMATION IS NOT A TRUE AND ACCURATE REFLECTION OF THE BINDING AGREEMENT."  [ECF 105 at App.9, 13].

B&G contends that Ichor agreed to an amendment whereby Ichor would pay a $500,000 non-refundable contract extension fee.  [ECF 106 at ¶¶ 13-14].  However, such a change does not relate to whether the "confirmation is not a true and accurate reflection of the binding agreement," which is the basis for amendments to the contract by its very terms.  Even if such an amendment were allowed, there was no meeting of the minds to accomplish such a goal.  *See Paragon Assets Co. Ltd.*, 2022 WL 970551, * 30 ("A contract is formed when at least two parties reach a meeting of the minds on all essential terms of the contract.") (internal citation and quotation marks omitted).

- 3 -

Gary Stanley, the CEO of Ichor, has testified that he did not agree to such an amendment and that the payment was for the contracted oil, not an extension fee.  [ECF 100 at APP.3, 23, 26].  Mr. Stanley was quite emphatic on the point: "Q: Is there anything to that, did you make any agreement that they could keep the $350,000?  A: No, absolutely not."  [ECF 100 at APP.29].  Thus, B&G's first argument fails.

B&G's argument that it is entitled to charge interest on a late payment for oil that it has yet to deliver and never intends to deliver is simply preposterous.  [ECF 106 at ¶¶ 20-22, 35].   The contract specifies that late payments are remedied by the imposition of interest, which contemplates that B&G was still obliged to deliver the fuel oil even if payment was made.  [ECF 105 at APP.9, 13].  Had B&G delivered all 107,500 barrels of fuel oil, it would be entitled to interest on the whatever amount was paid late and/or outstanding.  Had B&G delivered $350,000 worth of fuel oil, it would have been entitled to interest on the $350,000, assuming it was paid late. But, B&G failed to deliver even a drop of fuel oil.  As a result, no payment was due and owing and no interest could accrue.

B&G's entire argument is that it is entitled to the proceeds paid to it by Ichor without any corresponding duty to perform under the contract.  That position is not supported under the law and, therefore, summary judgment is not warranted.

### B.    B&G's Feigned Ignorance as to Plaintiff's Claims Does Not Justify Summary Judgment.

Plaintiff sought and received a Writ of Maritime Attachment and Garnishment directed to B&G arising from Plaintiff's attempt to purchase fuel oil from Ichor.  [ECF 1, 20].  Pursuant to that Writ, B&G was fully on notice that Plaintiff sought any property and/or assets belonging to Ichor that were in the possession of B&G.  [ECF 20 at 2].  Indeed, B&G knew that Plaintiff was a the end user of the oil Ichor was seeking to purchase from B&G, and, therefore, understood what

- 4 -

transaction was at issue.  [ECF 106 at ¶¶ 4].  As set forth in the Motion, B&G clearly understands that there exists a dispute over the $350,000 payment made by Ichor as part of this overall transaction.  B&G comprehends the nature of Plaintiff's claims well enough to move for summary judgment on the critical issues of whether or not B&G is entitled to retain that payment under its contract with Ichor.

Plaintiff's action is one for garnishment, and the determination underlying whether or not any funds are subject to garnishment is one for breach of contract (albeit between B&G and Ichor, not Plaintiff), just as counsel for Plaintiff suggested.  There is no contract between Plaintiff and B&G upon which a breach of contract claim might exist.  The garnishment claim, however, is in the appropriate posture for the Court to determine the parties' cross-motions for summary judgment on Plaintiff's writ of garnishment.  As set forth above, B&G's summary judgment motion should be denied.

## II.      CONCLUSION

For the foregoing reasons, Dan-Bunkering respectfully requests that the Court deny B&G's motion in its entirety.

Dated: June 10, 2022

Respectfully Submitted,

/s/ Scott R. Wiehle                                          /s/ J. Stephen Simms
Scott R. Wiehle                                             J. Stephen Simms
State Bar No. 24043991                               Simms Showers LLP
scott.wiehle@kellyhart.com                        jssimms@simmsshowers.com
**KELLY HART & HALLMAN, LLP**          201 International Circle, Suite 230
201 Main Street, Suite 2500                       Hunt Valley, Maryland 21030
Fort Worth, Texas 76102                            Telephone: (410) 783-5795
                                                                   Facsimile: (410) 510-1789

Dan-Bunkering Counsel

- 5 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Dan-Bunkering (America) Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.: 20-cv-3341-S-BT |
| vs. | § | |
| | § | IN ADMIRALTY,  Rule 9(h) |
| | § | |
| Ichor Oil, LLC, et al, | § | |
| | § | |
| Defendant and Garnishees | § | |

**PLAINTIFF DAN-BUNKERING (AMERICA), INC.'S BRIEF IN OPPOSITION TO
B&G FUTURES, INC'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Dan-Bunkering (America) Inc.
("Dan-Bunkering" or "Plaintiff") responds in opposition to the Motion for Summary Judgment
("Motion") (ECF No. 105) filed by Garnishee B&G Futures, Inc. ("Garnishee" or "B&G") and
respectfully requests that this Court deny B&G's motion in its entirety.

