IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAN-BUNKERING (AMERICA), INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:20-cv-03341-S-BT |
| ICHOR OIL, LLC, | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is a *quasi in rem* action initiated by Plaintiff Dan-Bunkering (America), Inc. (Dan-Bunkering), under Supplemental Rule B for Certain Admiralty and Maritime Claims, in which Dan-Bunkering asserts a claim for breach of maritime contract against Defendant Ichor Oil, LLC, and seeks execution of writs of maritime attachment and garnishment against Ichor Oil's property in this district. At this point in the litigation, the gravamen of the dispute is whether Garnishee B&G Futures, Inc. (B&G) owes $350,000 to Ichor Oil, against whom Dan-Bunkering has obtained a default judgment, and whether Dan-Bunkering is entitled to garnish B&G's accounts pursuant to a previously-issued writ of maritime attachment and garnishment. B&G has filed two dispositive motions, under Federal Rules of Civil Procedure 12(c) and 56, in which it seeks dismissal with prejudice of all claims that B&G Futures is indebted to Ichor Oil and/or Dan-Bunkering. Dan-Bunkering also moves for summary judgment against B&G on its

1

maritime attachment and garnishment writ and on B&G's counterclaim for attorneys' fees. For the reasons stated, the Court should DENY Dan-Bunkering's Motion for Summary Judgment (ECF No. 98), GRANT in part and DENY in part B&G's Motion for Judgment on the Pleadings (ECF No. 101) and B&G's Motion for Summary Judgment (ECF No. 104).

I.

The present dispute arises out of a series of transactions that occurred in 2019 for the purchase and sale of approximately 110,000 barrels of marine gas oil (bunker fuel), as illustrated by this simplified flowchart:

Maersk ➔ B&G Futures ➔ Ichor Oil ➔ Dan-Bunkering ➔ Phillips 66

*See generally* Pl.'s MSJ Br. (ECF No. 99); B&G Supp. Br. (ECF No. 119).

As alleged in its Verified Complaint, Dan-Bunkering is a Texas corporation that provides bunker fuel to ocean-going vessels in Texas and throughout the world, and Ichor Oil is a Florida limited liability company that sells various types of petroleum products including bunker fuel. Compl. 2 (ECF No. 1). In August 2019, Dan-Bunkering agreed to buy from Ichor Oil, and Ichor Oil agreed to sell to Dan-Bunkering, 110,000 barrels of bunker fuel. Compl. 2. Pursuant to their agreement (the "Dan-Bunkering – Ichor Contract"), Dan-Bunkering wired $500,000 to Ichor Oil. Compl. 2. However, Ichor Oil failed to deliver the bunker fuel to Dan-Bunkering; and, despite Dan-Bunkering's demands, Ichor Oil also failed to refund the $500,000 payment to Dan-Bunkering. Compl. 2.

Accordingly, on November 8, 2020, Dan-Bunkering initiated this action pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure, asserting a claim for breach of a maritime contract against Ichor Oil and requesting writs of maritime attachment and garnishment against Ichor Oil's assets "in the hands of garnishees within this District." Compl. 3. Ichor Oil did not respond to the Verified Complaint or otherwise defend against Dan-Bunkering's claim for breach of contract. Thus, Dan-Bunkering obtained a Clerk's Entry of Default (ECF No. 25) and, thereafter, a default judgment against Ichor Oil in the amount of $521,265.10 (ECF No. 38).

Although not alleged in its Verified Complaint, Dan-Bunkering further contends that, as part of the 2019 series of transactions, Ichor Oil entered into a contract to buy bunker fuel from B&G, an Ohio corporation (the "Ichor – B&G Contract"). Pl.'s MSJ Br. 2. According to Dan-Bunkering, Ichor Oil wired $350,000 of the $500,00 it received from Dan-Bunkering to B&G, but B&G breached the Ichor – B&G Contract by failing to provide any fuel to Ichor Oil. Pl.'s MSJ Br. 4, 9. As a result of B&G's alleged breach, Ichor Oil failed to fulfill its obligations under the Dan-Bunkering – Ichor Contract. Pl.'s MSJ Br. 9.

