IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAN-BUNKERING (AMERICA), INC., § § § Plaintiff, § § v. § ICHOR OIL, LLC, § § § Defendant. § | Case No. 3:20-cv-03341-S-BT |

# **MEMORANDUM OPINION AND ORDER**

Before the Court in this *quasi in rem* action under Supplemental Rule B for Certain Admiralty and Maritime Claims is Garnishee B&G Futures, Inc.'s (B&G) Motion for Sanctions (ECF No. 132) against Plaintiff's counsel Stephen Simms under 28 U.S.C. § 1927 and the Court's inherent powers. For the following reasons, the Court **DENIES** the Motion.

## **Background**

This case—initially filed in November 2020—began as a breach of maritime contract between Plaintiff Dan-Bunkering (America), Inc. (DBA) and Defendant Ichor Oil, LLC (Ichor) over purportedly undelivered marine fuel. DBA alleged that it had bought 110,000 barrels of marine fuel from Ichor and prepaid $500,000, but that Ichor never delivered the marine fuel and kept the $500,000 over DBA's objections and in breach of maritime contract. Compl. 2 (ECF No. 1).

1

Seeking to recover the prepayment, DBA filed suit in this Court and sought issuance of process of maritime attachment and garnishment of Ichor's assets so that DBA could obtain security for a damage award against Ichor. *Id.* at 3. DBA initially requested, and the District Judge issued, process of maritime attachment and garnishment against Garnishee Truist Bank d/b/a BB&T (Truist). Mot. Truist 1 (ECF No. 3); Process Truist (ECF No. 11). DBA then moved for, and the Clerk granted, supplemental process against B&G. Appl. B&G (ECF No. 19); Process B&G (ECF No. 20). DBA executed the supplemental writ of garnishment on B&G's assets on December 10, 2020. Exec. Writ B&G (ECF No. 21).

After attempts at service on B&G's registered agent failed, DBA executed the writ against B&G by delivering copies of process and other documentation to the Texas Secretary of State through the Secretary's designated agent. Exec. Writ B&G 1. After Ichor and B&G both failed to respond to the complaint or writ, DBA moved for default judgment against Ichor on January 22, 2021, and against B&G on March 20, 2021. Mot. Def. J. Ichor (ECF No. 26); Mot. Def. J. B&G (ECF No. 28). The Court entered default judgment against Ichor, Def. J. Ichor (ECF No. 38), and against B&G, Def. J. B&G (ECF No. 37), based on DBA's filings.

On July 18, 2021, B&G filed a motion to vacate the default judgment, stating that DBA neglected to file a *Whitney* certificate on record; therefore, B&G asserted that the Court lacked personal jurisdiction over B&G, which rendered the default judgment void. Mot. Vac. J. (ECF No. 55). DBA unsuccessfully argued that it had properly served B&G, that B&G's default was willful, and that B&G had actual

2

notice of the pending lawsuit. *See generally* Resp. Mot. Vac. J. (ECF No. 58). In view of B&G's motion and the lack of a *Whitney* certificate in the record when the default judgment was granted, the Court vacated the default judgment and dissolved the post-judgment writs on B&G's accounts on September 21, 2021. Mem. Op. & Order 10 (ECF No. 73).

B&G argues that DBA's counsel, J. Stephen Simms, engaged in bad faith and sanctionable conduct while the Motion to Vacate was pending. In B&G's view, Simms had notice of the service defects when B&G filed the Motion to Vacate. Br. Mot. Sanctions 10–20 (ECF No. 133). B&G avers that Simms delayed resolution of the Motion to Vacate, misrepresented the law to the Court, accelerated garnishment of assets while the Motion to Vacate was pending, and failed to adequately confer with his local counsel. *Id.* On August 9, 2021, B&G sent a memo to Simms outlining the necessity of attaching a *Whitney* certificate when complaints are served via the Texas Secretary of State's office and the lack of a *Whitney* certificate's likely effect on the default judgment. *Id.* at 15. But shortly after on September 9, 2021, DBA filed the default judgment in the United States District Court for the Northern District of Florida and attempted to garnish $103,000 of B&G's bank accounts located with PNC bank. *Id.* B&G avers that DBA filed the judgment in a different district so that "the court issuing the writ would not know to question the judgment's validity and would also be unfamiliar with Texas state law regarding Whitney certificates." *Id.* at 16–17.