## I.    THE RELEVANT UNDISPUTED MATERIAL FACTS

First, Ichor Oil, LLC ("Ichor") breached a maritime contract with Plaintiff, which resulted
in damages in the amount of $521,265.10, as evidenced by the default judgment entered against
Ichor by this Court on May 5, 2021.  [ECF 38].

Second, Ichor and B&G entered into a contract comprised of two invoices and two pro
formas. [ECF 106 at ¶¶ 5-8; ECF 105 at APP.7-9, 11-13].

Third, Ichor remitted $350,000 to B&G as part of the purchase price.  [ECF 106 at ¶ 10
("Ichor Oil only ever made a single payment on August 29 of $350,000 toward the purchase price
of $5,702,875.); ECF 105 at 24].

Fourth, B&G did not deliver even a single barrel of fuel oil to Ichor or Plaintiff.  [ECF 106
at ¶ 19; ECF 100 at APP.2, 4].

- 1 -

Finally, B&G retained the $350,000 paid to it by Ichor.  [ECF 100 at APP.14]

## II.   ARGUMENT AND AUTHORITIES

### A.   The Evidence Establishes that B&G is not Entitled to Retain the $350,000 Paid to It by Ichor.

"General rules of contract law apply to maritime contracts."  *Paragon Asset Co., Ltd. v. Gulf Copper Co. Ltd.*, 2022 WL 970551, *30 (S.D.Tex. March 31, 2022) (citing *Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986) (also recognizing that the Restatement (Second) of Contracts is recognized as instructive under federal law). "'[W]hen one party to a contract repudiates that contract, the other party 'is entitled to restitution for any benefit that he has conferred on' the repudiating party 'by way of part performance of reliance.'"  *In re Chester J. Marine LLC*, 636 B.R. 704, 717 (E.D.La. 2021) (quoting *Mobile Oil Exploration & Producing Se., Inc. v. U.S.*, 530 U.S. 604, 608 (2000) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 373 (1979))); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 374 (1979) ("if a party justifiably refuses to perform on the grounds that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance").

Ichor contracted with B&G to provide 107,500 barrels of fuel oil for approximately $5.7 million.  Ichor made a single payment of $350,000 on that contract.  B&G never delivered a single barrel of oil.  Neither party completely performed under the contract, but Ichor at least accomplished partial performance.  To retain the partial payment remitted by Ichor, B&G was obligated to partially perform, in turn, by delivering $350,000 worth of fuel of oil.  This never occurred.  B&G admits that it deemed the contract void because Ichor has failed to pay.  [*See also* ECF 100 at APP.35 (B&G employee testifying that he thought $350,000 had been returned because "we weren't part of the deal anymore")].  B&G claims that it "never became obligated to

deliver the oil" because Ichor failed to pay the entire purchase price.  [ECF 106 at ¶ 19].  As a result, Ichor has a superior and legal right to recover its $350,000 partial payment.  *See In re Chester J. Marine LLC*, 636 B.R. at 717 (E.D.La. 2021); RESTATEMENT (SECOND) OF CONTRACTS § 374 (1979).

B&G contests this outcome by presenting two flawed arguments.  First, that the $350,000 payment was actually a "non-refundable contract extension."  [ECF 106 at ¶ 11-17, 34].  Second, that B&G is entitled to keep these funds as an offset due to the late-payment interest provision in the contract.  [ECF 106 at ¶¶ 20-22, 35].  Neither of these argument is legally supportable.

There is nothing in the contract between Ichor and B&G that sets forth any type of deposit or payment terms for an extension.  Moreover, the contract contains a merger clause that states, "THIS CONTRACT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PREVIOUS NEGOTIATIONS, REPRESENTATIONS, BROKER CONFIRMATION, OR COMMITTEMENTS WITH REGARD TO ITS SUBJECT MATTER." [ECF 105 at APP.8, 12].  The contract also states that the parties can seek "TO REFORM THIS CONTRACT UNDER GOVERNING LAW IN THE EVENT IT IS LATER DETERMINED THAT THIS CONFIRMATION IS NOT A TRUE AND ACCURATE REFLECTION OF THE BINDING AGREEMENT."  [ECF 105 at App.9, 13].