On December 4, 2020, Dan-Bunkering negotiated a settlement with Ichor Oil, which included an assignment to Dan-Bunkering of "all right, title and interest to all rights of recovery and causes of action which Ichor Oil, LLC has or may have against B&G Futures, Inc." B&G App. Resp. Juris. 10 (ECF No. 120). The same day, Dan-Bunkering asked the Clerk of Court to issue supplemental process, without a

further Court order,[1] for a pre-judgment writ of maritime attachment and garnishment against B&G. Pl.'s Appl. Writ 1 (ECF No. 19). The Clerk granted the request, B&G Process Maritime Attach. 1-3 (ECF No. 20), and Dan-Bunkering served the writ on B&G five days later, Writ Executed 1 (ECF No. 21).

Initially, B&G did not respond to the December 9, 2020 writ. Dan-Bunkering thus moved for and obtained a "default judgment" against B&G. Mot. Default J. (ECF No. 30); B&G Default J. (ECF No. 37). Six weeks later, B&G moved to vacate this default judgment based on the absence of a *Whitney* certificate from the Texas Secretary of State's Office. B&G Mot. Vacate (ECF No. 55). B&G also filed an Answer to Dan-Bunkering's process of maritime attachment and garnishment and an original counterclaim for attorneys' fees. B&G Orig. Answer (ECF No. 59).

While the motion to vacate was pending, Dan-Bunkering sought to recover on its default judgment against B&G, registering the default judgment in Florida and receiving a court order allowing Dan-Bunkering to garnish B&G's Florida bank accounts with PNC Bank. Order 1-2, *Dan-Bunkering (America) Inc. v. Ichor Oil, LLC*, No. 21-mc-00095 (N.D. Fla. Sept. 7, 2021), ECF No. 7. On September 21, 2021, the Court granted B&G's Motion to Vacate Default Judgment and dissolved any post-judgment writs against B&G's accounts. Op. & Order 10 (ECF No. 73).

---

[1] Federal Rule of Civil Procedure Supplemental Rule B(1)(b) provides that "[t]he clerk may issue supplemental process enforcing the court's order upon application without further court order."

Thereafter, B&G filed its First Amended Answer to the writ of maritime attachment and garnishment. B&G First Am. Answer (ECF No. 91).

B&G denies that it is, or was at the time writ was served, indebted to Ichor. B&G First Am. Answer 1. Although B&G admits that it received $350,000 from Ichor Oil in August 2019, B&G alleges that it received those funds as payment for an option to extend the time Ichor Oil had to perform the Ichor – B&G Contract. B&G First Am. Answer 2. B&G further alleges that Ichor Oil's inability to perform the Dan-Bunkering – Ichor Contract was caused by Dan-Bunkering's breach of its obligations to Ichor Oil and Dan-Bunkering's attempt to circumvent Ichor Oil and B&G in an effort to obtain bunker fuel directly from B&G's source (Maersk). B&G First Am. Answer 2. Finally, B&G asserts a counterclaim to recover its costs and attorneys' fees related to the writ, pursuant to Rule B(1)(e) of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeitures, Fed. R. Civ. P. 64, Tex. R. Civ. P. 677, and this Court's inherent authority to sanction. B&G First Am. Answer 3.

Dan-Bunkering then moved for summary judgment against B&G on the December 9, 2020 writ, Pl.'s First MSJ (ECF No. 75), which motion the Court denied without prejudice after the parties filed a joint motion for leave to further brief the issues and supplement the record. *See* Order (ECF No. 86). The Court also held a Rule 16 conference and entered a scheduling order (and an amended scheduling order) providing that the parties had until December 17, 2021, to amend their pleadings and until May 20, 2022, to file any motions that would

"dispose of all or any part of this case, including motions for summary judgment." Sched. Orders (ECF Nos. 90, 97).