3

B&G further contends that Simms conducted himself in bad faith during pleading, discovery, and on summary judgment. Br. Mot. Sanctions 21–31. B&G asserts that Simms intentionally did not plead any facts in DBA's application for a Supplemental Rule B writ against B&G and refused to identify the basis of any claims against B&G. *Id.* at 21–25. B&G further alleges that DBA refused to state that its claim was based on an alleged breach of contract between Ichor and B&G, leading B&G "right back to where it started, unable to nail down the legal basis of [DBA's] claim." *Id.* at 24–25. Consistent with its already-obtained writ, DBA continued to assert that this was a Supplemental Rule B attachment and garnishment in interrogatories provided to B&G. *Id.* at 25; *see generally* DBA Br. Mot. Summ. J. (ECF No. 99).

B&G also states that DBA supported its summary judgment motion using "sham affidavits" to artificially create fact issues. Br. Mot. Sanctions 26–29. For example, DBA initially submitted the affidavit of Ichor employee Gary Stanley which stated that B&G "owes Ichor Oil at least $350,000 for the 110,000 barrels of fuel oil that Ichor Oil paid B&G," but later submitted an affidavit stating the $350,000 "was made for approximately 7,500 barrels of oil." *Id.* at 27. Further, DBA allegedly submitted an affidavit from DBA employee Matthew Sharkey which stated that DBA "did not earmark for any particular customer the marine fuel that is purchased from Ichor," but later Sharkey's affidavit claimed that the marine fuel was "[t]o fulfill commitment to [DBA's] client[,] . . . Maersk." *Id.* at 27–28.

4

Finally, B&G states that Simms acted in bad faith by pursuing a Supplemental Rule B attachment and garnishment because Ichor had assigned to DBA any claim that Ichor may have against B&G. *Id.* at 29. Thus, B&G did not have any property that rightfully belonged to the Defendant in this case, Ichor, and any garnishment on those assets would be invalid.

B&G moved for sanctions against Simms for his aforementioned conduct. Mot. Sanctions. B&G seeks either (i) $216,255.28 for all fees incurred in the matter, (ii) $177,619.28 for all fees incurred since September 22, 2021,[1] or (iii) $38,636.00 for all fees incurred through September 22, 2021. Br. Mot. Sanctions 31.

## Preliminary Matters

B&G requested a hearing on its Motion, and Simms also requested a hearing—but only if the Court determines that it may impose sanctions. According to B&G, the Court's exercise of its discretion to impose sanctions "will depend on Simms' ability to justify his conduct in this case [, and] [t]he Court will better be able to evaluate those justifications with the give and take that can only occur during an oral hearing where the Court can ask questions, receive answers, and then ask follow up questions." Br. Mot. Sanctions 30–31. However, the Court finds that a hearing on the Motion is unnecessary.

B&G's Motion provided Simms with notice of its request for sanctions. Simms availed himself of the opportunity to respond and filed a brief and appendix

---

[1] This date is approximately one day after the Court vacated the default judgment. *See* Mem. Op & Order.

of evidence. Resp. Mot. Sanctions (ECF No. 138). The conduct for which B&G seeks sanctions is fully developed in the record, and B&G does not specifically contend that any factual dispute exists with respect to that conduct. Furthermore, the Court is very familiar with this litigation, the parties, and their counsel, as the District Judge referred the matter for pretrial management shortly after the case opened. *See* Order (ECF No. 15). A hearing will not assist the Court in developing or understanding the issues. Thus, the Court will not burden the parties with a hearing—and the additional attorneys' fees that would be incurred—because it will not be particularly helpful in resolving the Motion. *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 481 (5th Cir. 2012) (finding no error where court declined to hold a hearing before awarding sanctions because court was familiar with the litigation and the record was sufficiently developed as to the conduct for which sanctions were sought); *see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1418 (5th Cir. 1994) (concluding that "[t]he right to a hearing . . . is limited to cases where a hearing would assist the court in its decision").

Simms also argues that B&G's Motion for Sanctions should be disallowed because B&G's counsel did not comply with this Court's local rules that require a conference before filing a motion. N.D. Tex. L. Civ. R. 7.1(a). However, the parties had mentioned sanctions more than once over the course of this litigation, and B&G informed Simms of its intention to file a sanctions motion by email. Reply App. 73–74 (ECF No. 141). Simms opposed the motion, stating that "unless the

6

B&G plan is to attempt to have the Court impose an inherent power / sanction fee – which itself would not be a Rule 11-consistent request – then – with the Court's order both sides are done." *Id.* at 73. However, the District Judge expressly found that B&G's initial request for attorneys' fees "was premature" and allowed B&G to "file a request for attorney's fees at the appropriate time in accordance with applicable law." *Dan-Bunkering (America), Inc. v. Ichor Oil, LLC*, 2023 WL 2727543, at *1 (N.D. Tex. Mar. 30, 2023). The District Judge referred the matter back to the Magistrate Judge on any future motion for attorneys' fees. *Id.* Simms's objection that the personal sanctions motion was not the subject of any conference or that the Motion was procedurally deficient are overruled.