B&G contends that Ichor agreed to an amendment whereby Ichor would pay a $500,000 non-refundable contract extension fee.  [ECF 106 at ¶¶ 13-14].  However, such a change does not relate to whether the "confirmation is not a true and accurate reflection of the binding agreement," which is the basis for amendments to the contract by its very terms.  Even if such an amendment were allowed, there was no meeting of the minds to accomplish such a goal.  *See Paragon Assets Co. Ltd.*, 2022 WL 970551, * 30 ("A contract is formed when at least two parties reach a meeting of the minds on all essential terms of the contract.") (internal citation and quotation marks omitted).

Gary Stanley, the CEO of Ichor, has testified that he did not agree to such an amendment and that the payment was for the contracted oil, not an extension fee.  [ECF 100 at APP.3, 23, 26].  Mr. Stanley was quite emphatic on the point: "Q: Is there anything to that, did you make any agreement that they could keep the $350,000?  A: No, absolutely not."  [ECF 100 at APP.29].  Thus, B&G's first argument fails.

B&G's argument that it is entitled to charge interest on a late payment for oil that it has yet to deliver and never intends to deliver is simply preposterous.  [ECF 106 at ¶¶ 20-22, 35].   The contract specifies that late payments are remedied by the imposition of interest, which contemplates that B&G was still obliged to deliver the fuel oil even if payment was made.  [ECF 105 at APP.9, 13].  Had B&G delivered all 107,500 barrels of fuel oil, it would be entitled to interest on the whatever amount was paid late and/or outstanding.  Had B&G delivered $350,000 worth of fuel oil, it would have been entitled to interest on the $350,000, assuming it was paid late.  But, B&G failed to deliver even a drop of fuel oil.  As a result, no payment was due and owing and no interest could accrue.

B&G's entire argument is that it is entitled to the proceeds paid to it by Ichor without any corresponding duty to perform under the contract.  That position is not supported under the law and, therefore, summary judgment is not warranted.

### B.   B&G's Feigned Ignorance as to Plaintiff's Claims Does Not Justify Summary Judgment.

Plaintiff sought and received a Writ of Maritime Attachment and Garnishment directed to B&G arising from Plaintiff's attempt to purchase fuel oil from Ichor.  [ECF 1, 20].  Pursuant to that Writ, B&G was fully on notice that Plaintiff sought any property and/or assets belonging to Ichor that were in the possession of B&G.  [ECF 20 at 2].  Indeed, B&G knew that Plaintiff was a the end user of the oil Ichor was seeking to purchase from B&G, and, therefore, understood what

transaction was at issue.  [ECF 106 at ¶¶ 4].  As set forth in the Motion, B&G clearly understands that there exists a dispute over the $350,000 payment made by Ichor as part of this overall transaction.  B&G comprehends the nature of Plaintiff's claims well enough to move for summary judgment on the critical issues of whether or not B&G is entitled to retain that payment under its contract with Ichor.

Plaintiff's action is one for garnishment, and the determination underlying whether or not any funds are subject to garnishment is one for breach of contract (albeit between B&G and Ichor, not Plaintiff), just as counsel for Plaintiff suggested.  There is no contract between Plaintiff and B&G upon which a breach of contract claim might exist.  The garnishment claim, however, is in the appropriate posture for the Court to determine the parties' cross-motions for summary judgment on Plaintiff's writ of garnishment.  As set forth above, B&G's summary judgment motion should be denied.

## II.    CONCLUSION

For the foregoing reasons, Dan-Bunkering respectfully requests that the Court deny B&G's motion in its entirety.

Dated: June 10, 2022

Respectfully Submitted,

/s/ Scott R. Wiehle                              /s/ J. Stephen Simms
Scott R. Wiehle                                  J. Stephen Simms
State Bar No. 24043991                           Simms Showers LLP
scott.wiehle@kellyhart.com                       jssimms@simmsshowers.com
KELLY HART & HALLMAN, LLP                        201 International Circle, Suite 230
201 Main Street, Suite 2500                      Hunt Valley, Maryland 21030
Fort Worth, Texas 76102                          Telephone: (410) 783-5795
                                                 Facsimile: (410) 510-1789

Dan-Bunkering Counsel

- 5 -