On May 20, B&G filed its Motion for Judgment on the Pleadings, in which it argues that Dan-Bunkering has not alleged sufficient facts to plead it is entitled to invoke the remedy of maritime attachment and garnishment against B&G. B&G Mot. J. Pleadings 12 (ECF No. 101). By its motion, B&G asks the Court to dismiss with prejudice all claims that B&G is indebted to Ichor Oil and/or Dan-Bunkering and for "other . . . relief" to which it may be entitled. B&G Mot. J. Pleadings 13 (ECF No. 101). The same day, B&G and Dan-Bunkering also filed the pending motions for summary judgment. Pl.'s MSJ (ECF No. 98); B&G's MSJ (ECF No. 104). As in its earlier motion that was denied without prejudice, Dan-Bunkering seeks summary judgment against B&G on the December 9, 2020 writ, as well as on B&G's counterclaim for attorneys' fees. Pl.'s MSJ 1. Dan-Bunkering argues there is no genuine dispute that B&G breached the Ichor – B&G Contract, B&G owes Ichor Oil at least $350,000, Ichor Oil breached the Dan-Bunkering – Ichor Contract, and Ichor Oil owes Dan-Bunkering more than $500,000. Pl.'s Br. MSJ 9-11. B&G denies that it breached the Ichor – B&G Contract and further disputes that Dan-Bunkering is entitled to summary judgment on the December 9, 2020 writ because Ichor Oil assigned any claims Ichor Oil had against B&G to Dan-Bunkering on December 4, 2020. B&G Br. MSJ 4-8, 10. By its summary judgment motion, B&G seeks dismissal with prejudice of all claims that B&G is indebted to Ichor Oil

6

and/or Dan-Bunkering and such other relief to which it may be entitled. B&G MSJ 1. The parties fully briefed the issues presented by the pending dispositive motions.

Upon review of the parties' arguments, it became apparent that the parties dispute which contract—the Dan-Bunkering – Ichor Contract or the Ichor – B&G Contract—constitutes the relevant contract giving rise to Dan-Bunkering's claims to B&G's assets. The Court thus *sua sponte* questioned the basis for its subject-matter jurisdiction and the resulting applicability of the Supplemental Rules governing maritime attachment and garnishment.[2] The parties filed supplemental briefs addressing these concerns. Pl.'s Resp. Juris. (ECF No. 116); B&G Resp. Juris. (ECF No. 119). Both parties urged the Court to find that—regardless of the existence or non-existence of admiralty jurisdiction—the Court should find it may exercise diversity jurisdiction and proceed to the merits of the arguments presented in the dispositive motions. Pl.'s Resp. Juris. 7 (urging the Court not to "insist on form over substance" and to address the question of whether "B&G owes money to Ichor [Oil] and that as garnishee . . . B&G should now pay that money to

---

[2] Whether the Court proceeds under admiralty jurisdiction or diversity jurisdiction affects the outcomes on the claims and the extent of the ruling to be made. *T.N.T. Marine Svc., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 586 (5th Cir. 1983) (noting the rights and privileges that arise under admiralty jurisdiction cases). Indeed, "[n]umerous and important consequences flow from whether a district court treats a case as falling under admiralty or diversity jurisdiction." *See T.N.T. Marine Svc., Inc.*, 702 F.2d at 586-87. For instance, when a party has an admiralty claim, it may seek various maritime remedies under the Supplemental Rules, such as maritime attachment and garnishment of property, *see T.N.T. Marine Svc., Inc.*, 702 F.2d at 587; Fed. R. Civ. P. Suppl. R. B, that are generally unavailable under the Federal Rules of Civil Procedure.

Dan-Bunkering"); B&G Resp. Juris. 18-19 (arguing that the Court has diversity jurisdiction over any claim that B&G owes money to Dan-Bunkering).