## Legal Standards and Analysis

B&G requests the Court order Simms to pay all, or some portion of, the attorneys' fees it incurred in this case as a sanction under 28 U.S.C. § 1927 or alternatively, under the Court's inherent powers. Br. Mot. Sanctions 1–2.

"As a general rule, litigants must pay their own attorney's fees." *SEC v. Cuban*, 2009 WL 4544178, at *1 (N.D. Tex. Dec. 4, 2009) (quoting *Stovery v. Hattiesburg Pub. Sch. Dist.*, 549 F. 3d 985, 997 (5th Cir. 2008)). "Notwithstanding the general prohibition against fee-shifting, courts have limited authority to award attorney's fees to prevailing litigants when the losing party or its attorney acts in bad faith, vexatiously, or for oppressive reasons." *McCall v. Sw. Airlines Co.*, 2010 WL 4959935, at *2 (N.D. Tex. Nov. 8, 2010), *adopted by* 2010 WL 5056187 (N.D. Tex. Dec. 1, 2010). However, when sanctions are penal in nature, they must be

7

strictly construed "in order not to dampen the legitimate zeal of an attorney in representing his client." *Travelers Ins. Co.*, 38 F.3d at 1416 (discussing section 1927 sanctions).

### Section 1927

A federal court has discretion to sanction an attorney by ordering him to pay "excess costs, expenses, and attorneys' fees reasonably incurred because of" the attorney's misconduct. 28 U.S.C. § 1927; *see also Travelers Ins. Co.,* 38 F.3d at 1417 (noting discretionary nature of award of fees under section 1927). To warrant section 1927 sanctions, the attorney must have "unreasonably" and "vexatiously" multiplied the legal proceedings, and "evidence of recklessness, bad faith, or improper motive must be present." *Travelers Ins. Co.*, 38 F.3d at 1416–17. A court may not impose sanctions under section 1927 for mere attorney negligence; rather, "there must be a showing of improper motive on the part of an attorney, independent of a showing that the claims pursued were baseless." *McCall*, 2010 WL 4959935, at *2 (cleaned up); *see also Morrison v. Walker*, 939 F.3d 633, 637 (5th Cir. 2019) ("Conduct is 'unreasonable and vexatious' if there is evidence of the 'persistent prosecution of a meritless claim' and of a 'reckless disregard of the duty owed to the court.'")

Judged against these standards, the Court—in its discretion—declines to award sanctions under section 1927 because the evidence does not support a finding that Simms himself recklessly disregarded any duty to the Court or had an improper motive independent of the baseless claims he pursued on DBA's behalf.

8

The fact that B&G ultimately prevailed in demonstrating that DBA's claims lacked merit will not support an award of sanctions against Simms under section 1927 without evidence of bad faith by Simms himself. *Stewart v. Courtyard Mgmt. Corp.*, 155 F. App'x 756, 761 (5th Cir. 2005); *EsNtion Records, Inc. v. TritonTM, Inc.*, 2010 WL 3446910 at *5 (N.D. Tex. Aug. 31, 2010) (that a party was forced to defend against baseless claims for which there was no evidence does not—by itself—support an award of attorneys' fees under section 1927). That evidence is lacking here.

B&G is understandably frustrated at having to defend itself against DBA's baseless claims. But B&G concedes that "[Simms's] failure to file the *Whitney* certificate was not in bad faith," and that "once the Court vacated the Default Judgment, Simms did act professionally in quickly ending the garnishments." Br. Mot. Sanctions 10, 20. Still, B&G faults Simms for his alleged incompetence in not having "figured [ ] out" sooner that the default judgment was void. *Id.* at 20. As noted, however, the Court may not impose sanctions under section 1927 for mere attorney negligence. *McCall*, 2010 WL 4959935, at *2.