## II.

Contrary to Dan-Bunkering's argument, *see* Pl.'s Resp. Juris. 6, the Court must address the issue of its subject-matter jurisdiction now. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990) (advising that federal courts have an obligation to examine their subject-matter jurisdiction *sua sponte* at any time); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court's earlier order granting Dan-Bunkering a default judgment against Ichor Oil does not bar this inquiry. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . adjudicat[ing] fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) ("Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[] at any time' 'any order or other decision . . . [that] does not end the action.'"); *see also McKethan v. Tex. Farm Bureau*, 996 F.2d 734, 736 n.6 (5th Cir. 1993) (recognizing the Court may exercise this authority *sua sponte*).

8

Dan-Bunkering argues "this case" is within the Court's admiralty and maritime jurisdiction. Pl.'s Resp. Juris. 1. However, the parties dispute the extent of the claims that are encompassed in "this case." Because a plaintiff is the master of its complaint and generally can pursue or eschew various claims and causes of action, *see Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 715 (5th Cir. 2021), the Court looks first to Dan-Bunkering's live pleading, the original Verified Complaint, to determine whether "this case" is within its subject-matter jurisdiction.[3]

In its Verified Complaint, Dan-Bunkering succinctly alleges: (a) the Dan-Bunkering – Ichor Contract was a maritime contract; (b) Ichor Oil breached the Dan-Bunkering – Ichor Contract, and (c) Dan-Bunkering has damages. Compl. 3. Later, Dan-Bunkering produced evidence in the form of an affidavit setting forth additional facts to establish that the Dan-Bunkering – Ichor Contract is a maritime contract. Pl.'s Resp. Juris. Ex. 2, at 1-2 (ECF No. 116-2) (explaining how the Dan-Bunkering – Ichor Contract was "one to provide services to facilitate [activity] on navigable waters," and (2) "the parties expect[ed] that a vessel will play a substantial role in the completion of the contract"). Based on Dan-Bunkering's allegations, the Court finds that the Verified Complaint states a single claim for

---

[3] The Court's Pretrial Scheduling Order (ECF No. 90) provided a deadline for the parties to amend their pleadings, but Dan-Bunkering declined to amend its original Verified Complaint. And although B&G timely amended its answer, it did not assert a counterclaim for a declaratory judgment that it is not indebted to Ichor Oil and/or Dan-Bunkering. The Court cannot infer claims the parties did not plead.

breach of a maritime contract—the Dan-Bunkering – Ichor Contract. Dan-Bunkering has not pleaded a claim for breach of contract, maritime or otherwise, against B&G, in its own right or as Ichor Oil's assignee. *See* B&G App. MSJ 46, #10; 62, #10 (ECF No. 105) (denying in response to request for admission that Dan-Bunkering pleaded a claim for breach of contract against B&G). As B&G does not specifically deny that the Dan-Bunkering – Ichor Contract was a maritime contract, *see generally* B&G First Am. Answer; B&G Resp. Juris., the Court finds that admiralty jurisdiction exists for Dan-Bunkering's breach-of-maritime-contract claim against Ichor Oil, as alleged in the Verified Complaint.

However, the Court does not find that Dan-Bunkering established that diversity jurisdiction exists for this cause of action. For a court to exercise diversity jurisdiction, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)). A corporation is a citizen of (1) the state in which it was incorporated and (2) the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). However, a limited liability company's citizenship is that of each of its members. *Harvey*, 542 F.3d at 1080. Therefore, to establish the citizenship of a limited liability company, like Ichor Oil, a party must identify the citizenship of each of its members, *not* its state of organization or the state where it does business. *Id.* Dan-Bunkering has not alleged or otherwise established the citizenship of each of the members of Ichor Oil. Without such

10

allegations or other proof in the record, this Court is unable to determine whether it may exercise diversity jurisdiction over Dan-Bunkering's breach-of-maritime-contract claim against Ichor Oil. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("Without the presence of . . . facts [establishing citizenship] in the record, a federal court does not have jurisdiction over the case."). Notwithstanding this conclusion, the Court is satisfied of its diversity jurisdiction over B&G's counterclaim for attorneys' fees. *See* B&G First Am. Answer 2; *see also* B&G Resp. Juris. 17-18. The Court makes no finding as to whether it has diversity jurisdiction over any claim which Dan-Bunkering does not specifically allege, such as a claim against B&G for breach of the Ichor – B&G Contract.