B&G argues that Simms, an experienced attorney with a record of success in Supplemental Rule B proceedings, engaged in bad faith in pursuing a Rule B garnishment at all. Br. Mot. Sanctions 28–30. B&G contends that Simms "knew better" than to try and garnish property that had been assigned away from the defendant, as he "knew about the assignment" and "was personally familiar with Rule B garnishments in general." *Id.* at 29. However, this Court granted DBA a writ

9

for maritime attachment and garnishment through supplemental process. At no time did Simms misrepresent the status of the writ or insist on its validity after the Court vacated the writ. *Cf. ACE Am. Ins. Co. v. Huttig Bldg. Prods., Inc.*, 2011 WL 3047640, at *9 (S.D. Miss. July 25, 2011) (granting section 1927 sanctions when counsel refused to strike a writ of garnishment even after counsel stated that it was baseless). Instead, Simms advocated and pursued the writ, which this Court granted, for his client. The Supplemental Rules permit a garnishee to bring a Rule E(4)(f) challenge and avail itself of an early hearing, but B&G did not invoke this process; instead, it opted for other procedural mechanisms which contributed to the delay in disposing of this litigation. B&G also did not bring Simms's alleged misconduct to the Court's attention earlier by filing a motion under Rule 11 or any applicable discovery rule. Simms is not responsible for fees B&G incurred as a result of strategic decisions by B&G or its counsel. *See* Resp. App. 55–56 (ECF No. 138).

  B&G also attempts to show the requisite bad faith by criticizing Simms for misinterpreting the court's holding in *Dierschke*; for failing to plead relevant facts or identify the legal basis of DBA's claim; for supporting DBA's claims with "groundless arguments" and "sham affidavits"; and for "threatening" B&G's counsel with sanctions. However, attorney bad faith cannot be inferred from the pleadings or briefs. *Oblio Telecom, Inc. v. Patel*, 2010 WL 99353 at *3 (N.D. Tex. Jan. 8, 2010). To the extent Simms misinterpreted the holding in *Dierschke*, his conduct does not rise to the level of vexatiousness. No other court previously

considered and rejected Simms's specific arguments on the merits. *Cf. Gavola v. Asbra*, 2017 WL 3529338, at *3 (N.D. Tex. Aug. 17, 2017) (O'Connor, J.) (rejecting a section 1927 motion when attorney argument has not been considered by other courts). And although the affidavits of Gary Stanley and Matthew Sharkey reveal some tension or inconsistency, they are not wholly "irreconcilable with [ ] earlier testimony." *See JSM Marine LLC v. Gaughf*, 407 F. Supp. 3d 1358, 1380-81 (S.D. Ga. Sept. 11, 2019). The contractual terms underlying the parties' dispute involved a complicated chain of purchases and fluctuating volumes which required clarification through multiple affidavits. *See Dan-Bunkering (America), Inc.*, 2023 WL 2718438, at *1. Simms necessarily relied on facts relayed by his clients, and his efforts to correct or clarify his clients' statements as the case progressed does not evince an improper purpose. Finally, a review of the correspondence between Simms and B&G's counsel demonstrates that all counsel generally comported themselves with professionalism and courtesy throughout the litigation.

On this record, the Court declines to award sanctions under section 1927.

## Inherent Powers

Federal courts also possess the inherent power to protect the efficient and orderly administration of justice and to command respect for the Court's orders, judgments, procedures, and authority. *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is the power to levy sanctions in response to abusive litigation practices. *Id.* This inherent power derives from a district court's need "to manage [its] own affairs so as to achieve the orderly and

11

expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). The imposition of sanctions pursuant to a court's inherent power, however, "must be exercised with restraint and discretion," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980), and "requires a finding of bad faith or willful abuse of the judicial process." *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997)); *Elliot v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (citing *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)) (cautioning that "the threshold for the use of inherent power sanctions is high"). "[T]he finding of bad faith must be supported by clear and convincing proof." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001).

For the same reasons discussed with respect to section 1927 sanctions, the Court finds that B&G has not met its burden to show by clear and convincing evidence that Simms engaged in bad faith conduct or "willful" abuse of the judicial process. Simms was granted a writ of garnishment against B&G, and Simms attempted to advocate for his client based on the approved writs. The Court sees none of Simms's actions as an express attempt to mislead the Court or to misrepresent the law through any false statement or other wrongdoing. The record does not indicate that the "extremely high" standard for imposition of inherent-power sanctions has been met, and therefore, B&G's Motion based on this ground is denied.

## Conclusion

For the reasons stated, the Court **DENIES** Garnishee B&G Futures, Inc.'s Motion for Sanctions (ECF No. 132).

**SO ORDERED.**

January 25, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

13