Nevertheless, having determined that admiralty jurisdiction exists for Dan-Bunkering's breach-of-maritime-contract claim against Ichor Oil, the Court turns to the parties' dispositive motions.

## III.

Dan-Bunkering seeks summary judgment against B&G on the December 9, 2020 writ, as well as on B&G's counterclaim for attorneys' fees. Pl.'s MSJ (ECF No. 98). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant may satisfy its burden by demonstrating that there is an absence of evidence to support the

nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to claims or defenses upon which the movant bears the burden of proof at trial, the movant must establish each element of the claim or defense "beyond peradventure." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

For Dan-Bunkering to prevail on its motion, it must establish beyond peradventure that it is entitled to invoke the remedy of maritime attachment and garnishment against B&G. A Rule B attachment under admiralty jurisdiction serves "to obtain jurisdiction over a defendant through its property and to assure satisfaction of the claim." *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016). Federal Rule of Civil Procedure Supplemental Rule B provides that:

    (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

    (b) The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed. R. Civ. P. Supp. R. B(1)(a)-(b). Further, "[i]f intangible property is to be attached . . . the marshal or other person or organization having the warrant shall execute the process by leaving with the garnishee . . . a copy of the complaint and process requiring the garnishee" to answer according to Supplemental Rule B(3)(a). *Id.* E(4)(c).

    To support the attachment of property, a "plaintiff must show (1) that Plaintiff has a valid prima facie admiralty claim, (2) that Defendant cannot be found within the [] District [], (3) that Defendant's property may be found in the District, and (4) that there is no statutory or maritime bar to attachment." *White Rosebay Shipping S.A. v. HNA Grp. Co. Ltd.*, 2013 WL 441014, at *3 (S.D. Tex. Feb. 5, 2013). Timing is vital. "As a remedy *quasi in rem*, the validity of a Rule B attachment depends entirely on the determination that the *res* at issue is the property of the defendant at the moment the *res* is attached." *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 69 (5th Cir. 2009). An

13

attachment order is invalid "where the garnishees do not 'owe[] a debt to the defendant at the time the order is served." *DS-Rendite Fonds Nr. 108 VLCC Ashna GMBH & Co Trankschiff KG v. Essar Cap. Ams. Inc.*, 882 F.3d 44, 49 (2d Cir. 2018).

Some courts have recognized that the ease with which a prima facie case for attachment can be made creates a risk of abusive use of the maritime remedy. *See, e.g.*, *DS-Rendite*, 882 F.3d at 49. Accordingly, these courts require that a plaintiff seeking to maintain an existing Rule B attachment "must at least set forth enough facts to render it plausible that the defendant's funds [are] present in the district." *Id.* Conclusory allegations are not sufficient; rather, "the facts alleged must provide sufficient specificity either as to the nature of the business relationship between the garnishee(s) and the defendant and/or the nature of the defendant's property subject to the attachment." *Id.* at 50. Dan-Bunkering's Verified Complaint fails to satisfy this burden. The Verified Complaint does not set forth any facts about B&G's business relationship with Ichor Oil; nor does it identify B&G as a garnishee. In fact, the Verified Complaint does not even mention B&G at all. The application for writ against B&G, issued under supplemental process, only mentions B&G as a garnishee, with no commentary on the assets B&G may hold that purportedly belong to Ichor Oil. Pl.'s Appl. Writ 1.

Furthermore, the uncontroverted summary judgment evidence establishes that the *res* in this *quasi in rem* action—the *defendant's* tangible or intangible personal property—is not in the district. On December 4, 2020, Ichor Oil assigned

14

to Dan-Bunkering the *res* at issue, i.e., "all right, title and interest to all rights of recovery and causes of action which Ichor Oil, LLC has or may have against B&G Futures, Inc." *See* B&G Br. MSJ 10; B&G Resp. Juris. 10. The *res* did not attach until December 9, five days after Ichor Oil transferred all of its rights to the *res* to Dan-Bunkering. The validity of an attachment depends entirely on when the attachment is served, and here the attachment was not served until after Ichor Oil transferred its alleged claim against B&G to Dan-Bunkering. *See DS-Rendite*, 882 F.3d at 49. When, as here, the plaintiff owns the property at issue, any writ of attachment no longer ensures jurisdiction nor assures satisfaction of a maritime claim against the original defendant. *See Malin Int'l Ship Repair & Drydock, Inc.*, 817 F.3d at 244. Indeed, Ichor Oil's assignment of all its claims against B&G warrants vacatur of the attachment because the claims did not belong to Ichor Oil. *See Egyptian Navigation Co. v. Baker Invs. Corp.*, 2008 WL 1748456, at \*2-6 (S.D.N.Y. Apr. 14, 2008). The Court should deny Dan-Bunkering's summary judgment motion because it has failed to establish beyond peradventure the validity of the December 9, 2020 writ.

Dan-Bunkering's motion also fails because the record does not establish beyond peradventure that B&G clearly owed a debt to Ichor Oil. "Given the breadth of Rule B, it is recognized that the Rule permits a plaintiff to attach, for example, debts owed to the defendant even if they have not yet matured or have only partially matured, provided that 'the defendant's entitlement to the credit or interest in the debt is clear.'" *Novoship (UK) Ltd. v. Ruperti*, 567 F. Supp. 2d 501,

15

505 (S.D.N.Y. June 20, 2008) (cleaned up) (citing *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 276 (2d Cir. 2002)). B&G has consistently disputed whether they are indebted to Ichor Oil for payments related to the Ichor – B&G Contract. The record itself reflects anything but a "clear" debt owed by B&G to Ichor. Indeed, the summary judgment evidence demonstrates that genuine fact issues exist with respect to the essential terms of the Ichor – B&G Contract and whether either party performed or partially performed under that contract.

The Court should also deny Dan-Bunkering's summary judgment motion on B&G's counterclaim for attorneys' fees. Dan-Bunkering's argument that "Tex R. Civ. P. 677 does not apply in this admiralty action" does not align with the Federal Rules. Pl.'s MSJ Br. 10. Rather, Federal Rule of Civil Procedure 64 provides that "[a] the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." As incorporated, Texas Rule of Civil Procedure 677 states that "[w]here the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff" and "where the answer is contested, the costs shall abide the issue of such contest." Federal courts have frequently found Texas Rules of Civil Procedure to apply in garnishment actions. *See, e.g.*, *Weisbrod Matteis & Copley, PLLC v. Manley Toys, Ltd.*, 2015 WL 7771075, at *2-3 (N.D. Tex. Dec. 3, 2015) (Fish, J.).

The Court should deny Dan-Bunkering's Motion for Summary Judgment (ECF No. 98).

IV.

By its motions, B&G seeks dismissal with prejudice of all claims that B&G is indebted to Ichor Oil and/or Dan-Bunkering. B&G Mot. J. Pleadings (ECF No. 101); B&G's MSJ (ECF No. 104). However, as set forth above, the Verified Complaint states only a single claim against Ichor Oil for breach of the Dan-Bunkering – Ichor Contract. Dan-Bunkering deliberately has not pleaded a claim against B&G, as Ichor Oil's assignee, for breach of the Ichor – B&G Contract. *See* B&G App. MSJ 46, #10; 62, #10 (ECF No. 105) (denying in response to request for admission that Dan-Bunkering pleaded a claim for breach of contract against B&G). And B&G has not pleaded any counterclaim for a declaratory judgment regarding its liability for any alleged breach the Ichor – B&G Contract. To the extent B&G seeks dismissal with prejudice of a claim by Dan-Bunkering that B&G did not breach the Ichor – B&G Contract, the Court cannot grant that relief because that claim has not been properly presented for adjudication.[4] Thus, the Court should deny B&G's Motion for Judgment on the Pleadings and B&G's Motion for Summary Judgment to the extent B&G seeks dismissal with prejudice of all claims that B&G is indebted to Ichor Oil and/or Dan-Bunkering.

---

[4] The Court expresses no opinion on whether the parties could amend their pleadings, or even file a new lawsuit, asserting additional claims.

However, the Court should grant relief in B&G's favor on the limited basis that the December 9, 2020 writ is invalid and should be vacated. Again, as set forth above, the uncontroverted summary judgment evidence establishes that the writ is invalid because the *res* at issue did not attach until *after* Ichor Oil transferred all of its rights to the *res* to Dan-Bunkering. "After an assignment, 'the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.'" *Quality Infusion Care, Inc. v. Health Care Svc. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) (quoting Restatement (Second) of Contracts § 317(1)). Thus, as of December 4, 2020, Ichor Oil—the defendant—had no rights to the *res* at issue as it had assigned all its rights to Dan-Bunkering. Under these circumstances, vacatur of the attachment is appropriate. *See Egyptian Navigation Co.*, 2008 WL 1748456, at *2-6.

"A person claiming an interest in property . . . attached usually challenges the validity of the . . . attachment through a motion to vacate under Supplemental Admiralty Rule E(4)(f)." *MARMAC, LLC v. InterMoor, Inc.*, 566 F. Supp. 3d 559, 569 (E.D. La. Oct. 14, 2021) (first citing Fed. R. Civ. P. Suppl. R. E(4)(f) ("Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."); and then citing *Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 50 (S.D.N.Y. Mar. 30, 2009)). B&G did not move for a Rule E(4)(f) hearing; instead, as contemplated by the Court's scheduling order, it

18

challenged the validity of the attachment in its Motion for Judgment on the Pleadings and its Motion for Summary Judgment.

This is not improper. Courts routinely treat Rule E(4)(f) motions to vacate with "similar force" to other dispositive motions that attack the validity of an attachment order. *See, e.g.*, *FIMBANK PLC v. Discover Inv. Corp.*, 2020 WL 3519159, at *4 (S.D. Tex. May 21, 2020); *MARMAC, LLC*, 566 F. Supp. 3d at 569; *Arctic Ocean Int'l, Ltd.*, 622 F. Supp. 2d at 50. B&G challenged the validity of the attachment in its original Answer, averring that "[a]t the time the Process was served on Respondent . . ., and at all times since then, NO property of Defendant Ichor Oil, LLC was or has been in the possession, custody or control of [B&G], and [B&G] held and has held legal title to NO property of Defendant Ichor Oil, LLC." B&G Orig. Answer 1; B&G First Am. Answer 1. B&G also asked the Court to "[d]ischarge it from all liability to [Dan-Bunkering]." B&G Orig. Answer 1; B&G First Am. Answer 1. After the Court vacated Dan-Bunkering's default judgment against B&G, it held a Rule 16 conference and entered a scheduling order (and an amended scheduling order) providing that the parties had until December 17, 2021, to amend their pleadings and until May 20, 2022, to file any dispositive motions. The Court did not specifically direct B&G to file a motion for a Rule E(4)(f) hearing, but rather provided B&G the opportunity to challenge the validity of the attachment by way of a dispositive motion. B&G timely filed two such motions seeking relief that would include vacatur of the attachment.

19

The Court should find the December 9, 2020 writ is invalid and vacate the attachment.

V.

The Court should DENY Dan-Bunkering's Motion for Summary Judgment (ECF No. 98) and GRANT in part and DENY in part B&G's Motion for Judgment on the Pleadings (ECF No. 101) and B&G's Motion for Summary Judgment (ECF No. 104). The Court should find the December 9, 2020 writ is invalid and vacate the attachment. The Court should deny any other relief not specifically granted.

**SO RECOMMENDED.**

February 21, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).